

1  MARTIN D. SINGER, ESQ. (BAR NO. 78166)
   WILLIAM J. BRIGGS, II, ESQ. (BAR NO. 144717)
2  EVAN N. SPIEGEL, ESQ. (BAR NO. 198071)
   LAVELY & SINGER PROFESSIONAL CORPORATION
3  2049 Century Park East, Suite 2400
   Los Angeles, California 90067-2906
4  Telephone:  (310) 556-3501
   Facsimile: (310) 556-3615
5  E-mail: wbriggs@lavelysinger.com
   E-mail: espiegel@lavelysinger.com
6
   Attorneys for Plaintiffs
7  BANK JULIUS BAER & CO. LTD and
   JULIUS BAER BANK AND TRUST CO. LTD
8

*ORIGINAL FILED*
FEB - 6 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

*E-filing*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

*JSW*

| | |
|---|---|
| 12  BANK JULIUS BAER & CO. LTD, a Swiss entity; and JULIUS BAER BANK AND TRUST CO. LTD, a Cayman Islands entity, | CASE NO. **CV 08  0824** |
| 14 | COMPLAINT FOR: |
| 15  Plaintiffs, | 1.  **UNLAWFUL AND UNFAIR BUSINESS PRACTICES IN VIOLATION OF CAL. BUS. & PROF. CODE § 17200** |
| 16  v. | 2.  **DECLARATORY RELIEF** |
| 17  WIKILEAKS, an entity of unknown form, WIKILEAKS.ORG, an entity of unknown form; DYNADOT, LLC, a California limited liability corporation, and DOES 1 through 10, inclusive, | 3.  **INTERFERENCE WITH CONTRACT** |
| | 4.  **INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE** |
| 20  Defendants. | 5.  **CONVERSION** |
| | 6.  **INJUNCTIVE RELIEF** |
| 21 | |
| 22 | **[DEMAND FOR JURY TRIAL]** |

COURTESY COPY

27  / / /
28  / / /

4405-2\Ple\COM 020408                                       1

Plaintiffs BANK JULIUS BAER & CO. LTD and JULIUS BAER BANK AND TRUST CO. LTD (collectively, "Julius Baer" and/or "Plaintiffs") allege as follows:

## THE NATURE OF THIS ACTION

1.     This action arises from and seeks to enjoin the unlawful and wrongful publication of confidential, as well as forged, bank documents belonging to Plaintiffs on the website Wikileaks.org.  Such documents are protected and prohibited from being published under consumer banking and privacy protection laws, under both foreign and American laws.

## JURISDICTION & VENUE

2.     This action is brought and jurisdiction lies within this Court pursuant to 28 U.S.C §§ 1332(a) and 1350, in that it is (i) a civil action between citizens of or subjects of a foreign state as plaintiffs, and citizens of a State or different States, and the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs; and (ii) a civil action by an alien for a tort committed in violation of a treaty of the United States.  Venue lies within and is proper in this District and Court pursuant to 28 U.S.C. §§ 1391 and 1392 because one or more Defendants reside in or are subject to personal jurisdiction in this District, and because a substantial part of the events, acts or omissions giving rise to the claims herein occurred in the County of San Mateo, State of California.  The Court has jurisdiction of Plaintiffs' pendant state claims pursuant to 28 U.S.C. § 1367(a).  Plaintiffs seek or shall seek injunctive relief and damages against Defendants under principles of pendent jurisdiction over any claims arising under California law, in that the claims flow from a common nucleus of operative facts.

3.     Bank Julius Baer & Co. Ltd is a foreign citizen, an entity formed and operated under the laws of the nation of Switzerland.  Julius Baer Bank and Trust Co. Ltd is a foreign citizen, an entity formed and operated under the laws of the Cayman Islands.  Defendants are each citizens or subjects of a State or different

1  States or foreign states, with some of them located in and residing within the State

2  of California.  A substantial part of the events, acts or omissions which give rise to

3  the claims asserted herein or the harms resulting therefrom occurred in the County

4  of San Mateo, State of California.  The amount in controversy is in excess of the

5  sum of $75,000, exclusive of interests and costs.   Attached hereto as Exhibit "A"

6  are true and correct copies of printouts and/or screen-shots of the "Home" pages,

7  "About" pages, and "Contact" and "Submissions" pages of the Wikileaks website,

8  which evidences that Wikileaks is represented by counsel in and has one of its

9  submission addresses for submission of and receipt of "leaked" documents in San

10  Mateo, California.  Attached hereto as Exhibit "B" are true and correct copies of

11  printouts and/or screen-shots of the official "who-is" domain registration records for

12  the < wikileaks.org>  domain, evidencing that the domain is registered with a

13  company in California under an anonymous registration service which hides the true

14  identity and location of the domain's registrant, owners and operators.  The indexed

15  data for the website reveals that the domain name is registered through and has its

16  domain name server ("DNS") services hosted by Dynadot, located in San Mateo,

17  California; that over 50% of the website's total world-wide Internet users/visitors

18  are located within the United States; that not less than 6.4% of wikileaks' total

19  world-wide Internet users/visitors are located in San Francisco, California.

20  **INTRADISTRICT ASSIGNMENT**

21  4.  Intradistrict assignment of this action lies the San Francisco Division

22  pursuant to Civil L.R. 3-2(c) in that a defendant is located in the County of San

23  Mateo, and a substantial part of the events, acts or omissions giving rise to the

24  claims herein occurred in San Mateo, California.

25  / / /

26  / / /

27  / / /

28  / / /

**COMPLAINT**

**THE PARTIES**

5.     Bank Julius Baer & Co. Ltd ("BJB") is one of the leading private banks in Switzerland.  BJB is, and at all times relevant hereto has been, a foreign citizen entity formed and operated under the laws of the nation of Switzerland.  BJB forms part and is one of the core companies of Julius Baer Group, the parent company of which is Julius Baer Holding Ltd. ("JBH"), whose shares are listed at the SWX Swiss Exchange.  The Julius Baer Group's global presence comprises more than 30 locations in Europe, North America, Latin America and Asia, including Zurich (head office), Los Angeles, New York, Frankfurt, Milan, Geneva, Dubai, Grand Cayman, Singapore and Hong Kong.  BJB and its related entities manage substantial assets, amounting (as per mid-2007) in excess of CHF 400 billion, for private and institutional clients from all over the world.  BJB's principal place of business is in Zurich, Switzerland.

6.     Julius Baer Bank and Trust Co. Ltd ("JBBT") is, and at all times relevant hereto has been, a foreign citizen entity formed and operated under the laws of the Cayman Islands.  JBBT is, as BJB, a member of the Julius Baer Group and a direct subsidiary of JBH, and carries out, amongst other things, private banking and trust services.  JBBT operates at Windward III, Grand Cayman.  JBBT, as was BJB, is the former direct employer of Rudolf Elmer ("Elmer"), who, as explained hereinbelow, unlawfully took possession of the client banking records and data at issue, in violation of Swiss and Cayman Islands banking and privacy protection laws, and thereafter violated his written confidentiality agreement with respect to disclosure of said records.

7.     Plaintiffs are informed and believe and based thereon allege that Defendant WIKILEAKS ("WIKILEAKS") is, and at all times relevant hereto was, a fictitious business name, alias and/or entity of unknown type and origin, with its principal place of business in the State of California, and at all times relevant hereto was doing business as the wikileaks.org website.  Plaintiffs are informed and believe

**COMPLAINT**

1   and based thereon allege that WIKILEAKS, through its website operated at the

2   domain name wikileaks.org (the "Website"), has the sole purpose of providing a site

3   for "uncensorable" and "untraceable mass document leaking," regardless of legality

4   or authenticity.  Plaintiffs are further informed and believe and based thereon allege

5   that WIKILEAKS, itself, or through one or more yet unidentified Doe individuals

6   or agents, is the owner, operator and/or registrant of the world wide web website

7   operating under the domain name wikileaks.org, and was engaged in tortious

8   activities carried out throughout the United States and the world via the Internet, and

9   specifically including, without limitation, in the County of San Mateo, California.

10      8.      Plaintiffs are informed and believe and based thereon allege that

11  Defendant WIKILEAKS.ORG ("WIKILEAKS.ORG") is, and at all times relevant

12  hereto was, a fictitious business name, alias and/or entity of unknown type and

13  origin, with its principal place of business in the State of California, and at all times

14  relevant hereto was doing business as the wikileaks.org website.  Plaintiffs are

15  further informed and believe and based thereon allege that WIKILEAKS.ORG,

16  through one or more yet unidentified Doe individuals or agents, is the owner,

17  operator and/or registrant of the world wide web website operating under the domain

18  name wikileaks.org, and was engaged in tortious activities carried out throughout

19  the United States and the world via the Internet, and specifically including without

20  limitation in the County of San Mateo, California.

21      9.      Plaintiffs are informed and believe and based thereon allege that

22  Defendant DYNADOT, LLC ("Dynadot") is, and at all times relevant hereto was,

23  a California limited liability company, with its principal place of business in San

24  Mateo, California, and at all times relevant hereto was doing business as or through

25  the dynadot.com website.  Dynadot is an Internet domain registration reseller and

26  provider and provides domain name server ("DNS") hosting and domain name

27  account administration services.  The domain name wikileaks.org (the "Domain

28  Name") was registered through and is currently administered through an account

**COMPLAINT**

1   with Dynadot, and has its DNS services provided by Dynadot.   Dynadot has

2   provided a private anonymous who-is registration service (for a fee) to the registrant

3   of the Domain Name and acts, thereby, as the agent for contact and service of the

4   registrant of the Domain Name.   Dynadot's DNS services allow the wikileaks.org

5   domain name to resolve to and display the website operated at wikileaks.org.

6       10.   Plaintiffs are presently unaware of the true names and capacities of

7   Defendants sued herein as Does 1 through 10, inclusive, and therefore sues said

8   Defendants by such fictitious names.   Plaintiffs will amend this Complaint to allege

9   the true names and capacities of such fictitiously named Defendants when the same

10  have been ascertained.   Plaintiffs are informed and believe and based thereon allege

11  that each of the fictitiously named Defendants is responsible in some manner for the

12  occurrences, acts and omissions alleged herein and that Plaintiffs' damages were

13  proximately caused by their conduct.   Hereinafter all Defendants including Doe

14  Defendants will sometimes be referred to collectively as "Defendants."

15      11.   Plaintiffs are informed and believe and based thereon allege that at all

16  material times Defendants, and each of them, were the agents, employees, partners,

17  joint venturers, co-conspirators, owners, principals, and employers of the remaining

18  Defendants, and each of them, and are, and at all times herein mentioned were,

19  acting within the course and scope of that agency, employment, partnership,

20  conspiracy, ownership or joint venture.   Plaintiffs are further informed and believe

21  and based thereon allege that the acts and conduct alleged herein were known to, and

22  authorized, directed, and/or ratified by, the officers, directors, and managing agents

23  of Defendants corporations or business entities, and each of them.   Plaintiffs are

24  further informed and believe and based thereon allege that the entity defendants

25  WIKILEAKS and WIKILEAKS.ORG, were, and are, mere shams and shell entities

26  organized and operated as the alter ego of one or more of the yet unidentified

27  individual DOE defendants for their personal benefit and advantage, in that the

28  individual defendants have at all relevant times exercised total dominion and control

**COMPLAINT**

over WIKILEAKS and WIKILEAKS.ORG and the Website.  Plaintiffs are further informed and believe and based thereon allege, that there now exists, and at all times material hereto has existed, such unity of ownership, interest and control between WIKILEAKS and WIKILEAKS.ORG and the Website, on the one hand, and the yet unidentified individual DOE defendants, on the other hand, such that any individuality or separateness which may have existed between them has ceased.  An injustice will result if the theoretical entities of defendants WIKILEAKS and WIKILEAKS.ORG and the website are not disregarded and the yet unidentified individual DOE defendants are not held liable for the indebtedness of defendants WIKILEAKS and WIKILEAKS.ORG and the website.

12.    Plaintiffs are informed and believe and based thereon allege that the officers, directors and/or managing agents of defendants WIKILEAKS and WIKILEAKS.ORG and the Website, authorized, directed and/or ratified the wrongful acts of the employees and representatives of said Defendants and, consequently, all of said Defendants are jointly and severally liable to Plaintiffs.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF
### Written Employment Contract

13.    Pursuant to an employment agreement dated September 1, 1987, BJB employed Rudolf Elmer as an internal auditor in its Zurich office.   Elmer subsequently (between February 1994 through August 2002) went to work in the Cayman Islands at JBBT as an "expatriate," based on employment contracts with JBH and BJB.

14.    Pursuant to a local employment agreement dated September 1, 2002 ("the Agreement"), Elmer was employed directly by JBBT as Senior Vice President and Chief Operating Officer.  A true and correct copy of the Agreement, which is incorporated by reference herein, is attached as Exhibit "C".    Elmer's responsibilities included, amongst other things, administering JBBT's IT systems and designing procedures to safeguard its confidential information.  The Agreement

states, in paragraph 11, that:

> "[Mr Elmer] shall not at any time during his employment
> (except so far as is necessary and proper in the course of
> his employment) or at any time after his employment has
> terminated disclose to any person any information as to the
> practice, business, dealings or affairs of the Employer or
> any of the Employer's customers or clients or as to any
> other matters which may came to his knowledge by reason
> of his employment."

15.     All data and records of the Julius Baer banks were and are protected not only under employee confidentiality agreements, but also under a number of different banking privacy and consumer data privacy laws of various nations, including and especially the laws of the Cayman Islands – the location from which the JB Property (as defined hereinbelow) was unlawfully obtained and/or under which the initial responsible tortfeasor was bound.  Attached hereto as <u>Exhibit "D"</u> is a true and correct copy of the Cayman Islands' Confidential Relationships (Preservation), Law 16 of 1976, 1995 Revision ("CI-CRP Law"), which, pursuant to ¶3(1), provides that the law:

> "has application to all confidential information with
> respect to business of a professional nature which arises in
> or is brought to the Islands and to all persons coming into
> possession of such information at any time thereafter
> whether they be within the jurisdiction or thereout."

16.     Given the "expatriate" status of Elmer while working on the Cayman Islands under Swiss law-based employment contracts, respective banking privacy laws of Switzerland are relevant and applicable in this case, as well.  Attached hereto as <u>Exhibit "E"</u> is a true and correct copy of a certified English translation of Article 47 of the Swiss Federal Law on Banks and Savings Banks, of November 8,

**COMPLAINT**

1934, language of December 27, 2006, adopted by The Federal Assembly of the
Swiss Confederation ("Swiss FLBSB Law"), which protects confidentiality of all
Swiss banking records and data, and provides, *inter alia*, that:

> "whoever divulges a secret entrusted to him in his capacity
> as officer, employee, … or has become aware thereof in
> this capacity, whoever tries to induce others to violate
> professional secrecy, shall be punished by imprisonment
> …" and that the "violation of professional secrecy remains
> punishable even after termination of the official or
> employment relationship …"

17.   On grounds of misconduct, Elmer was dismissed by JBBT in December
2002 in accordance with the termination provisions contained at paragraph 10 of his
employment Agreement.  After his employment with JBBT had been terminated, it
was discovered that Elmer had, without authorization, copied to and stored
confidential information and documents about some of JBBT's clients on his home
and office computers.  There was no legitimate reason for such confidential banking
and client information to have been stored on Elmer's computers.

### Leak to Swiss Newspaper

18.   Plaintiff BJB was contacted in June 2005 by a Swiss newspaper, *CASH,*
which had been provided with a CD-rom containing a large number of JBBT's
confidential documents which that evidently been stolen and/or unlawfully provided
to the newspaper.  The newspaper then published an article about BJB, which stated,
amongst other things, that:

> "An anonymous person sends complete data files about
> well-to-do customers from around the world.
>
> Customer information from the Baer Group was
> transmitted anonymously to the CASH editors. Customers
> seeking greater discretion protection, of all people, were
> affected.  Their total holdings are in the billions.
>
> The CD-Rom in the mail for the editor's desk did not have

any indication of the sender, no writing, no logo – mass market goods from a computer shop.

The contents, however, are absolutely not for general consumption: 169 megabytes of files with customer and business information from a money institution, whose world fame is built on secrecy.

The data files come from the office of the Julius Baer Group on the Cayman Islands. They were recorded between 1997 and 200[2] and concern the entire business process of the Baer companies on the Caribbean island and a clientele that prefers to have their arrangements handled with particular discretion: very well-to-do customers from around the world."

A true and correct copy of the article and an English translation of it are attached hereto as Exhibit "F".

19.     The story in *CASH* was then picked up by various other newspapers in a variety of locations. Neither *CASH*, nor any of the other publications, actually published any of Plaintiffs' clients' confidential information, identifications, banking records or data – the Wikileaks defendants are the only ones to do so (as set forth hereinbelow). Significantly, Swiss newspaper called *Die Weltwoche* published an article on June 23, 2005, in which the initials of the person who had leaked the confidential information were described as being "RE". The source of the information was also described as having formerly worked for JBBT.

## Investigations by the Authorities

20.     Plaintiffs believe that the confidential client information had been unlawfully provided to *CASH* by Elmer. Only a very limited number of people, of which Elmer was one, would have had access to the data and documents. Once this and other information came to light, BJB filed a criminal complaint against Elmer with the public prosecutor in Zurich, Switzerland. A subsequent police search Elmer's properties uncovered further confidential client data and documents belonging to Plaintiffs in Elmer's possession. Investigations have implicated Elmer as responsible for the leaked confidential bank-client data. Elmer was arrested and detained for approximately one month by the Swiss authorities before he was

10

**COMPLAINT**

released pending an on-going criminal investigation and proceedings.

21.   Elmer, the disgruntled ex-bank employee, is the subject of multi-national criminal investigations related to not only the above referenced theft of confidential records, but also related to his attempted extortion and a campaign of threats and terrorist threats (such as death and bomb threats, including <u>reference to "9/11"</u>, and threatening letters containing "white powder" sent to the premises of the Plaintiffs in New York and Zurich) against Plaintiffs and certain of its employees.  As an example, BJB's Deputy Group General Counsel, Mr. Hiestand, received an e-mail, on August 7, 2007 (sent using a pseudonym – robin.hood3055@yahoo.ca – but subsequently traced to Mauritius, the location Elmer has been living since the beginning of 2007), stating:

> "*Hi dirty pig,*
>
> *it is about time to let you know my hunter is after you.  You are number one on my list because guys like to [sic] need to be treated accordingly.  My hunter will be behind your back maybe tomorrow, maybe in a week's time or even in a months time but he will be there.  Don't worry it will happen quickly and you will hardly realise [sic] what's happening.  It is not the first job the hunter did and execution is his strength.*
>
> *Watch out and be careful what you do but my hunter will do the job!*
>
> *Thank you for being so kind to me but now we need to get rid of you.*
> *Regards*
>
> *the Hunter*"

A further example of the terrorist threats, sent September 7, 2007, contained the following threat:

> "**There will be an explosion the Bank today, Friday, at 11.00PM which will remind everyone on [*sic*] the September 11th!**"

/ / /

22.   In or about November 2006, Elmer filed a criminal complaint against

**COMPLAINT**

1   BJB and several employees on the basis that it/they had allegedly been stalking him

2   (by use of a security expert who had in fact traced the various tortious and illegal

3   conduct to Elmer).  Elmer's claim was entirely unfounded and without merit, and

4   subsequently dismissed as such by the relevant authorities on December 11, 2007.

5   The respective decision, which according to the distribution list therein was sent by

6   the authorities only to Elmer, was subsequently published on Wikileaks.org (in a

7   folder "Bank Julius Baer v. Rudolf Elmer") as well.

8                          <u>**Publication of Documents on Wikileaks**</u>

9        23.   The Wikileaks website is operated by its owners and agents for the

10  express stated purpose of providing "simple and straightforward means for

11  anonymous and untraceable leaking of documents," without any regard for the

12  legality and/or authenticity of the leaked documents, and without regard for the

13  rights of any aggrieved parties.  Wikileaks receives submissions of documents, posts

14  the leaked documents, and thereafter posts summaries of the documents, comments

15  on the documents and information contained therein, and Wikileaks is otherwise an

16  active participant in the post of the documents and content on its website.

17       24.   Between November and December 2007, Elmer provided several

18  documents relating to BJB and JBBT to the Wikileaks website.  These contained

19  various untrue allegations about the Plaintiffs but did not contain or include any of

20  their confidential information or documents.

21       25.   In or about mid-December 2007, Elmer provided a letter to Wikileaks,

22  which Wikileaks posted onto the Wikileaks.org website, containing a judicial denial

23  notice issued to Elmer from Swiss authorities.  Plaintiffs do not contend that the

24  posting of the document was wrongful or that said document should be removed.

25  However, the posts made it apparent that Elmer was a former employee of Plaintiffs,

26  was bound by various non-disclosure and banking privacy laws of Switzerland and

27  the Cayman Islands, and was the person responsible for providing information about

28  the Julius Baer bank to the owners/operators of the Wikileaks website.  Likewise,

                                                              **COMPLAINT**

1   by e-mail dated January 1, 2007, received by, among others, employees of BJB

2   (whose e-mail addresses are available via the Julius Baer Group's website), BJB was

3   referred to and for the first time became aware of "Wikileaks". The e-mail, which

4   could again be traced back to Mauritius, was again sent by "Robin Hood", this time

5   from the account "robinhoodii@hotmail.com" and referred to a folder placed on

6   Wikileaks named "Bank Julius Baer vs. Rudolf Elmer."

7        26.    Subsequently, commencing on or about January 13, 2008, Elmer began

8   posting hundreds of documents containing stolen or otherwise wrongfully obtained

9   and disclosed confidential banking records belonging to Plaintiffs, including altered

10   and/or forged or semi-forged "leaked" documents.  Elmer and Defendants have

11   posted onto the website and continue to display or make available the documents

12   which contain confidential banking records and client data.  The JB Property, as

13   disclosed on the Website, references protected customer and consumer bank files,

14   records, data and account information related to or purported to relate to certain of

15   JBBT's bank customers, all of which are protected by law and/or owned by JBBT

16   and/or BJB and have never been authorized to be disclosed to the public.  Plaintiffs

17   would not have disclosed, nor knowingly made the private and confidential portions

18   of the JB Property available, to the public.

19        27.    The "JB Property" includes and is herein defined as: any and all

20   documents and information originating from BJB's and/or JBBT's banks and

21   affiliated bank branches, which contains private client or customer bank records

22   and/or identifies client or customer names, data, account records and/or bank

23   account numbers, whether or not such documents and information are authentic,

24   semi-altered, semi-fraudulent or forged, and which appears to have originated from

25   or could reasonably be known to be or considered to constitute or have originated

26   from data and documents stolen or misappropriated from one or more of Plaintiff's

27   bank branches and/or computers.  Attached hereto as Exhibit "G" is a index listing

28   (as titled by Wikileaks and/or Elmer, but semi-redacted) of the JB Property made

1   available by Wikileaks through their Website.

2   28.   Plaintiffs have <u>not</u> sought to, nor do they have any desire to, censor

3   any alleged public discussion on the various civil and criminal legal proceedings

4   related to Elmer.   In that regard, Plaintiffs have not requested nor demanded

5   removal of or reference to any articles related to the existence of the dispute with

6   Elmer.   Plaintiffs merely seek the removal of the specific stolen confidential bank

7   documents or, at minimum, all of the identifying client/customer data, names and

8   bank account numbers.

9   29.   Wikileaks is fully knowledgeable of the nature of the unlawfully

10   obtained and protected consumer banking records.   Despite notice to Wikileaks'

11   counsel of (i) the nature of the unlawfully leaked documents and (ii) that the source

12   of the documents is bound by a written confidentiality agreement and various

13   banking privacy laws; and reasonable requests that the identifying information be

14   removed, Wikileaks has refused to remove the posted stolen documents, as well as

15   any of the identifying client/customer data.   In fact, after a good-faith effort to

16   resolve the matter by a call to and discussion with Wikileaks' counsel, Wikileaks

17   thereafter posted misstatements of the conversation and all of opposing counsel's

18   contact information and email address on the website, and at the same time, removed

19   the contact information for its own counsel.

20   30.   Wikileaks and its owners', operators' and users attempt to operate under

21   a veil of anonymity, or as they term it "transparency," yet its owners, operators and

22   agents proudly post and disseminate the names, contact information and even private

23   bank records of others.   Wikileaks has sought to capitalize on and further exploit its

24   own unfair and unlawful practices and conduct, as set forth herein, to increase their

25   Website's notoriety and traffic.

26   31.   The publication, dissemination and exploitation of stolen, legally

27   protected customer and consumer bank files related to Plaintiffs' bank customers has

28   resulted in harm to Plaintiffs' reputations, its customers' confidence in the bank and

1   its client/customer banking relationships, among other harms and actual losses.

2   Such publication, dissemination and exploitation is also in breach of the relevant

3   banking and privacy laws of Switzerland and the Cayman Islands.

### FIRST CLAIM FOR RELIEF

**For Unlawful and Unfair Business Practices in**

**Violation of Cal. Bus. & Prof. Code § 17200**

**(Against Defendants Wikileaks, Wikileaks.org and Does 1-10)**

8   32.   Plaintiffs repeat, reallege, adopt and incorporate each and every

9   allegation contained in Paragraphs 1 through 31, inclusive, as though fully set forth

10   herein.

11   33.   Defendants wrongful and unlawful use, post, display and/or

12   dissemination of the JB Property, and/or forgeries thereof, as herein alleged,

13   constitutes unfair and unlawful business practices in violation of, among other

14   things, California Business and Professions Code §§ 17200 through 17203.

15   34.   Plaintiffs are the sole owners of all right, title and interest in the JB

16   Property.   Defendants' use, display and dissemination of the JB Property is

17   unauthorized, unfair and unlawful.   Defendants' unlawful use, display and

18   dissemination of the JB Property on the website constitutes an infringement of

19   Plaintiffs' rights and constitutes a violation of the applicable Swiss and Cayman

20   Islands banking and consumer protection laws, as well as California state privacy

21   rights and laws.

22   35.   Defendants use, post, display and/or dissemination of the JB Property,

23   and/or forgeries thereof, has and continues to harm Plaintiffs' reputations and their

24   businesses, its customers' confidence in the bank, its client/customer banking

25   relationships, and could potentially undermine the banks', and all banking

26   institutions', ability to continue to effectively operate, among other harms.

27   / / /

28   36.   On or about January 22, 2008, Plaintiffs demanded the return of the JB

**COMPLAINT**

1     Property and the removal from use, post, display and dissemination of the JB

2     Property on the website, or at minimum, removal of all of the identifying

3     client/customer data, names and bank account numbers.   Notwithstanding the

4     demands for the return of the JB Property and removal from use, post, display and

5     dissemination of the JB Property on the website, or at minimum, removal of all of

6     the identifying client/customer data, names and bank account numbers, Defendants

7     have failed and refuse to return the stolen property and/or remove the stolen JB

8     Property from the Website, or even any of the identifying client/customer data,

9     names and bank account numbers.

10     37.   Despite notice to Wikileaks' of the nature of the illegally posted private

11     bank records, and information as to the source of the documents, that the source is

12     bound by a written confidentiality agreement and various banking privacy laws,

13     Wikileaks has not only refused to remove the posted stolen documents and data, but

14     has thereafter actually sought to draw attention to them elsewhere on the Website to

15     further capitalize on and exploit its own unlawful conduct to increase the Website's

16     notoriety and traffic.

17     38.   Plaintiffs are informed and believe and on that basis allege that

18     Defendants had prior knowledge of Plaintiffs' rights and claims in and to the JB

19     Property, and that the JB Property constitutes legally protected consumer and client

20     banking records, and that Wikileaks' use, display and dissemination of the JB

21     Property is an unlawful and unfair practice.  Or, at minimum, after receipt of such

22     knowledge, Wikileaks continued their unlawful and unfair practices by their further

23     use and dissemination of the JB Property.

24     39.   Plaintiffs have suffered injury and damages and have lost income and/or

25     property as a result of Wikileaks' unlawful and unfair practices in violation of

26     Plaintiffs' legally protected interests.

27     / / /

28     40.   California's Unfair Competition Law ("UCL") permits civil recovery

**COMPLAINT**

1    and injunctive relief for "any unlawful, unfair or fraudulent business act or

2    practice," including if a practice or act violates or is considered unlawful under any

3    other State, Federal or foreign law.  Wikileaks has violated the UCL by failing and

4    refusing to comply with requirements of the applicable Swiss and Cayman Island

5    banking and consumer protection laws, as well as, among other laws, California

6    state privacy laws.

7          41.    Accordingly, pursuant to Bus. & Prof. Code §§ 17200 and 17203,

8    Plaintiffs request the issuance of temporary, preliminary and permanent injunctive

9    relief enjoining Defendants, and each of them, and their agents and employees, from

10   publishing, distributing and/or otherwise disseminating or making available, whether

11   directly, indirectly or through providing DNS hosting services, the JB Property, and

12   from making use of the JB Property or images of the JB Property or any information

13   contained therein; and upon a final hearing seek an Order permanently enjoining

14   Defendants, and each of them, and their respective agents and employees, from

15   publishing, distributing and/or otherwise disseminating the JB Property, and from

16   making use of the JB Property or images of the JB Property or any information

17   contained therein.   Specifically, Plaintiffs request injunctive relief enjoining,

18   restraining and/or ordering Defendants and all of their officers, directors,

19   stockholders, owners, agents, servants, employees, representatives and attorneys,

20   and all those in active concert or participation with Defendants, and each of them,

21   including, but not limited to, as follows:

22                (a)    An order restraining and enjoining Defendants from

23   displaying, posting, publishing, distributing, linking to and/or otherwise providing

24   any information for the access or other dissemination of copies of and/or images of

25   the JB Property (as defined herein) and any information or data contained therein,

26   including on the Website operated at wikileaks.org and any other websites under

27   Defendants' ownership, control and/or which they can post or edit any content;

28                (b)    An order restraining and enjoining Defendants from any

1 further use, display, post, publication, distribution, linking to and/or otherwise
2 providing any information for the access or other dissemination of copies of and/or
3 images of the JB Property and any information or data contained therein, including
4 on the website operated at wikileaks.org and any other websites under their
5 ownership, control and/or which they can post or edit any content;

6         (c)    An order that Defendants immediately block and otherwise
7 prevent any further use, display, posting, publication, distribution, linking to and/or
8 other dissemination of copies of and/or images of the JB Property and any other new
9 or additional yet unpublished documents and data that constitute or could reasonably
10 be known to be or considered to constitute JB Property, pending further order of this
11 Court;

12         (d)    An order that Defendants immediately remove from their
13 wikileaks.org website, and any other websites owned or operated by Defendants or
14 within their control, any and all copies of and/or images of the JB Property and any
15 information or data contained therein;

16         (e)    An order that Defendants immediately give notice of this
17 Order to all of their DNS hosting services, ISP's, domain registrars, website site
18 developers, website operators and website host service providers, and anyone else
19 responsible or with access to modify the Website, and that the same are to cease and
20 desist from any further use, display, posting, publication, distribution, linking to
21 and/or other dissemination of copies of and/or images of the JB Property and any
22 information contained therein pending further order of this Court;

23         (f)    An order that Defendant DYNADOT, LLC is to
24 immediately clear and remove all DNS hosting records for the domain name
25 wikileaks.org and prevent the domain name from resolving to the wikileaks.org
26 website, or any other website or server, until proof is submitted to the Court by
27 Defendants, under penalty of perjury, that all JB Property has been removed from
28 the website and any and all links or information for access thereof;

1    (g)    An order that Defendant DYNADOT, LLC is to lock the

2  domain name wikileaks.org from transfer and lock and prevent any administrative

3  or other access to the domain name by any persons pending further order of this

4  Court; and

5    (h)    An order that Defendant DYNADOT, LLC is to remove

6  the optional privacy who-is service from the wikileaks.org domain name, preserve

7  the true and correct who-is records and data for the registrant and administrative

8  contacts of the domain name, both current and any and all prior or previously listed

9  who-is records and data associated with the domain name registration and account

10  and payment thereon, and immediately provide Plaintiffs' counsel with a copy of all

11  such who-is records.

12  **SECOND CLAIM FOR RELIEF**

13  **For Declaratory Relief**

14  **(Against All Defendants)**

15    42.    Plaintiffs repeat, reallege, adopt and incorporate each and every

16  allegation contained in Paragraphs 1 through 31, inclusive, as though fully set forth

17  herein.

18    43.    Plaintiffs are the sole owners of all right, title and interest in the JB

19  Property.   Defendants' use, display and dissemination of the JB Property is

20  unauthorized.   Defendants' unauthorized use, display and dissemination of the JB

21  Property on the website constitutes an infringement of Plaintiffs' rights and a

22  violation of the applicable Swiss, Cayman Island and US banking and privacy

23  protection laws.

24    44.    On or about January 22, 2008, Plaintiffs demanded the return of the JB

25  Property and the removal from use, post, display and dissemination of the JB

26  Property on the Website, or at minimum, removal of all of the identifying

27  client/customer data, names and bank account numbers.

28

45.     Notwithstanding the demands for the return of the JB Property and removal from use, post, display and dissemination of the JB Property on the Website, or at minimum, removal of all of the identifying client/customer data, names and bank account numbers, Defendants have failed and refuse to return the stolen property and/or remove the stolen JB Property from the Website or even any of the identifying client/customer data, names and bank account information.

46.     Plaintiffs are informed and believe and on that basis allege that Defendants had prior knowledge of Plaintiffs rights and claims in and to the JB Property and that the JB Property constitutes legally protected consumer and client banking records and data, or, at minimum, after receipt of such knowledge, continued their unauthorized use and dissemination of the JB Property.  Defendants assert that they have the right to use, post, publish and/or disseminate all aspects and information of and contained in the legally protected and confidential customer and consumer banking records merely because an anonymous unverified source stole them and provided them to the owners/operators of the Website at Wikileaks' request and/or solicitation.

47.     Plaintiffs lack an adequate remedy at law.  Plaintiffs have suffered irreparable harm through the loss of their exclusive rights to JB Property and will continue to be irreparably injured unless the Court declares that the JB Property is protected confidential consumer banking records and data, and that Defendants' conduct is wrongful.

48.     Plaintiffs are entitled to declaratory relief that: (i) Plaintiffs are the sole owners of all right, title and interest in the JB Property; (ii) Defendants' use, display and dissemination of the JB Property is unauthorized; and that (iii) Defendants' unauthorized use, display and dissemination of the JB Property on the Website constitutes an infringement of Plaintiffs' rights and of the applicable Swiss, Cayman Island and US banking and privacy protection laws.

/ / /

**COMPLAINT**

# THIRD CLAIM FOR RELIEF

## For Interference with Contract

### (Against Defendants Wikileaks, Wikileaks.org and Does 1-10)

49.    Plaintiffs repeat, reallege, adopt and incorporate each and every allegation contained in Paragraphs 1 through 31, inclusive, as though fully set forth herein.

50.    Plaintiffs have a valid written employment and confidentiality agreement (Exhibit "C") with ex-employee Elmer, which provides, *inter alia*, pursuant to paragraph "11. Confidentiality" that:

> "Employee shall not at any time during his employment …
> or at any time after his employment has terminated
> disclose to any person any information as the practice,
> business, dealings or affairs of the Employer or any of the
> Employer's customers or clients or as to any other matters
> which may come to his knowledge by reason of his
> employment."

Per the terms of and as part of his employment agreements, Elmer is further bound by various banking privacy laws, including Swiss, Cayman Island and US law, which prohibit the disclosure of information and secrets entrusted to Elmer or of which he has become aware thereof in this capacity as a bank employee.

51.    Plaintiffs are informed and believe and based thereon allege that Defendants had knowledge of the written confidentiality agreement with the third-party, or should reasonably have had knowledge of or been aware of said agreement and/or confidential restrictions and protections prohibiting disclosure of the JB Property.

52.    Defendants' intentional acts were designed to induce a breach or disruption of a contractual relationship.  The sole purpose of Defendants' website is to provide a site for "uncensorable" and "untraceable mass document leaking,"

1   regardless of legality or contractual confidentiality agreements.  The purpose of
2   "Wikileaks [is to] provide[] simple and straightforward means for anonymous and
3   untraceable leaking of documents."

4          53.    As a result of Defendants' on-going tortious scheme to solicit the
5   submission or upload of and thereafter publicly disseminate stolen or otherwise
6   illegally obtained confidential banking and consumer records, Elmer breached (and
7   thereafter continued to repeatedly breach by additional postings on the website) his
8   written employment and confidentiality agreement.  Wikileaks have knowingly and
9   intentionally become joint-tortfeasers with Elmer, who has severely breached the
10  terms of the Agreement.

11         54.    As a direct and proximate result of Defendants' intentional interference
12  with Plaintiffs' contract with Elmer, Plaintiffs have been injured in an amount of
13  damages to be determined according to proof at trial, but which exceeds the
14  jurisdictional requirements of this Court.

15                          **FOURTH CLAIM FOR RELIEF**
16                **For Interference with Prospective Economic Advantage**
17             **(Against Defendants Wikileaks, Wikileaks.org and Does 1-10)**

18         55.    Plaintiffs repeat, reallege, adopt and incorporate each and every
19  allegation contained in Paragraphs 1 through 31, inclusive, as though fully set forth
20  herein.

21         56.    Plaintiffs and their related entities manage substantial assets, and carry
22  out, amongst other things, private banking and trust services, for private and
23  institutional clients from all over the world.  Plaintiffs' economic relationships with
24  said private and institutional clients are continuing and renewable with the
25  probability of future economic benefit to Plaintiffs, but at said clients' discretion,
26  based largely on the quality of services provided, including, but not limited to, the
27  banks' maintenance of privacy and protection of client and customer banking
28  records, data and information.

**COMPLAINT**

57.   Plaintiffs are informed and believe and based thereon allege that Defendants have knowledge of the nature of the relationships between Plaintiffs, as banking institutions, and Plaintiffs' private and institutional clients.  As set forth hereinabove, Defendants' intentional acts were designed to interfere with or disrupt the relationships between Plaintiffs, as banking institutions, and their private and institutional clients.  The sole purpose of Defendants' Website is to provide a site for "uncensorable" and "untraceable mass document leaking," regardless of legality or contractual confidentiality agreements.  Defendants expressly state on their Website that "Wikileaks provides simple and straightforward means for anonymous and untraceable leaking of documents."

58.   As a result of Defendants' on-going scheme to solicit the submission and/or upload of and thereafter publicly disseminate stolen or otherwise illegally obtained confidential banking and consumer records, Defendants have caused interference with or disruption of the confidential banking relationship between Plaintiffs, as banking institutions, and their private and institutional clients.

59.   As a direct and proximate result of Defendants' intentional interference with Plaintiffs' prospective economic relations, Plaintiffs have been injured in an amount of damages to be determined according to proof at trial, but which exceeds the jurisdictional requirements of this Court.

## FIFTH CLAIM FOR RELIEF

### For Conversion

### (Against Defendants Wikileaks, Wikileaks.org and Does 1-10)

60.   Plaintiffs repeat, reallege, adopt and incorporate each and every allegation contained in Paragraphs 1 through 31, inclusive, as though fully set forth herein.

61.   At all times relevant hereto, Plaintiffs were, and are, the sole and rightful owners of the documents and property described, to the best of Plaintiffs' pre-discovery ability, as the JB Property.

62.     Although most of the JB Property described above consists of copies of documents and data and records that belong to Plaintiffs' banks, the JB Property described herein has intrinsic business value based on the confidential control and use thereof, the exact amount of which is unknown.

63.     As set forth hereinabove, at some point and in some manner Defendants wrongfully and without Plaintiffs' authority or approval took possession of the JB Property or copies thereof, and have converted the JB Property for their own use and gain and/or in a manner intended to harm Plaintiffs.

64.     On or about January 22, 2008, Plaintiffs demanded the immediate return of all JB Property and the removal of use, post, display and dissemination of the JB Property from Defendants' website.  Notwithstanding the demands for the return and removal from the website of the JB Property, Defendants have failed and refused to return and/or remove from use, post, display and dissemination, the property.

65.     As a direct and proximate result of Defendants' wrongful conversion of the JB Property, Plaintiffs have been damaged in an amount that is not yet fully ascertainable.  Between the time of Defendants' conversion of the JB Property and the filing of this lawsuit, Plaintiffs have expended substantial time and money in legal fees and costs in pursuit of the return of the converted JB Property, all to Plaintiffs' further damage in an amount according to proof at trial.

66.     No adequate remedy exists at law for the injuries suffered by Plaintiffs herein, insofar as further harm will result to Plaintiffs from Defendants' wrongful act of conversion of the JB Property absent injunctive relief.  Absent granting injunctive relief of the type and for the purpose specified herein, Plaintiffs will suffer irreparable injury.  Therefore, in addition to the award for damages set forth herein, Plaintiffs requests the issuance of temporary, preliminary and permanent injunctive relief enjoining Defendants, and each of them, and all of their officers, directors, stockholders, owners, agents, servants, employees, representatives and attorneys,

**COMPLAINT**

1 and all those in active concert or participation with Defendants, from publishing,
2 distributing and/or otherwise disseminating or making available, whether directly,
3 indirectly or through providing DNS hosting services, the JB Property and from
4 making use of the JB Property or images of the JB Property or any information
5 contained therein; and upon a final hearing seek an Order permanently enjoining
6 Defendants, and each of them, and their respective agents and employees, from
7 publishing, distributing and/or otherwise disseminating the JB Property and from
8 making use of the JB Property or images of the JB Property or any information
9 contained therein.

## SIXTH CLAIM FOR RELIEF

### For Injunctive Relief

### (Against All Defendants)

13     67.    Plaintiffs repeat, reallege, adopt and incorporate each and every
14 allegation contained in Paragraphs 1 through 31, inclusive, as though fully set forth
15 herein.

16     68.    Plaintiffs are informed and believe and thereon allege that as a result of
17 the wrongful conduct and activities of Defendants described herein, Plaintiffs have
18 and will suffer great and irreparable harm and damage. Plaintiffs are informed and
19 believe and thereon allege that as a result of the conduct of Defendants described
20 herein, Plaintiffs have sustained and will sustain actual damages that may be difficult
21 to ascertain with certainty.

22     69.    Plaintiffs allege on information and belief that they have no adequate
23 remedy at law for the injuries which they have suffered and will continue to suffer
24 in the future unless the wrongful conduct of Defendants, and each of them, is
25 restrained and enjoined, because it is and will be impossible for Plaintiffs to
26 determine the precise amount of damage, and no amount of money can restore the
27 potential harm to Plaintiffs caused by Defendants, and each of them, as a result of
28 the conduct alleged herein.

70.     Plaintiffs are informed and believe and thereon allege that there is a serious risk that they will suffer irreparable harm absent the injunctive relief sought herein, in that the wrongs that have been and will in the future be performed by Defendants, and each of them, are of a continuing character and will expose Plaintiffs to a continuing injury as the JB Property is further disseminated and additional Internet users view, visit or otherwise acquire the information wrongfully posted on the website.  Plaintiffs are further informed and believe and thereon allege that there is a serious risk that they will suffer irreparable harm absent the injunctive relief sought herein, in that the wrongs that have been and will in the future be done by Defendants, and each of them, will give rise to a multiplicity of judicial proceedings absent the injunctive relief sought herein.

71.     Accordingly, Plaintiffs request the issuance of temporary, preliminary and permanent injunctive relief enjoining Defendants, and each of them, and their agents and employees, from publishing, distributing and/or otherwise disseminating or making available, whether directly, indirectly or through providing DNS hosting services, the JB Property, and from making use of the JB Property or images of the JB Property or any information contained therein; and upon a final hearing seek an Order permanently enjoining Defendants, and each of them, and their respective agents and employees, from publishing, distributing and/or otherwise disseminating the JB Property, and from making use of the JB Property or images of the JB Property or any information contained therein.  Specifically, Plaintiffs request injunctive relief, enjoining, restraining and/or ordering Defendants and all of their officers, directors, stockholders, owners, agents, servants, employees, representatives and attorneys, and all those in active concert or participation with Defendants, and each of them, including, but not limited to, as follows:

(a)     An order restraining and enjoining Defendants from displaying, posting, publishing, distributing, linking to and/or otherwise providing any information for the access or other dissemination of copies of and/or images of

the JB Property (as defined herein) and any information or data contained therein, including on the Website operated at wikileaks.org and any other websites under Defendants' ownership, control and/or which they can post or edit any content;

(b) An order restraining and enjoining Defendants from any further use, display, post, publication, distribution, linking to and/or otherwise providing any information for the access or other dissemination of copies of and/or images of the JB Property, and any information or data contained therein, including on the website operated at wikileaks.org and any other websites under Defendants' ownership, control and/or which they can post or edit any content;

(c) An order that Defendants immediately block and otherwise prevent any further use, display, posting, publication, distribution, linking to and/or other dissemination of copies of and/or images of the JB Property and any other new or additional yet unpublished documents and data that constitute or could reasonably be known to be or considered to constitute JB Property, pending further order of this Court;

(d) An order that Defendants immediately remove from their wikileaks.org website, and any other websites owned or operated by Defendants or within their control, any and all copies of and/or images of the JB Property and any information or data contained therein;

(e) An order that Defendants immediately give notice of this Order to all of their DNS hosting services, ISP's, domain registrars, website site developers, website operators and website host service providers, and anyone else responsible or with access to modify the website, and that they are to cease and desist from any further use, display, posting, publication, distribution, linking to and/or other dissemination of copies of and/or images of the JB Property and any information contained therein pending further order of this Court;

(f) An order that Defendant DYNADOT, LLC is to immediately clear and remove all DNS hosting records for the domain name

**COMPLAINT**

1  wikileaks.org and prevent the domain name from resolving to the wikileaks.org

2  website, or any other website or server, until proof is submitted to the Court by

3  Defendants, under penalty of perjury, that all JB Property has been removed from

4  the website and any and all links or information for access thereof;

5       (g)    An order that Defendant DYNADOT, LLC is to lock the

6  domain name wikileaks.org from transfer and lock and prevent any administrative

7  or other access to the domain name by any persons pending further order of this

8  Court; and

9       (h)    An order that Defendant DYNADOT, LLC is to remove

10  the optional privacy who-is service from the wikileaks.org domain name, preserve

11  the true and correct who-is records and data for the registrant and administrative

12  contacts of the domain name, both current and any and all prior or previously listed

13  who-is records and data associated with the domain name registration and account

14  and payment thereon, and immediately provide Plaintiffs' counsel with a copy of all

15  such who-is records.

16      **WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each

17  of them, as pled hereinabove, as follows:

18  **AS TO THE FIRST CLAIM FOR RELIEF:**

19      1.    That a preliminary injunction issue, as set forth in detail hereinabove,

20  enjoining Defendants, and each of them, and all of their officers, directors,

21  stockholders, owners, agents, servants, employees, representatives and attorneys,

22  and all those in active concert or participation with Defendants, and each of them,

23  from publishing, distributing and/or otherwise disseminating or making available,

24  whether directly, indirectly or through providing DNS hosting services, the JB

25  Property, and from making use of the JB Property or images of the JB Property or

26  any information contained therein;

27      2.    That, upon a final hearing, a permanent injunction issue, as set forth in

28  detail hereinabove, enjoining Defendants, and each of them, and all of their officers,

1  directors, stockholders, owners, agents, servants, employees, representatives and

2  attorneys, and all those in active concert or participation with Defendants, and each

3  of them, from publishing, distributing and/or otherwise disseminating or making

4  available, whether directly, indirectly or through providing DNS hosting services,

5  the JB Property, and from making use of the JB Property or images of the JB

6  Property or any information contained therein.

7  **AS TO THE SECOND CLAIM FOR RELIEF:**

8      3.      For declaratory relief, as set forth hereinabove, that: (i) Plaintiffs are

9  the sole owners of all right, title and interest in the JB Property; (ii) Defendants' use,

10  display and dissemination of the JB Property is unauthorized; and that (iii)

11  Defendants' unauthorized use, display and dissemination of the JB Property on the

12  Website constitutes an infringement of Plaintiffs' rights and violation of applicable

13  banking and consumer protection laws.

14  **AS TO THE THIRD CLAIM FOR RELIEF:**

15      4.      Compensatory damages against the Wikileaks Defendants, and each of

16  them, jointly and severally, in an amount not less than the jurisdictional minimum,

17  in accordance with proof at trial, together with interest thereon at the legal rate;

18      5.      For punitive and exemplary damages.

19  **AS TO THE FOURTH CLAIM FOR RELIEF:**

20      6.      Compensatory damages against the Wikileaks Defendants, and each of

21  them, jointly and severally, in an amount not less than the jurisdictional minimum,

22  in accordance with proof at trial, together with interest thereon at the legal rate;

23      7.      For punitive and exemplary damages.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

**AS TO THE FIFTH CLAIM FOR RELIEF:**

8.    For damages for the proximate and foreseeable loss resulting from the Wikileaks Defendants' conversion in a sum according to proof at the time of trial, together with interest thereon at the legal rate;

9.    That a preliminary injunction issue, as set forth in detail hereinabove, enjoining Defendants, and each of them, and all of their officers, directors, stockholders, owners, agents, servants, employees, representatives and attorneys, and all those in active concert or participation with Defendants, and each of them, from publishing, distributing and/or otherwise disseminating or making available, whether directly, indirectly or through providing DNS hosting services, the JB Property and from making use of the JB Property or images of the JB Property or any information contained therein;

10.    That, upon a final hearing, a permanent injunction issue, as set forth in detail hereinabove, enjoining Defendants, and each of them, and all of their officers, directors, stockholders, owners, agents, servants, employees, representatives and attorneys, and all those in active concert or participation with Defendants, and each of them, from publishing, distributing and/or otherwise disseminating or making available, whether directly, indirectly or through providing DNS hosting services, the JB Property, and from making use of the JB Property or images of the JB Property or any information contained therein.

**AS TO THE SIXTH CLAIM FOR RELIEF:**

11.    That a preliminary injunction issue, as set forth in detail hereinabove, enjoining Defendants, and each of them, and all of their officers, directors, stockholders, owners, agents, servants, employees, representatives and attorneys, and all those in active concert or participation with Defendants, and each of them, from publishing, distributing and/or otherwise disseminating or making available, whether directly, indirectly or through providing DNS hosting services, the JB Property and from making use of the JB Property or images of the JB Property or

1  any information contained therein;

2      12.    That, upon a final hearing, a permanent injunction issue, as set forth

3  in detail hereinabove, enjoining Defendants, and each of them, and all of their

4  officers,   directors,   stockholders,   owners,   agents,   servants,   employees,

5  representatives and attorneys, and all those in active concert or participation with

6  Defendants, and each of them, from publishing, distributing and/or otherwise

7  disseminating or making available, whether directly, indirectly or through providing

8  DNS hosting services, the JB Property, and from making use of the JB Property or

9  images of the JB Property or any information contained therein.

10 **AS TO ALL CAUSES OF ACTION:**

11     13.    For costs of suit herein;

12     14.    For interest on the above-requested general and special damages and

13 at the maximum legal rate as provided by law; and

14     15.    For such other additional relief as the Court deems just and proper.

15
                                    Respectfully submitted,
16
   DATED: February 6, 2008           LAVELY & SINGER
17                                    PROFESSIONAL CORPORATION
                                      MARTIN D. SINGER
18                                    WILLIAM J. BRIGGS, II
                                      EVAN N. SPIEGEL
19

20                                    By:
21                                        WILLIAM J. BRIGGS, II
                                      Attorneys for Plaintiffs BANK JULIUS
22                                    BAER & CO. LTD and JULIUS BAER
                                      BANK AND TRUST CO. LTD

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

4405-2\Ple\COM 020408                  31

                                                    **COMPLAINT**

1

## <u>REQUEST FOR JURY TRIAL</u>

2      Plaintiff hereby demands a jury trial pursuant to Rule 38 of the Federal Rules

3  of Civil Procedure.

4                                      Respectfully submitted,

5  DATED: February 6, 2008         LAVELY & SINGER
                                    PROFESSIONAL CORPORATION
6                                   MARTIN D. SINGER
                                    WILLIAM J. BRIGGS, II
7                                   EVAN N. SPIEGEL

8                                   By:
9                                       WILLIAM J. BRIGGS, II
                                    Attorneys for Plaintiffs BANK JULIUS
10                                  BAER & CO. LTD and JULIUS BAER
                                    BANK AND TRUST CO. LTD
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                            **COMPLAINT**