1  Thomas R. Burke (CA State Bar No. 141930)      Kelli L. Sager (CA State Bar No. 120162)
2  thomasburke@dwt.com                             kellisager@dwt.com
   DAVIS WRIGHT TREMAINE LLP                       DAVIS WRIGHT TREMAINE LLP
3  505 Montgomery Street                           865 South Figueroa Street, Suite 2400
   Suite 800                                       Los Angeles, California 90017-2566
4  San Francisco, California  94111                Telephone:    (213) 633-6800
   Telephone:    (415) 276-6500                    Facsimile:    (213) 633-6899
5  Facsimile:    (415) 276-6599

6  Laura R. Handman
7  (admission *pro hac vice* pending)
   laurahandman@dwt.com
8  DAVIS WRIGHT TREMAINE LLP
   1919 Pennsylvania Avenue, NW
9  Suite 200
   Washington, DC 20006
10 Telephone:    (202) 973-4200
11 Facsimile:    (202) 973-4499

12 Attorneys for *Amici Curiae* The Reporters Committee for Freedom of the Press; the American
   Society of Newspaper Editors; the Associated Press; Citizen Media Law Project; The E.W.
13 Scripps Co.; Gannett Co., Inc.; The Hearst Corporation; the *Los Angeles Times*; National
   Newspaper Association; Newspaper Association of America;  Radio-Television News Directors
14 Association; and the Society of Professional Journalists

15

16                      IN THE UNITED STATES DISTRICT COURT

17                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

18                            SAN FRANCISCO DIVISION

19 BANK JULIUS BAER & CO. LTD, a Swiss      )   Case No. CV08-0824 JSW
   entity; and JULIUS BAER BANK AND TRUST   )
20 CO. LTD., a Cayman Islands entity,       )   **NOTICE OF MOTION AND MOTION**
                                            )   **FOR LEAVE TO FILE BRIEF OF** *AMICI*
21              Plaintiffs,                 )   *CURIAE*; **MEMORANDUM OF POINTS**
                                            )   **& AUTHORITIES IN SUPPORT**
22         v.                               )   **THEREOF**
                                            )
23 WIKILEAKS, an entity of unknown form,    )
   WIKILEAKS.ORG., an entity of unknown form; )
24 DYNADOT, LLC, a California limited liability )  Date: February 29, 2008
   corporation; and DOES 1 through 10 inclusive, )  Time: 9:00 a.m.
25                                          )   Courtroom: 2, 17th Floor
                                            )
26              Defendants.                 )   **Oral Argument Requested**
   _____ )

27

28

DAVIS WRIGHT TREMAINE LLP

**TO: ALL PARTIES AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN that The Reporters Committee for Freedom of the Press; the American Society of Newspaper Editors; the Associated Press; Citizen Media Law Project; The E.W. Scripps Co.; Gannett Co., Inc.; The Hearst Corporation; the *Los Angeles Times*; National Newspaper Association; Newspaper Association of America; the Radio-Television News Directors Association; and the Society of Professional Journalists (collectively *"Amici"*) hereby move for leave to file a Brief *Amici Curiae*, a copy of which has been filed concurrently with this Motion. This Motion is based upon this Notice of Motion, Memorandum of Points and Authorities in Support of Motion, and upon the Brief of *Amici Curiae*. Counsel for *Amici* has conferred with Plaintiffs' counsel concerning this Motion, and Plaintiffs' counsel opposes *Amici*'s filings.

DATED this 26th day of February, 2008.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

s/ Thomas R. Burke

Thomas R. Burke (CA State Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street
Suite 800
San Francisco, California 94111
Telephone:    (415) 276-6500
Facsimile:    (415) 276-6599
Email:        thomasburke@dwt.com

Laura R. Handman
(admission *pro hac vice* pending)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20006
Telephone:    (202) 973-4200
Facsimile:    (202) 973-4499
Email:        laurahandman@dwt.com

Kelli L. Sager (CA State Bar No. 120162)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone:    (213) 633-6800
Facsimile:    (213) 633-6899
Email:        kellisager@dwt.com

Attorneys for *Amici Curiae*

DAVIS WRIGHT TREMAINE LLP

2

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## MOTION FOR LEAVE TO FILE BRIEF OF *AMICI CURIAE*

*Amici Curiae* respectfully request that this Court grant them leave to file their Brief, filed herewith, opposing continuation of the Amended Temporary Restraining Order of February 15, 2008 and advising reconsideration of the Permanent Injunction. *Amici* consist of news organizations and members of the press who gather and disseminate news and information of public interest in the Ninth Circuit and throughout the nation, and organizations dedicated to preserving rights of free speech on the Internet guaranteed by the First Amendment. *Amici* have a significant interest in this case because its outcome will undoubtedly affect their free-speech rights.

This case involves critical First Amendment concerns that have not been briefed for the Court regarding prior restraints on publication. Because Defendant Wikileaks has not appeared in this case, the issue of the Court's Permanent Injunction and Amended Temporary Restraining Order of February 15, 2008 as prior restraints on Defendant's First Amendment rights of speech have not yet been addressed in any briefing before the Court. Instead, because Plaintiffs Bank Julius Baer & Co. and Julius Baer Bank and Trust Co. have been the only parties before the Court, the only interests addressed have been those involved with a standard request for injunctive relief. However, the material at issue is constitutionally protected speech; the restraint enjoining the speech was ordered without addressing the First Amendment considerations required by the U.S. Constitution. Briefing on the First Amendment issues involving prior restraints will aid the court in resolving this case. *Miller-Wohl Co. v. Comm'r of Labor & Industry*, 694 F.2d 203, 204 (9th Cir. 1982) ("classic role of amicus curiae" is to "draw[] the court's attention to law that escaped consideration"); *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) ("An amicus brief should normally be allowed when a party is not represented competently or *is not represented at all* ...") (emphasis added). Particularly when constitutional interests of the press and public are at stake, the court must act as guardian of those interests and avoid an unconstitutional result, even in the absence of adverse parties before the court. *Pacific Gas and Elec. Co. v. Public Utilities Comm'n of Cal.*, 475 U.S. 1, 8 (1986) (plurality opinion) (First

1    Amendment "protects the public's interest in receiving information"); *United States v. Leon*, 468

2    U.S. 897, 938 (1984) ("the judiciary's role [is] as the guardian of the people's constitutional

3    liberties").

4    　　　　As explained in the accompanying brief of *Amici Curiae*, prior restraints are fundamentally

5    at odds with the First Amendment and presumptively unconstitutional. *Nebraska Press Ass'n v.*

6    *Stuart*, 427 U.S. 539 (1976). The U.S. Supreme Court, which has maintained a longstanding

7    hostility toward prior restraints on speech and publication, categorized them as "the most serious

8    and the least tolerable infringement on First Amendment rights." *Id.* at 559.

9    　　　　Any prior restraint against expression requires the party seeking the prior restraint to

10    overcome a heavy burden. *Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971). This Circuit

11    has held that "[i]t is the duty of those who attempt to enjoin speech to show that the situation falls

12    within the exceptions to normal first amendment protection." *Johansen v. San Diego County Dist.*

13    *Council of Carpenters*, 745 F.2d 1289, 1294 (9th Cir. 1984) (citing *Keefe*, 402 U.S. at 419).

14    "Prior restraints may only be upheld if the government establishes that (1) the activity restrained

15    poses either a clear and present danger or a serious and imminent threat to a protected competing

16    interest; (2) the order is narrowly drawn; and (3) less restrictive alternatives are not available."

17    *Levine v. United States Dist. Court*, 764 F.2d 590, 595 (9th Cir. 1985) (internal citations omitted).

18    These standards were not considered by the Court when it granted Plaintiffs' request for injunctive

19    relief. It is the hope that *Amici* may provide the Court with the information needed to aid it in

20    evaluating the constitutionally required protection for the speech at issue here.

21    　　　　*Amici* respectfully request this Court allow them to provide the Court with information on

22    First Amendment concerns involved in this case that will have longstanding implications to the

23    members of the press and free speech organizations by granting its Motion for Leave to File Brief

24    of *Amici Curiae*. Granting this Motion will not delay the proceedings since the proposed *Amicus*

25    Brief accompanies this Motion. *Amici* respectfully request an opportunity to be heard at the

26    hearing on the preliminary injunction, currently scheduled for February 29, 2008.

27    DATED this 26th day of February, 2008.

28

DAVIS WRIGHT TREMAINE LLP

2

1    Respectfully submitted,

2    DAVIS WRIGHT TREMAINE LLP

3

4    s/ Thomas R. Burke

5    Thomas R. Burke (CA State Bar No. 141930)    Kelli L. Sager (CA State Bar No. 120162)
     DAVIS WRIGHT TREMAINE LLP                    DAVIS WRIGHT TREMAINE LLP
6    505 Montgomery Street                        865 South Figueroa Street, Suite 2400
     Suite 800                                    Los Angeles, California 90017-2566
7    San Francisco, California  94111             Telephone:    (213) 633-6800
     Telephone:    (415) 276-6500                 Facsimile:    (213) 633-6899
8    Facsimile:    (415) 276-6599                 Email:        kellisager@dwt.com
     Email:        thomasburke@dwt.com
9
     Laura R. Handman
10   (admission *pro hac vice* pending)
     DAVIS WRIGHT TREMAINE LLP
11   1919 Pennsylvania Avenue, NW
     Suite 200
12   Washington, DC 20006
     Telephone:    (202) 973-4200
13   Facsimile:    (202) 973-4499
     Email:        laurahandman@dwt.com
14

15   Attorneys for *Amici Curiae*

16

17

18

19

20

21

22

23

24

25

26

27

28

Motion for Leave to File Brief of Amici Curiae

1    **APPENDIX A**

2    **CORPORATE DISCLOSURE STATEMENTS AND DESCRIPTIONS OF *AMICI***

3    <u>**The Reporters Committee for Freedom of the Press**</u>

4    The Reporters Committee for Freedom of the Press is a voluntary, unincorporated association of

5    reporters and editors that works to defend the First Amendment rights and freedom of information

6    interests of the news media. The Reporters Committee has provided representation, guidance and

7    research in First Amendment and Freedom of Information Act litigation since 1970. The Reporters

8    Committee for Freedom of the Press is an unincorporated association of reporters and editors with

9    no parent corporation and no stock.

10    <u>**American Society of Newspaper Editors**</u>

11    The American Society of Newspaper Editors is a professional organization of approximately 750

12    persons who hold positions as directing editors of daily newspapers in the United States and

13    Canada. The purposes of the Society include assisting journalists and providing unfettered and

14    effective press in the service of the American people. The American Society of Newspaper Editors

15    has no parent corporation and no stock. ASNE is a "trade association" because it is a continuing

16    association of numerous individuals operated for the purpose of promoting the general

17    professional, legislative and other interests of the news media.

18    <u>**The Associated Press**</u>

19    The Associated Press is a global news agency organized as a mutual news cooperative under the

20    New York Not-for-Profit Corporation Law. AP's members include approximately 1,500 daily

21    newspapers and 5,000 broadcast news outlets throughout the United States. AP has its

22    headquarters and main news operations in New York City and maintains bureaus in 240 cities

23    worldwide. AP news reports in print and electronic formats of every kind reach a subscriber base

24    that includes newspapers, broadcast stations, news networks and online information distributors in

25    121 countries. The Associated Press is not a publicly held corporation and does not have a parent

26    corporation.

27

28

DAVIS WRIGHT TREMAINE LLP

**Citizen Media Law Project**

The Citizen Media Law Project (CMLP) provides education, research, and advocacy on free speech, newsgathering, intellectual property, and other legal issues related to citizen media and online speech generally. The CMLP is jointly affiliated with Harvard Law School's Berkman Center for Internet & Society, a research center founded to explore cyberspace, share in its study, and help pioneer its development, and the Center for Citizen Media, an initiative to enhance and expand grassroots media. The CMLP is an unincorporated association hosted at Harvard Law School, a non-profit educational institution, and has no parent corporation and no stock.

**The E.W. Scripps Co.**

The E.W. Scripps Company is a diverse media enterprise with 18 daily newspapers and numerous weekly publications reaching approximately 1 million readers, nine broadcast television stations, five national cable networks that reach more than 90 million households, an electronic commerce and interactive media division and licensing and syndication division. The E.W. Scripps Company, a publicly traded company, has no parent corporations and no publicly held corporation owns 10 percent or more of its stock.

**Gannett Co., Inc.**

Gannett Co., Inc., an international news and information company, is the largest newspaper publisher in the U.S. Gannett publishes 85 daily newspapers in the U.S., with a combined daily paid circulation of approximately 7.2 million, including USA TODAY, with a circulation of approximately 2.3 million. Gannett owns nearly 1,000 non-daily publications, including USA Weekend, a weekly newspaper magazine, and the company's 23 television stations reach over 20 million households. As well, the company operates web sites integrated with its publishing and broadcasting operations, with USATODAY.com being one of the most popular news sites on the Web. Gannett Co., Inc. is publicly traded, has no parent corporation, and no publicly held company owns 10% or more of its stock.

**The Hearst Corporation**

The Hearst Corporation is a diversified, privately held media company that publishes newspapers, consumer magazines, and business publications. Hearst also owns a leading features syndicate, has

DAVIS WRIGHT TREMAINE LLP

1    interests in several cable television networks, produces programming for television, and is the

2    majority owner of Hearst-Argyle Television, Inc., a publicly traded company that owns and

3    operates numerous television broadcast stations. The Hearst Corporation is privately owned, has

4    no parent corporations, and no publicly held corporation owns 10 percent or more of its stock.

5    **Los Angeles Times**

6    The *Los Angeles Times* is the largest daily metropolitan newspaper in the country, with a daily

7    readership of nearly 2.2 million and about 3.3 million on Sunday.  It is published by Los Angeles

8    Times Communications LLC, a wholly owned subsidiary of Tribune Company, a publicly traded

9    company.  Its Times Community News division publishes the Daily Pilot, Glendale News-Press,

10   Burbank Leader, Foothill Leader, the Huntington Beach Independent, Laguna Beach Coastline

11   Pilot, La Cañada Valley Sun, and Crescenta Valley Sun.  The Times also maintains a number of

12   websites including www.latimes.com, a leading source of national and international news.

13   Tribune Company has no parent corporations, and no publicly held corporation owns 10% or more

14   of its stock.

15   **National Newspaper Association**

16   Established in 1885, the National Newspaper Association (NNA) is the national voice of

17   community newspapers.  NNA represents owners, publishers, and editors of America's

18   community newspapers and with over 2,500 newspaper members, is currently the largest

19   newspaper association in the United States. The mission of the National Newspaper Association is

20   to protect, promote and enhance America's community newspapers. NNA is a 501(c)(6) non-profit

21   trade association with no subsidiaries.

22   **Newspaper Association of America**

23   The Newspaper Association of America is a nonprofit organization representing the interests of

24   more than 2,000 newspapers in the United States and Canada. Its members account for nearly 90

25   percent of the daily newspaper circulation in the United Sates and a wide range of non-daily

26   newspapers. One of NAA's key strategic priorities is to advance newspapers' First Amendment

27   interests, including the ability to gather and report the news. NAA is a non-stock corporation with

28   no parent company.

DAVIS WRIGHT TREMAINE LLP

3

Motion for Leave to File Brief of Amici Curiae

1  **The Radio-Television News Directors Association**

2  The Radio-Television News Directors Association is the world's largest and only professional

3  organization devoted exclusively to electronic journalism. RTNDA is made up of news directors,

4  news directors, news associates, educators and students in radio, television, cable and other

5  electronic media in more than 30 countries. RTNDA is committed to encouraging excellence in

6  the electronic journalism industry and upholding First Amendment freedoms. The Radio-

7  Television News Directors Association is a nonprofit organization with no parent company and

8  does not issue stock.

9  **The Society of Professional Journalists**

10  The Society of Professional Journalists is dedicated to improving and protecting journalism. It is

11  the nation's largest and most broad-based journalism organization, dedicated to encouraging the

12  free practice of journalism and stimulating high standards of ethical behavior. Founded in 1909 as

13  Sigma Delta Chi, SPJ promotes the free flow of information vital to a well-informed citizenry;

14  works to inspire and educate the next generation of journalists; and protects First Amendment

15  guarantees of freedom of speech and press. The Society of Professional Journalists is a non-stock

16  corporation with no parent company.

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

4

Motion for Leave to File Brief of Amici Curiae

# EXHIBIT 1

Thomas R. Burke (CA State Bar No. 141930)
thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street
Suite 800
San Francisco, California 94111
Telephone:    (415) 276-6500
Facsimile:    (415) 276-6599

Kelli L. Sager (CA State Bar No. 120162)
kellisager@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone:    (213) 633-6800
Facsimile:    (213) 633-6899

Laura R. Handman
(admission *pro hac vice* pending)
laurahandman@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
Telephone:    (202) 973-4200
Facsimile:    (202) 973-4499

DAVIS WRIGHT TREMAINE LLP

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BANK JULIUS BAER & CO. LTD, a Swiss entity; and JULIUS BAER BANK AND TRUST CO. LTD., a Cayman Islands entity,<br><br>Plaintiffs,<br><br>v.<br><br>WIKILEAKS, an entity of unknown form, WIKILEAKS.ORG., an entity of unknown form; DYNADOT, LLC, a California limited liability corporation; and DOES 1 through 10 inclusive,<br><br>Defendants. | Case No. CV08-0824 JSW<br><br>Date: February 29, 2008<br>Time: 9:00 a.m.<br>Courtroom: 2, 17th Floor<br><br>**Oral Argument Requested** |

**BRIEF OF AMICI CURIAE THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS; THE AMERICAN SOCIETY OF NEWSPAPER EDITORS; THE ASSOCIATED PRESS; CITIZEN MEDIA LAW PROJECT; THE E.W. SCRIPPS CO.; GANNETT CO., INC.; THE HEARST CORPORATION; THE *LOS ANGELES TIMES*; NATIONAL NEWSPAPER ASSOCIATION; NEWSPAPER ASSOCIATION OF AMERICA; RADIO-TELEVISION NEWS DIRECTORS ASSOCIATION; AND THE SOCIETY OF PROFESSIONAL JOURNALISTS**

# TABLE OF CONTENTS

**Pages**

I.    Summary of Argument ............................................................................. 1

II.   Statement of Facts ................................................................................... 2

III.  JB Has Failed to Meet the Exacting Standard for a Prior Restraint ........................ 4

IV.   The Order Requiring Dynadot to Disable the Wikileaks Website
      Is an Unconstitutional Prior Restraint ...................................................... 6

V.    The TRO Against Wikileaks Is an Impermissible Prior Restraint ........................... 8

      A.    Privacy and Reputational Interests Cannot
            Justify a Prior Restraint ............................................................ 8

      B.    The Laws Cited by JB Do Not Authorize Any Punishment
            of Wikileaks, Let Alone a Prior Restraint ................................. 10

VI.   Both the Order Granting the TRO Against Wikileaks and
      the Stipulated Permanent Injunction Regarding Dynadot
      Lack Findings Required for a Prior Restraint and Are Not
      Narrowly Tailored ................................................................................. 12

VII.  Section 230 of the Communications Decency Act Bars JB's
      Claims Against Wikileaks and Dynadot ................................................. 14

DAVIS WRIGHT TREMAINE LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

1

## TABLE OF AUTHORITIES

2

### CASES

*Alemite Mfg. Corp. v. Staff*, 42 F.2d 832 (2d Cir. 1930) ................................................ 14

*Alexander v. United States*, 509 U.S. 544 (1993) ..................................................... 4, 6

*Allen v. Ghoulish Gallery*, No. 06cv371, 2007 U.S. Dist. LEXIS 37514
    (S.D. Cal. May 23, 2007) ................................................................................. 12

*Almeida v. Amazon.com, Inc.*, 456 F.3d 1316 (11th Cir. 2006) ................................ 15

*Balboa Island Village Inn, Inc. v. Lemen*, 40 Cal. 4th 1141 (2007) ......................... 9

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) ........................................... 1, 7, 8

*Barnes v. Yahoo!, Inc.*, No. 05-926, 2005 WL 3005602 (D. Or. Nov. 8, 2005) ........... 16

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ............................................................ 10

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003) ............................................... 15, 16

*Ben Ezra, Weinstein & Co. v. Am. Online, Inc.*, 206 F.3d 980 (10th Cir. 2000) ......... 15

*Best W. Int'l v. Doe*, No. CV-06-1537, 2006 WL 2091696 (D. Ariz. July 25, 2006) ..... 7

*Blumenthal v. Drudge*, 992 F. Supp. 44 (D.D.C. 1998) ........................................ 16

*Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940 (2d Cir. 1983) ......... 5

*Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003) ...................... 15, 16

*Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291
    (9th Cir. 1987) .......................................................................................... 6, 8

*Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175 (1968) ......... 1, 13, 14

*CBS, Inc. v. Davis*, 510 U.S. 1315 (1994) ........................................................ 5, 9

*CBS, Inc. v. United States Dist. Court*, 729 F.2d 1174
    (9th Cir. 1984) ........................................................................................... 4

*Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991) ............................................. 10

*Copp v. Paxton*, 45 Cal. App. 4th 829 (1996) .................................................. 12

*Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975) ................................................. 8

*Delfino v. Agilent Technologies, Inc.*, 145 Cal. App. 4th 790 (2006),
    *cert. denied*, 128 S. Ct. 98 (2007) .............................................................. 16

*Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal. 4th 376 (1995) .................. 12

*Dendrite Int'l, Inc. v. Doe*, 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001) ............. 7

*DAVIS WRIGHT TREMAINE LLP*

iii

1    *Doe v. Cahill*, 884 A.2d 451 (Del. 2005) ....................................................... 7

2    *Donato v. Moldow*, 865 A.2d 711 (N.J. Super. Ct. App. Div. 2005) ............................. 16

3    *EEOC v. Severn Trent Servs., Inc.*, 358 F.3d 438 (7th Cir. 2004) ................................ 12

4    *Elvis Presley Enters., Inc. v. Passport Video*, 357 F.3d 896 (9th Cir. 2004) ..................... 13

5    *Envtl. Planning & Info. Council v. Superior Court*, 36 Cal. 3d 188 (1984) ...................... 10

6    *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300 (7th Cir. 1990) ......................... 11

7    *Ford Motor Co. v. Lane*, 67 F. Supp. 2d 745 (E.D. Mich. 1999)............................... 1, 5

8    *FTC v. Enforma Natural Prods., Inc.*, 362 F.3d 1204 (9th Cir. 2004).............................. 1, 12, 13

9    *Gilbert v. Nat'l Enquirer, Inc.*, 43 Cal. App. 4th 1135 (1996) ....................................... 9

10   *Glover v. Johnson*, 855 F.2d 277 (6th Cir. 1988) ................................................. 13

11   *Goldblum v. NBC*, 584 F.2d 904 (9th Cir. 1978) ................................................. 4, 9

12   *Granny Goose Foods v. Local 70, Int'l Brotherhood of Teamsters*, 415 U.S. 423 (1974) ...... 1, 12

13   *Huggins v. Povich*, No. 131164/94, 1996 WL 515498 (N.Y. Sup. Ct. Apr. 19, 1996) ............. 12

14   *Hunt v. NBC*, 872 F.2d 289 (9th Cir. 1989) ....................................................... 4

15   *In re Charlotte Observer*, 921 F.2d 47 (4th Cir. 1990) ........................................... 7, 9

16   *In re King World Prods., Inc.*, 898 F.2d 56 (6th Cir. 1990) ....................................... 8

17   *In re North*, 16 F.3d 1234 (D.C. Cir. 1994) ...................................................... 8

18   *In re Providence Journal Co.*, 820 F.2d 1342 (1st Cir. 1986), *modified*
19      *on rehearing en banc*, 820 F.2d 1354 (1st Cir. 1987), *cert. dismissed*
        *on other grounds, United States v. Providence Journal Co.*, 485 U.S.
20      693 (1988) ........................................................................... 5, 6, 8

21   *In re Rare Coin Galleries of America, Inc.*, 862 F.2d 896 (1st Cir. 1988) ....................... 13

22   *Kathleen R. v. City of Livermore*, 87 Cal. App. 4th 684 (2001)................................... 15

23   *Levine v. United States Dist. Court*, 764 F.2d 590 (9th Cir. 1985) ............................... 13

24   *Lovell v. City of Griffin*, 303 U.S. 444 (1938)..................................................... 7

25   *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) ....................................... 7

26   *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Restaurant*
        *Employees Int'l*, 239 F.3d 172 (2d Cir. 2001) ...................................... 9

27   *Near v. State of Minnesota ex rel. Olson*, 283 U.S. 697 (1931) ....................... 1, 4, 6, 9

28   *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) ........................................ *passim*

DAVIS WRIGHT TREMAINE LLP

iv

*New York Times Co. v. United States*, 403 U.S. 713 (1971) ................................ 1, 5, 6, 9

*Nicholson v. McClatchy Newspapers*, 177 Cal. App. 3d 509 (1986) ........................... 11

*Novak v. Overture Servs.*, 309 F. Supp. 2d 446 (E.D.N.Y. 2004) ............................... 16

*Optinrealbig.com, LLC v. Ironport Sys., Inc.*, 323 F. Supp. 2d 1037 (N.D. Cal. 2004) .............. 14

*Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971) ....................................... 8, 9, 12

*Pacific Gas & Elec. Co. v. Public Utilities Comm'n of Cal.*, 475 U.S. 1 (1986) ........................... 7

*Pearson v. Dodd*, 410 F.2d 701 (D.C. Cir. 1969) ............................................. 11

*Pillsbury, Madison & Sutro v. Schectman*, 55 Cal. App. 4th 1279 (1997) ................................ 11

*Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219 (6th Cir. 1996) ........................... 1, 5, 6

*Religious Tech. Ctr. v. F.A.C.T.NET, Inc.*, 901 F. Supp. 1519 (D. Colo. 1995) ........................... 8

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231 (N.D. Cal. 1995) ................................................ 6

*Reno v. ACLU*, 521 U.S. 844 (1997) .......................................................... 7

*Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97 (1979) ....................................... 4, 10

*Stead Motors v. Automotive Machinists Lodge 1173*, 886 F.2d 1200 (9th Cir. 1989) ................ 13

*United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803 (2000) ................................ 14

*United States v. Leon*, 468 U.S. 897 (1984) ................................................ 13

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007) ........................ 16

*Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652 (1975) ................................ 11

*Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Village of Stratton*, 536 U.S. 150 (2002) ........... 7

*Zeran v. Am. Online, Inc.*, 129 F.3d 327 (4th Cir. 1997) ..................................... 15, 16

## STATUTES & RULES

12 U.S.C. § 3401 et seq. ..................................................................... 11

47 U.S.C. § 230 .......................................................................... *passim*

Fed. R. Civ. P. 52 ........................................................................... 12

Fed. R. Civ. P. 65 ........................................................................... 12

DAVIS WRIGHT TREMAINE LLP

v

**MISCELLANEOUS**

Adam Liptak and Brad Stone, *Judge Shuts Down Website Specializing in Leaks*, N.Y. Times, Feb. 20, 2008 ..............................................................................................2, 3

Alexander Bickel, *The Morality of Consent* 61 (1975) ...............................................7

Eric Schmitt and Michael R. Gordon, *Leak on Cross-Border Chases From Iraq*, N.Y. Times, Feb. 4, 2008 ................................................................................................2

Julian Assange and Daniel Schmitt, Bank Julius Baer v. Wikileaks, Jan. 23, 2008, available at http://www.sunshinepress.org/wiki/Bank_Julius_Baer_vs._Wikileaks ...........2

*Kenya dismisses Moi graft claims,* BBC News, Aug. 31, 2007, http://news.bbc.co.uk/2/-hi/africa/6972337.stm...................................................................................................2

M. Nimmer, *Nimmer on Freedom of Speech*, § 4.03 (1984) ........................................6

Ryan Singel, *Sensitive Guantanamo Bay Manual Leaked Through Wiki Site*, Wired.com, Nov. 14, 2007, http://www.wired.com/politics/onlinerights/news/2007/11-gitmo ...........2

2 William Blackstone, *Commentaries*...........................................................................5

DAVIS WRIGHT TREMAINE LLP

**I.    Summary of Argument**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DAVIS WRIGHT TREMAINE LLP

*Amici* are news organizations and non-profit organizations that, on a daily basis, protect the rights of journalists and other citizens to report on information available on the Internet.  The Permanent Injunction requiring Dynadot to disable Wikileaks.org and the Temporary Restraining Order issued against Wikileaks impose prior restraints that violate the First Amendment.

*First*, Wikileaks provides a forum for dissidents and whistleblowers across the globe to post documents, but the Dynadot Injunction imposes a prior restraint that drastically curtails access to Wikileaks from the Internet based on a limited number of postings challenged by Plaintiffs.  The Dynadot Injunction therefore violates the bedrock principle that an injunction cannot enjoin *all communication* by a publisher or other speaker.  *Near v. State of Minnesota ex rel. Olson*, 283 U.S. 697 (1931); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64 n.6, 71 (1963).

*Second*, the TRO against Wikileaks violates the First Amendment because judicial orders enjoining reporting on or dissemination of documents constitute prior restraints.  *New York Times Co. v. United States* ("*Pentagon Papers*"), 403 U.S. 713 (1971); *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219 (6th Cir. 1996); *Ford Motor Co. v. Lane*, 67 F. Supp. 2d 745 (E.D. Mich. 1999).  Under *Pentagon Papers*, the First Amendment prohibits prior restraints in nearly every circumstance, even where national security may be at risk and the press's source is alleged to have obtained the documents unlawfully.  The privacy and commercial interests Plaintiffs cite are simply not on the same order of magnitude required to justify a prior restraint, and the grab bag of federal, state, and foreign laws they cite do not authorize prior restraints.

*Third*, both the TRO and Dynadot Injunction lack the rigorous findings required for a prior restraint and are far broader than constitutionally permissible, as the TRO purports to reach anyone with "notice," not just parties, and is not narrowly tailored.  *Granny Goose Foods, Inc. v. Local 70, Int'l Brotherhood of Teamsters*, 415 U.S. 423, 443 (1974); *FTC v. Enforma Natural Prods., Inc.*, 362 F.3d 1204, 1215 (9th Cir. 2004); *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175 (1968).

*Finally*, the TRO and Dynadot Injunction are precluded by Section 230 of the Communications Decency Act, which prohibits injunctive relief against websites and services

1

1 such as Wikileaks and Dynadot for publishing information provided by third parties.

2 **II.    Statement of Facts**

3        The website www.wikileaks.org "invites people to post leaked materials with the goal of

4 discouraging 'unethical behavior' by corporations and governments."  Adam Liptak and Brad

5 Stone, *Judge Shuts Down Website Specializing in Leaks*, N.Y. Times, Feb. 20, 2008 (hereinafter

6 "*Liptak*").  "It has posted documents said to show the rules of engagement for American troops in

7 Iraq, a military manual for the operation of the detention center at Guantanamo Bay, Cuba, and

8 other evidence of what it has called corporate waste and wrongdoing."  *Id.*  Documents posted on

9 Wikileaks have been the basis for major news stories in recent months on the U.S. military's rules

10 of engagement in Iraq (N.Y. Times); the treatment of terrorist suspects held at Guantanamo

11 (Wired.com); and official corruption in Kenya and Somalia (BBC News).[1]

12        Plaintiffs Bank Julius Baer & Co. Ltd. and Julius Baer Bank and Trust Co. LTD (together,

13 "Plaintiffs" or "JB") allege that confidential bank documents that JB believes were stolen by

14 "disgruntled ex-employee" Rudolf Elmer ("Elmer") were posted on www.wikileaks.org

15 commencing on or about January 13, 2008.  Brief in Support of TRO ("Pl. Br.") at 3, 8.  Wikileaks

16 has confirmed that it "has released several hundred documents from a Swiss banking

17 whistleblower purportedly showing offshore tax evasion and money laundering by extremely

18 wealthy and in some cases, politically sensitive, clients from the US, Europe, China and Peru."[2]

19        On February 6, 2008, JB filed a Complaint against Wikileaks, alleging claims for unlawful

20 business practices, interference with contract and prospective economic advantage, and

21 conversion.  Two days later, JB filed an *ex parte* motion for a preliminary injunction and

22 temporary restraining order.  The Court held a hearing on the matter less than a week later, at

23 which Wikileaks did not appear.

24        On February 15, 2008, the Court entered a "Permanent Injunction," apparently as a result

25

26 [1]        Eric Schmitt and Michael R. Gordon, *Leak on Cross-Border Chases From Iraq*, N.Y.
Times, Feb. 4, 2008; Ryan Singel, *Sensitive Guantanamo Bay Manual Leaked Through Wiki Site*,
27 Wired.com, Nov. 14, 2007, http://www.wired.com/politics/onlinerights/news/2007/11/-gitmo;
*Kenya dismisses Moi graft claims*, BBC News, Aug. 31, 2007, http://news.bbc.co.uk/2/-
hi/africa/6972337.stm.
28 [2]        Julian Assange and Daniel Schmitt, "Bank Julius Baer v. Wikileaks," Jan. 23, 2008,
available at http://www.sunshinepress.org/wiki/Bank_Julius_Baer_vs._Wikileaks.

DAVIS WRIGHT TREMAINE LLP

1  of a Stipulation between Plaintiffs and Defendant Dynadot, requiring that "Dynadot shall

2  immediately clear and remove all DNS hosting records for the wikileaks.org domain name and

3  prevent the domain name from resolving to the wikileaks.org website or any other website or

4  server other than a blank park page, until further order of this Court."[3]  Because the wikileaks.org

5  domain name has been "cleared" pursuant to the injunction, the ability to access the site to review

6  *any* document (even those unrelated to JB) or post any documents has been severely impeded.

7  However, "[t]he site itself could still be accessed at its Internet Protocol address

8  (http://88.80.13.160/) – the unique number that specifies a Web site's location on the Internet.

9  Wikileaks also maintained 'mirror sites,' or copies usually produced to ensure against failures and

10 this kind of legal action" from countries like China.  *See Liptak.*  Some of these sites were

11 registered in countries other than the United States, through domain registrars other than Dynadot,

12 and thus were unaffected by the injunction.  *Id.*

13         On February 15, the Court also entered its "Amended Temporary Restraining Order and

14 Order to Show Cause Re Preliminary Injunction" enjoining Wikileaks and "all others who receive

15 notice of this order" from, *inter alia*, posting, publishing, disseminating, or otherwise using certain

16 documents and information originating from JB and which JB claims to be private, "whether or

17 not such documents and information are authentic . . . or forged."  The Court scheduled a hearing

18 for February 29, 2008 (the conclusion of the ten-day limit for a temporary restraining order) and

19

20 [3]        An Internet user generally accesses a website by entering its domain name – such as
   www.cand.uscourts.gov – into his Internet browser.  The browser, through a series of
21 communications with a domain name server ("DNS"), resolves the human-readable domain name
   into a machine-readable Internet protocol ("IP") address – such as 123.45.67.89.  The DNS system
22 is essentially a phone book for the computer to translate website names to IP addresses, the latter
   of which may be located by the computer's browser.  In theory, a user could access a site directly
23 using its IP address, but this is practically untenable.  The DNS system is thus critical to the
   functioning of the Internet – including both the World Wide Web and e-mail, as website and email
24 addresses (*e.g.*, Judge@cand.uscourts.gov) contain human-readable domain names.
25         Operators of websites obtain their domain names from DNS registrars, such as Dynadot.
   These registrars control the domain names registered through them, allowing them to add, modify,
26 and delete information concerning the domain name, such as the IP address to which the domain
   name resolves.  The registrars have the ability to practically disable websites by deleting the IP
27 address of the website from the DNS system, so that users who enter the domain name into their
   browsers or attempt to send an email to an address with that domain name do not actually reach
28 the site or deliver the email.

                                                    3

DAVIS WRIGHT TREMAINE LLP

1  ordered Wikileaks to show cause why a preliminary injunction should not issue that continues the

2  terms of the Temporary Restraining Order.  Wikileaks has not filed any opposition, nor has it

3  appeared in the case.  In a filing on February 22, 2008, JB contends that Wikileaks has waived its

4  rights and that the court should not hear from Wikileaks "or any third parties."  *See* Pl. Notice of

5  Non-Opposition at 3.

6       *Amici* file this brief to alert the Court to the fundamental First Amendment issues at stake

7  which have not been addressed by JB or Wikileaks (who has not appeared in this case) and which

8  have a critical impact on Media Amici.  *See* Motion for Leave to File Amici Brief, filed

9  concurrently herewith.  Defendant Dynadot LLC consents to *Amici*'s participation.  JB opposes

10  *Amici*'s participation.

11  **III.    JB Has Failed to Meet the Exacting Standard for a Prior Restraint**

12       "Temporary restraining orders and permanent injunctions – *i.e.*, court orders that actually

13  forbid speech activities – are classic examples of prior restraints."  *Alexander v. United States*,

14  509 U.S. 544, 550 (1993).  Prior restraints represent "the most serious and the least tolerable

15  infringement on First Amendment rights," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559

16  (1976), constitute "one of the most extraordinary remedies known to our jurisprudence," *Hunt v.*

17  *NBC*, 872 F.2d 289, 293 (9th Cir. 1989), and are "presumptively unconstitutional," *Goldblum v.*

18  *NBC*, 584 F.2d 904, 906-07 (9th Cir. 1978) (Kennedy, J.) (granting writ of mandamus and

19  vacating prior restraint).  "Under our constitutional system prior restraints, if permissible at all, are

20  permissible only in the most extraordinary of circumstances."  *CBS, Inc. v. United States Dist.*

21  *Court*, 729 F.2d 1174, 1183 (9th Cir. 1983) (granting writ of mandamus and vacating TRO); *Smith*

22  *v. Daily Mail Publ'g Co.*, 443 U.S. 97, 102 (1979) ("Prior restraints have been accorded the most

23  exacting scrutiny . . .").  The First Amendment forbids prior restraint of speech even more

24  categorically than criminal punishment because "[a] prior restraint . . . has an immediate and

25  irreversible sanction.  If it can be said that a threat of criminal or civil sanctions after publication

26  'chills' speech, prior restraint 'freezes' it at least for the time."  *Nebraska Press Ass'n*, 427 U.S. at

27  559; *see also Near*, 283 U.S. at 713-14 (" 'The liberty of the press ... consists in laying no

28

DAVIS WRIGHT TREMAINE LLP

4

1 previous restraints upon publications . . . ' ") (quoting 2 William Blackstone, *Commentaries*,

2 *151-52).

3        It is well established that court orders that forbid dissemination of confidential documents,

4 such as the TRO against Wikileaks and the Dynadot Injunction, constitute prior restraints,

5 regardless of how the documents were obtained. *Pentagon Papers*, 403 U.S. 713 (1971)

6 (injunction against publication of classified documents purloined from Defense Department is a

7 prior restraint); *Procter & Gamble*, 78 F.3d at 225-27 (TRO enjoining publication of leaked

8 documents sealed by court order is a prior restraint); *In re Providence Journal Co.*, 820 F.2d

9 1342, 1345 (1st Cir. 1986) ("temporary restraining order barring publication of [FBI] logs and

10 memoranda" is a prior restraint), *modified on reh'g en banc*, 820 F.2d 1354 (1st Cir. 1987), *cert.*

11 *dismissed on other grounds*, *United States v. Providence Journal Co.*, 485 U.S. 693 (1988);

12 *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 946 (2d Cir. 1983) (TRO against

13 publication of document is a prior restraint regardless of "[t]he fact that the order at issue here

14 involves trade secrets"); *Lane*, 67 F. Supp. 2d at 747-48 (holding that to order an Internet poster to

15 remove internal Ford documents would constitute a prior restraint).[4]

16        Notwithstanding this clear authority, JB has ignored the First Amendment rights

17 implicated by the TRO, and limits its legal analysis to the ordinary injunctive relief standard, Pl.

18 Br. at 11, Pl. Notice of Non-Opposition at 2 n.1. "In the case of a prior restraint on pure speech,"

19 however, "the hurdle is substantially higher" than for an ordinary TRO. *Procter & Gamble*, 78

20 F.3d at 226-27. This "most extraordinary remedy" can be ordered "only where the evil that would

21 result from the reportage is both great and certain," *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317

22 (1994) (Blackmun, J., in chambers) (emphasis added), and in the most exceptional circumstances

23 – such as to prevent the dissemination of information about troop movements during wartime,

24 _____

25 [4] In *Lane*, the poster knew the employees breached confidentiality agreements and threatened to encourage such breach, Ford alleged that the poster "solicited and received trade

26 secrets that were misappropriated" and Ford "presented substantial evidence to support its claim that [the poster] violated the Michigan Uniform Trade Secrets Act" – a far cry from this case,

27 where there is no plausible allegation that Wikileaks directly solicited documents from Elmer or knew of his agreements with JB when it posted the documents. 67 F. Supp. 2d at 746, 748. Even

28 under more compelling circumstances, however, the *Lane* court *still* rejected an injunction as "an invalid prior restraint of free speech in violation of the First Amendment." *Id.* at 746.

DAVIS WRIGHT TREMAINE LLP

1   *Near*, 283 U.S. at 716, or to "suppress[] information that would set in motion a nuclear

2   holocaust." *Pentagon Papers*, 403 U.S. at 726 (Brennan, J., concurring). Thus, "[i]n its nearly

3   two centuries of existence, the Supreme Court has *never* upheld a prior restraint on pure speech,"

4   *In re Providence Journal*, 820 F.2d at 1348 (emphasis added), even when "faced with the

5   competing interest of national security or the Sixth Amendment right to a fair trial," *Procter &*

6   *Gamble*, 78 F.3d at 227.

7   **IV.    The Order Requiring Dynadot to Disable the Wikileaks Website**
         **Is an Unconstitutional Prior Restraint**
8
            The first of the two prior restraints at issue is the Court's entry of a permanent injunction
9
10   against Dynadot that requires Dynadot to disable and lock the wikileaks.org domain name. This

11   order has the effect of permanently and drastically curtailing access to the entire site – restraining

12   *all* of the speech on the site, including speech having nothing to do with JB's activities. This is

13   precisely the sort of injunction rejected by the Supreme Court in *Near*, 283 U.S. 697, where a

14   newspaper was completely enjoined from future publication based on prior articles. *See also*

15   *Alexander*, 509 U.S. at 550 ("[P]ermanent injunctions, *i.e.*, – court orders that actually forbid

16   speech activities – are classic examples of prior restraints.") (quoting M. Nimmer, *Nimmer on*

17   *Freedom of Speech* § 4.03, at 4-14 (1984)).

18          As the Ninth Circuit has stated, "[e]ven when a speaker has repeatedly exceeded the limits

19   of the First Amendment, courts are extremely reluctant to permit the state to close down his

20   communication forum altogether." *Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*, 827

21   F.2d 1291, 1296 (9th Cir. 1987); *see also Religious Tech. Ctr. v. Netcom On-Line Commc'n*

22   *Servs., Inc.*, 923 F. Supp. 1231, 1259 (N.D. Cal. 1995) ("While a specifically-tailored injunction in

23   a copyright case does not offend the First Amendment, attempting to shut down a critic's speech

24   activities, including those that do not implicate the copyright laws in the least, would constitute an

25   unwarranted prior restraint on speech.").

26          Neither Plaintiffs' nor Dynadot's submissions to the Court purport to justify the blanket

27   prior restraint against Wikileaks.[5] The First Amendment "protects the public's interest in

28
_____

   [5]  Plaintiffs readily admit that the purpose of the Dynadot injunction is to smoke out
   representatives of wikileaks.org in order for JB to proceed in its suit against them. *See* Pl. Br. at
   21 n.3 (explaining that the injunction is intended to force "the Wikileaks defendants [to] stop

DAVIS WRIGHT TREMAINE LLP

1  receiving information." *Pacific Gas & Elec. Co. v. Public Utilities Comm'n of Cal.*, 475 U.S. 1, 8

2  (1986) (plurality opinion). Indeed, Plaintiffs appear to recognize that they have no right to enjoin

3  the entirety of the Wikileaks website, which contains countless documents of public interest, as

4  well as analysis and discussion of those documents. *See* Pl. Br. at 10 (explaining the limited relief

5  sought).

6          The indirect nature of the restraint on Wikileaks – compelling Dynadot to shut down the

7  wikileaks.org domain – makes it no less offensive. *Bantam Books,* 372 U.S. at 64 n.6, 71 (finding

8  unlawful prior restraint against publishers, where government coerced distributors into consenting

9  to cease distributing the publishers' works: "The constitutional guarantee of freedom of the press

10  embraces the circulation of books as well as their publication, and the direct and obviously

11  intended result of the Commission's activities was to curtail the circulation in Rhode Island of

12  books published by appellants.") (citing *Lovell v. City of Griffin*, 303 U.S. 444, 452 (1938)

13  ("[W]ithout the circulation, the publication would be of little value.'") (citation omitted)).

14          The fact that the documents have been available online since January 13, 2008, and the

15  Wikileaks site is still accessible through its IP address and through "mirror" sites in other

16  countries cannot save the restraint, which seeks to block the primary means of access to the site.

17  *See Reno v. ACLU*, 521 U.S. 844, 879-80 (1997) (Internet speech restrictions not justified by

18  remaining avenues for such speech). If anything, this cuts against the validity of the restraint, in

19  that it is not only unjustified but ineffective. *Nebraska Press Ass'n*, 427 U.S. at 567 (prior

20  restraint unsupportable where ineffective). Prior restraints are particularly inappropriate where, as

21  here, "the cat is out of the bag." *In re Charlotte Observer*, 921 F.2d 47, 50 (4th Cir. 1990) (district

22

23  hiding behind anonymity"). This is not a valid purpose for a prior restraint. Moreover, the First
    Amendment protects the right to speak anonymously. *See Watchtower Bible & Tract Soc'y of*

24  *N.Y., Inc. v. Village of Stratton*, 536 U.S. 150, 166-67 (2002); *McIntyre v. Ohio Elections
    Comm'n*, 514 U.S. 334, 341-42 (1995). This right applies equally to speech on the Internet. *See*

25  *Best W. Int'l v. Doe*, No. CV-06-1537, 2006 WL 2091696, at *3-4 (D. Ariz. July 25, 2006); *Doe v.
    Cahill*, 884 A.2d 451, 456 (Del. 2005); *Dendrite Int'l v. Doe*, 775 A.2d 756, 765-66 (N.J. Super.

26  Ct. App. Div. 2001).
            Even if the injunction were only in effect until Wikileaks submitted to the Court's

27  jurisdiction, as JB suggests, it would be constitutionally infirm: "'Prior restraints fall on speech
    with a brutality and a finality all their own. Even if they are ultimately lifted they cause

28  irremediable loss – a loss in the immediacy, the impact, of speech.'" *Nebraska Press Ass'n*, 427
    U.S. at 609 (Brennan, J., concurring) (quoting Alexander Bickel, *The Morality of Consent* 61
    (1975)).

DAVIS WRIGHT TREMAINE LLP

1   court erred in issuing prior restraint where "[o]nce announced to the world, the information lost its

2   secret characteristic"); *see also In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994) (authorizing

3   publication of investigative report of independent counsel where information was widely known,

4   because "it is impossible to remove leaked material from the news media and cram it back into

5   grand jury secrecy"); *Religious Tech. Ctr. v. F.A.C.T.NET, Inc.*, 901 F. Supp. 1519, 1527 (D.

6   Colo. 1995) (widely disclosed documents lose status as trade secrets).

7        The fact that Dynadot consented to the injunction also is irrelevant. In *Bantam*, the

8   distributor of the publishers' works agreed to cease distribution under government pressure, but

9   the state action was held to be a prior restraint against the publishers' expression nonetheless.

10   Whether or not Dynadot could on its own choose to disable the wikileaks.org domain name, the

11   Court cannot put its imprimatur on such action. *See Carlin*, 827 F.2d at 1296-97 (distinguishing

12   between unconstitutional restraint involving state action and permissible private restraint). As

13   such the permanent injunction against Dynadot constitutes an unconstitutional prior restraint.

14   **V.      The TRO Against Wikileaks Is an Impermissible Prior Restraint**

15        **A.      Privacy and Reputational Interests Cannot Justify a Prior Restraint**

16        The TRO focused on the JB documents fares no better than the blanket injunction. The

17   rationales offered by JB do not even approach the rigorous justification required for a prior

18   restraint forbidding not just Wikileaks but the world – everyone "with notice" of the order – from

19   reporting on the documents. "Designating the conduct as an invasion of privacy" does not warrant

20   a prior restraint. *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419-20 (1971); *see also In re*

21   *Providence Journal*, 820 F.2d at 1350 (privacy, "although meriting great protection, is simply not

22   of the same magnitude" as the interests that could justify a prior restraint); *In re King World Prod.,*

23   *Inc.*, 898 F.2d 56, 57-58 (6th Cir. 1990) (vacating TRO against broadcast of video filmed by

24   producer who invaded doctor's privacy by posing as a patient and surreptitiously filming him); *see*

25   *also Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 487-96 (1975) (First Amendment prohibits even

26   subsequent punishment for publishing juvenile rape victim's name contained in indictment).

27        JB also complains about its damaged business reputation caused by its inability to protect

28   private information against disclosure by a renegade employee, but "the interest . . . in being free

DAVIS WRIGHT TREMAINE LLP

8

1    from public criticism of . . . business practices" cannot justify a prior restraint. *Keefe*, 402 U.S. at

2    419; *see also Davis*, 510 U.S. at 1318 (1994) (Blackmun, J., in chambers) (finding prior restraint

3    not justified by potential for "significant economic harm"); *In re Charlotte Observer*, 921 F.2d at

4    49 (prior restraint to "protect[] the reputation of [an] attorney" held impermissible). JB's

5    allegations that the documents contain defamatory forgeries likewise cannot justify a prior

6    restraint, particularly one not limited to the just that information, for subsequent punishment, not

7    prior restraint, is "the appropriate sanction for calculated defamation or other misdeeds in the First

8    Amendment context." *See Davis*, 510 U.S. at 1318 (Blackmun, J., in chambers); *see also Near*,

9    283 U.S. at 705 (reversing injunction against publication of "malicious, scandalous and

10   defamatory matter" as prior restraint); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees &*

11   *Restaurant Employees Int'l*, 239 F.3d 172, 177 (2d Cir. 2001) ("[C]ourts have long held that

12   equity will not enjoin a libel."); *Gilbert v. Nat'l Enquirer, Inc.*, 43 Cal. App. 4th 1135, 1144

13   (1996) ("[P]rior restraints are not permitted to stop the publication of a defamatory statement.");

14   *Balboa Island Village Inn, Inc. v. Lemen*, 40 Cal. 4th 1141, 1155 (2007) (at minimum, defamatory

15   speech cannot be enjoined, if even, until after "a trial at which it is determined that the defendant

16   defamed the plaintiff.").

17           Finally, while JB's latest filing gestures at identity theft and predicts a "devastating impact

18   on financial institutions," *see* Pl. Notice of Non-Opposition at 2, such vague prognostications

19   about the banking industry, based solely on the Declaration of JB's outside counsel, constitute

20   rank speculation insufficient to justify a prior restraint. *Davis*, 510 U.S. at 1318 (Blackmun, J., in

21   chambers) ("[S]peculative predictions . . . based on 'factors unknown and unknowable'" cannot

22   justify a prior restraint); *Goldblum*, 584 F.2d at 906 ("wholly speculative" possibility of future

23   criminal prosecution insufficient for prior restraint). Nor does this speculation compare to threats

24   posed in earlier cases in which the prior restraints were nonetheless rejected. *See Pentagon*

25   *Papers*, 403 U.S. at 726-27 (Brennan, J., concurring) (threat of harm to national security caused by

26   disclosure of defense department documents too speculative to justify prior restraint); *Nebraska*

27   *Press Ass'n*, 427 U.S. at 567 (concerns about defendant's fair trial rights deemed too speculative

28   to justify prior restraint).

9

**B.     The Laws Cited by JB Do Not Authorize Any Punishment of Wikileaks, Let Alone a Prior Restraint**

1

2      JB attempts to paint Wikileaks as an accomplice to Elmer, liable under California common

3   law for Elmer's alleged wrongdoings. "This case cannot realistically be viewed from an

4   exclusively common law perspective, however, since the very nature of the activities complained

5   of invites constitutional analysis as well." *Envtl. Planning & Info. Council v. Superior Court*, 36

6   Cal. 3d 188, 195 (1984). Wikileaks posts an open invitation to whistleblowers worldwide to post

7   documents anonymously on its site for purposes of public dissemination, review, and discussion.

8   Even under the facts alleged by JB, Wikileaks itself obtained the documents lawfully – *i.e.*, the

9   documents were allegedly stolen by Elmer and then voluntarily provided by Elmer to Wikileaks –

10  and the Supreme Court has made it clear that laws imposing subsequent punishment based on

11  dissemination of lawfully obtained information violate the First Amendment, even if the source of

12  the information provides it illegally. *See, e.g.*, *Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001)

13  ("[A] stranger's illegal conduct does not suffice to remove the First Amendment shield from

14  speech about a matter of public concern."); *Cohen v. Cowles Media Co.*, 501 U.S. 663, 668-69

15  (1991) ("[I]f a newspaper lawfully obtains truthful information about a matter of public

16  significance then state officials may not constitutionally punish publication of the information,

17  absent a need to further a state interest of the highest order . . . .") (quoting *Daily Mail Publ'g*, 443

18  U.S. at 103).

19      In support of its request for a TRO, JB cites to "applicable consumer banking and privacy

20  protection laws, including applicable Swiss and Cayman Islands laws, as well as federal and

21  California Constitutional privacy rights and unfair business practice laws" that "prohibit" the

22  documents from being published. Pl. Brief at 1. But most of the laws JB cites in support of its

23  position do not, on their face, even apply to third-parties like Wikileaks. With regard to

24  "applicable Swiss and Cayman Islands laws," there is no allegation that Wikileaks (as opposed to

25  Elmer) is subject to the jurisdiction of either Switzerland or the Cayman Islands. Even if

26  Wikileaks were subject to these laws, however, and even if third-parties like Wikileaks were

27  potentially liable under the Cayman Islands and Swiss statutes cited to by JB, Heistand Decl., Exs.

28

DAVIS WRIGHT TREMAINE LLP

1   B and C, the statutes impose only subsequent punishment, and do *not* authorize prior restraints.[6]

2   Although bank customers undoubtedly have a privacy interest in their financial information, the

3   laws cited by JB do not address Wikileaks' – as opposed to Elmer's – conduct.

4       Nor do the remaining tort claims alleged in JB's Complaint provide any basis for liability

5   or, more importantly, overcome the constitutional prohibition against prior restraint.  With regard

6   to JB's claim of conversion, because Wikileaks is not in possession of the original documents, and

7   because it did not steal the documents from JB, there can be no claim for conversion under

8   California law.  *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 303 (7th Cir. 1990) ("[T]he

9   receipt of copies of documents, rather than the documents themselves, should not ordinarily give

10  rise to a claim of conversion [because] . . . the possession of copies of documents – as opposed to

11  the documents themselves – does not amount to an interference with the owner's property

12  sufficient to constitute conversion.") (applying California law).[7]  The *FMC Corp.* Court concluded

13  that, even though the defendant news station received stolen documents from a third party source,

14  it was "free to retain copies of any of FMC's documents in its possession (and to disseminate any

15  information contained in them) in the name of the First Amendment." *Id.* at 305.  So, too, is

16  Wikileaks entitled to disseminate the documents in the name of the First Amendment. *See*

17  *Nicholson v. McClatchy Newspapers*, 177 Cal. App. 3d 509, 519-20 (1986) (government may not

18  impose liability upon the press for obtaining confidential or restricted information).  Even if

19  Wikileaks could be liable for conversion, the cases cited *supra* make it abundantly clear that a

20  prior restraint is not a constitutionally acceptable remedy.

21      Finally, as for JB's claims for interference with contract and prospective economic

---

22      [6]  Similarly, the federal and California financial privacy laws cited in JB's brief, even if
they applied to Wikileaks, do *not* authorize a prior restraint.  Pl. Br. at 13-14.  The federal Right to
23  Financial Privacy Act requires government agencies to follow certain procedures when seeking
financial records of bank customers, 12 U.S.C. § 3401 *et seq.*, and the California cases to which
24  JB cites discuss the obligation of *banks* not to disclose their customers' private information unless
compelled by court order.  *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 656-57
25  (1975).
        [7]  *See also Pearson v. Dodd*, 410 F.2d 701, 705 (D.C. Cir. 1969) (plaintiff not denied
26  "property use" of documents where third party made copies of the documents and provided them
to reporter; court specifically rejected "proposition that one who receives information from an
27  intruder, knowing it has been obtained by improper intrusion, is guilty of a tort"); *Pillsbury,
Madison & Sutro v. Schectman*, 55 Cal. App. 4th 1279, 1287 (1997) (recognizing that "underlying
28  First Amendment issue" would present a policy exception to third party liability for conversion of
stolen documents).

DAVIS WRIGHT TREMAINE LLP

11

1  advantage, again, JB has not shown that it is likely to prevail on these claims, and indeed does not

2  address them in its moving papers.[8]  Even if Wikileaks could be subsequently held liable for the

3  torts of interference with contract and prospective economic advantage, there is *no* justification for

4  a prior restraint. *Allen v. Ghoulish Gallery*, No. 06cv371, 2007 U.S. Dist. LEXIS 37514, at *8

5  (S.D. Cal. May 23, 2007) (denying motion for an injunction where "the conduct sought to be

6  enjoined appears to fall under [claims] for trade libel, defamation and intentional interference with

7  prospective economic advantage, for which there are other remedies at law. . . . Enjoining the

8  alleged conduct would act as a prior restraint on plaintiff's speech, violating his first amendment

9  rights."); *see also Keefe*, 402 U.S. at 419-20 (prior restraint inappropriate to prevent criticism of

10 business practices).

**VI.**  **Both the Order Granting the TRO Against Wikileaks and the Stipulated Permanent Injunction Regarding Dynadot Lack Findings Required for a Prior Restraint and Are Not Narrowly Tailored**

13        The Court has not made sufficient findings to support such a prior restraint in either its

14 Permanent Injunction against the maintenance of any content on the domain name wikileaks.org,

15 or its Temporary Restraining Order barring the posting of any "BJB documents" on any Wikileaks

16 web site.  By its terms, Fed. R. Civ. P. 65(d)(1) requires every injunction and every restraining

17 order to "state the reasons why it issued," and Fed. R. Civ. P. 52(a)(1) and (2) require the Court to

18 "state the findings and conclusions that support its action."  An injunction or restraining order that

19 does not rest on sufficiently specific, express findings and conclusions must be set aside. *Granny*

20 *Goose Foods*, 415 U.S. at 443; *Enforma Natural Prods.*, 362 F.3d at 1215; *EEOC v. Severn Trent*

21 *Servs.*, 358 F.3d 438, 442 (7th Cir. 2004); *In re Rare Coin Galleries of America, Inc.*, 862 F.2d

---

22  [8]  The allegations in the Complaint make clear that the publication of the documents by
23  Wikileaks was not "designed to" induce breach of any contractual relationship, but rather to
disseminate documents of public concern.  Any impact on the contract with Elmer was, at most,
24  incidental, not intended, and does not give rise to facts permitting a claim of interference with
contract. *See, e.g., Huggins v. Povich*, No. 131164/94, 1996 WL 515498, at * 9 (N.Y. Sup. Ct.
25  Apr. 19, 1996) ("a broadcaster whose motive and conduct is intended to foster public awareness or
debate cannot be found to have engaged in the wrongful or improper conduct required to sustain a
26  claim for interference with contractual relations").  With regard to the interference with
prospective economic advantage claim, Wikileaks' lawful publication of the documents also
cannot give rise to such claim. *Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal. 4th 376,
27  393 (1995) (plaintiff must plead "conduct that was wrongful by some legal measure other than the
fact of interference itself"); *see also Copp v. Paxton*, 45 Cal. App. 4th 829, 845 (1996) ("claims
28  for . . . interference with prospective economic advantage may not be based on speech that is
entitled to constitutional protection").

*DAVIS WRIGHT TREMAINE LLP*

1    896, 899-900 (1st Cir. 1988).

2         The need for detailed findings is heightened when, as here, the injunction trenches on

3    constitutional interests. *Glover v. Johnson*, 855 F.2d 277, 283-84 (6th Cir. 1988); *Elvis Presley*

4    *Enters., Inc. v. Passport Video*, 357 F.3d 896, 898 (9th Cir. 2004). When a prior restraint is at

5    issue, a district court's order must establish that "(1) the activity restrained poses either a clear and

6    present danger or a serious and imminent threat to a protected competing interest, (2) the order is

7    narrowly drawn, and (3) less restrictive alternatives are not available." *Levine v. United States*

8    *Dist. Court*, 764 F.2d 590, 595 (9th Cir. 1985) (affirming prior restraint of speech by trial

9    participants where justified by serious and imminent threat to right to a fair trial) (citations

10    omitted). *See Nebraska Press Ass'n*, 427 U.S. at 565 (denying prior restraint because threat to fair

11    speculative).

12         In light of the general rule against the wholesale adoption of proposed findings by the

13    prevailing party, *Stead Motors v. Automotive Machinists Lodge 1173*, 886 F.2d 1200, 1204 n.5

14    (9th Cir. 1989), findings to support a preliminary injunction may be cast aside on appeal when

15    derived entirely from a plaintiff's proposed order. *Enforma Natural Prods.*, 362 F.3d at 1215.

16    Wholesale adoption of a plaintiff's proposed findings seems especially inappropriate when the

17    findings purport to support a prior restraint. In the context of a prior restraint against speech,

18    "judgment as to whether the facts justify the use of the drastic power of injunction necessarily

19    turns on subtle and controversial considerations and upon a delicate assessment of the particular

20    situation." *Carroll*, 393 U.S. at 183. In this case, the Court adopted verbatim proposed

21    injunctions drafted by Plaintiffs, without the benefit of argument from an opposing party, which

22    set forth in detail the actions enjoined but either say nothing about the factual or legal basis for the

23    injunction (in the case of the permanent injunction), or recite in passing that the Court had "found

24    that good cause exists therefor" (in the case of the restraining order). The Court's wholesale

25    adoption of Plaintiffs' language is especially troubling here, where no party alerted the Court to

26    the important First Amendment concerns at stake and, accordingly, the constitutional interests of

27    the public to receive information were apparently not considered. *See United States v. Leon*, 468

28    U.S. 897, 938 (1984) ("the judiciary's role [is] as the guardian of the people's constitutional

DAVIS WRIGHT TREMAINE LLP

13

1  liberties").

2       There is no indication which of the several causes of action set forth in the complaint

3  formed a basis for a finding that success was likely or there were serious questions going to the

4  merits and the claims indeed rest on dubious foundation. *See supra* at 10-12 and *infra* at 14-16.

5  Even if, for example, JB could demonstrate an imminent danger of identity theft, the proposed

6  injunctive relief is not "narrowly tailored" nor the least restrictive alternative since it requires

7  wholesale removal rather than limited redaction of information like social security numbers. *See*

8  *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 813 (2000). The TRO is also

9  drastically overbroad because it purports to "enjoin the world at large," which courts lack the

10  power to do, *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930) (Hand, J.), particularly

11  in First Amendment cases, where the injunctive order "must be tailored as precisely as possible to

12  the exact needs of the case," *Carroll*, 393 U.S. at 184. Likewise, the injunction against Dynadot

13  renders inaccessible a broad array of Wikileaks content entirely unrelated to JB. *See supra* n.1.

14  **VII.    Section 230 of the Communications Decency Act Bars JB's Claims Against Wikileaks and Dynadot**

15

16       The validity of the TRO aimed at Wikileaks and the permanent injunction directed at

17  Dynadot is further undercut by the broad immunity granted to defendants Wikileaks and Dynadot

18  by section 230 of the Communications Decency Act ("CDA 230"). Because CDA 230 likely

19  immunizes Wikileaks and Dynadot from liability for JB's underlying legal claims, JB cannot

20  establish serious questions going to the merits, let alone a liklihood of success on the merits. *See*

21  *Optinrealbig.com, LLC v. Ironport Systems, Inc.*, 323 F. Supp. 2d 1037, 1047 (N.D. Cal. 2004)

22  (denying motion for a preliminary injunction because defendant was immune under CDA 230).

23       CDA 230 provides immunity for a "provider or user of an interactive computer service,"

24  such as Wikileaks and Dynadot, from state tort claims based on the publication of "information

25  provided by another information content provider." 47 U.S.C. § 230(c)(1). This case falls

26  squarely within CDA 230 because the essence of JB's complaint is that Wikileaks violated state

27  and foreign laws by publishing materials provided by a disgruntled former employee. The

28  immunity applies equally to JB's claims for damages, declaratory, and injunctive relief. *See*

*Kathleen R. v. City of Livermore*, 87 Cal. App. 4th 684, 697-98 (2001) ("[C]laims for declaratory

DAVIS WRIGHT TREMAINE LLP

14

1  and injunctive relief are no less causes of action than tort claims for damages and thus fall

2  squarely within the Section 230(e)(3) prohibitions."); *Ben Ezra, Weinstein & Co. v. Am. Online,*

3  *Inc.*, 206 F.3d 980, 983-84 (10th Cir. 2000).

4      Most federal courts have interpreted CDA 230 expansively. *See Carafano v.*

5  *Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003); *Batzel v. Smith*, 333 F.3d 1018,

6  1026-27 (9th Cir. 2003); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006);

7  *Zeran v. America Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997). This expansive interpretation

8  reflects an understanding that "[m]aking interactive computer services and their users liable for the

9  speech of third parties would severely restrict the information available on the Internet" and

10 furthers the congressional policy of "prevent[ing] lawsuits from shutting down websites and other

11 services on the Internet." *Batzel*, 333 F.3d at 1027-28.

12     Dynadot meets the requirements for CDA 230 immunity: it is a provider of an "interactive

13 computer service," and the claims against it are based on the publication of material provided by

14 "another information content provider." The statute defines "interactive computer service" as

15 "any information service, system, or access software provider that provides or enables computer

16 access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Courts have interpreted this

17 language broadly – the term includes "'*any*' information services or other systems, as long as the

18 service or system allows 'multiple users' to access 'a computer server.'" *Batzel*, 333 F.3d at 1030

19 (emphasis in original). By resolving domain names into IP addresses, Dynadot enables users to

20 access its clients' servers and therefore provides an interactive computer service under CDA 230.

21     As a provider of interactive computer services, Dynadot cannot be held liable for

22 publishing material provided by "another information content provider." CDA 230 defines the

23 term "information content provider" as "any person or entity that is responsible, in whole or in

24 part, for the creation or development of information provided through the Internet or any other

25 interactive computer service." 47 U.S.C. § 230(f)(3). There is no question that Dynadot had no

26 role in creating or developing the bank records in question, and that a third party (Elmer) posted

27 these materials. Therefore, CDA 230 bars JB's claims against Dynadot.

28     Wikileaks also meets the requirements for CDA 230 immunity. First, as an interactive

DAVIS WRIGHT TREMAINE LLP

15

1   website, Wikileaks is a provider of an "interactive computer service." *See Batzel*, 333 F.3d at

2   1030 & n.16 ("There is . . . no need here to decide whether a listserv or website itself fits the broad

3   statutory definition of 'interactive computer service,' because the language of § 230(c)(1) confers

4   immunity not just on 'providers' of such services, but also on 'users' of such services). Second,

5   all of JB's legal claims are grounded on the publication of material provided by a third party (*i.e.*,

6   "another information content provider"). Despite their various guises, the underlying basis of each

7   claim is publication of JB's confidential documents, and all these state tort claims fall within the

8   heart of CDA 230's immunity. *See, e.g., Carafano*, 339 F.3d at 1125 (CDA barred claims against

9   website when user posted personal information about plaintiff, including her home address and

10  phone number); *Delfino v. Agilent Technologies, Inc.*, 145 Cal. App. 4th 790, 806-07 (2006)

11  (CDA provides immunity for "a variety of tort claims" based on publication, including invasion of

12  privacy and negligence), *cert. denied*, 128 S. Ct. 98 (2007); *Novak v. Overture Servs.*, 309 F.

13  Supp. 2d 446, 452 (E.D.N.Y. 2004) (applying Section 230 immunity to a claim of tortious

14  interference with prospective economic advantage). JB's allegations that Wikileaks, by its general

15  invitation to post documents, somehow induced the leak does not change the analysis under CDA

16  230.[9]  The Ninth Circuit has held that "suggesting," "encouraging," or "soliciting" content does

17  not preclude statutory immunity for an interactive computer service. *Carafano*, 339 F.3d at 1124.

18      Finally, Wikileaks' continued publication of the documents after JB complained does not

19  diminish its immunity. Courts have been unwilling to hold interactive computer services liable for

20  failure to address disputed material posted by a third party after notice. *See, e.g., Zeran*, 129 F.3d

21  at 327 (AOL protected by CDA 230 despite knowledge that posting was a hoax and delay in

22  removal); *Barnes v. Yahoo!, Inc.*, No. 05-926, 2005 WL 3005602 (D. Or. Nov. 8, 2005) (Yahoo!

23  not liable despite refusal to remove after knowledge that posting was a hoax). Because both

24  Dynadot and Wikileaks are likely to be immune under CDA 230, JB cannot establish serious

25  questions going to the merits, let alone a likelihood of success on the merits, of their claims.

26

27      [9] *See Blumenthal v. Drudge*, 992 F. Supp. 44, 52-53 (D.D.C. 1998) (barring liability
despite payment for content); *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st
Cir. 2007) (rejecting liability despite argument that the service induced unlawful postings);
28  *Donato v. Moldow*, 865 A.2d 711 (N.J. Super. Ct. App. Div. 2005) (rejecting liability despite
encouragement of users to submit complaints about public officials).

DAVIS WRIGHT TREMAINE LLP

1    DATED this 26th day of February, 2008.

2    Respectfully submitted,

3    DAVIS WRIGHT TREMAINE LLP

4

5    s/ Thomas R. Burke

Thomas R. Burke (CA State Bar No. 141930)     Kelli L. Sager (CA State Bar No. 120162)
6    DAVIS WRIGHT TREMAINE LLP                 DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street                          865 South Figueroa Street, Suite 2400
7    Suite 800                                 Los Angeles, California 90017-2566
San Francisco, California 94111                Telephone:    (213) 633-6800
8    Telephone:    (415) 276-6500              Facsimile:    (213) 633-6899
Facsimile:    (415) 276-6599                   Email:    kellisager@dwt.com
9    Email:    thomasburke@dwt.com

10   Laura R. Handman
(admission *pro hac vice* pending)
11   DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW
12   Suite 200
Washington, DC 20006
13   Telephone:    (202) 973-4200
Facsimile:    (202) 973-4499
14   Email: laurahandman@dwt.com

15   Attorneys for *Amici Curiae*

16

17

18

19

20

21

22

23

24

25

26

27

28

*(vertical left margin)* DAVIS WRIGHT TREMAINE LLP

Brief of Amici Curiae
Case No. CV08-0824 JSW