# EXHIBIT 1

Dockets.Justia.com

Thomas R. Burke (CA State Bar No. 141930)
thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street
Suite 800
San Francisco, California 94111
Telephone:     (415) 276-6500
Facsimile:     (415) 276-6599

Kelli L. Sager (CA State Bar No. 120162)
kellisager@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone:     (213) 633-6800
Facsimile:     (213) 633-6899

Laura R. Handman
(admission *pro hac vice* pending)
laurahandman@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
Telephone:     (202) 973-4200
Facsimile:     (202) 973-4499

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BANK JULIUS BAER & CO. LTD, a Swiss entity; and JULIUS BAER BANK AND TRUST CO. LTD., a Cayman Islands entity, <br><br> Plaintiffs, <br><br> v. <br><br> WIKILEAKS, an entity of unknown form, WIKILEAKS.ORG., an entity of unknown form; DYNADOT, LLC, a California limited liability corporation; and DOES 1 through 10 inclusive, <br><br> Defendants. | Case No. CV08-0824 JSW <br><br> Date: February 29, 2008 <br> Time: 9:00 a.m. <br> Courtroom: 2, 17th Floor <br><br> **Oral Argument Requested** |

**BRIEF OF AMICI CURIAE THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS; THE AMERICAN SOCIETY OF NEWSPAPER EDITORS; THE ASSOCIATED PRESS; CITIZEN MEDIA LAW PROJECT; THE E.W. SCRIPPS CO.; GANNETT CO., INC.; THE HEARST CORPORATION; THE *LOS ANGELES TIMES*; NATIONAL NEWSPAPER ASSOCIATION; NEWSPAPER ASSOCIATION OF AMERICA; RADIO-TELEVISION NEWS DIRECTORS ASSOCIATION; AND THE SOCIETY OF PROFESSIONAL JOURNALISTS**

DAVIS WRIGHT TREMAINE LLP

# TABLE OF CONTENTS

Pages

I.     Summary of Argument ........................................................................ 1

II.    Statement of Facts ............................................................................ 2

III.    JB Has Failed to Meet the Exacting Standard for a Prior Restraint ........................ 4

IV.    The Order Requiring Dynadot to Disable the Wikileaks Website
Is an Unconstitutional Prior Restraint ........................................................ 6

V.     The TRO Against Wikileaks Is an Impermissible Prior Restraint ......................... 8

        A.       Privacy and Reputational Interests Cannot
Justify a Prior Restraint ............................................................... 8

        B.       The Laws Cited by JB Do Not Authorize Any Punishment
of Wikileaks, Let Alone a Prior Restraint ...................................... 10

VI.    Both the Order Granting the TRO Against Wikileaks and
the Stipulated Permanent Injunction Regarding Dynadot
Lack Findings Required for a Prior Restraint and Are Not
Narrowly Tailored ......................................................................... 12

VII.    Section 230 of the Communications Decency Act Bars JB's
Claims Against Wikileaks and Dynadot .............................................. 14

DAVIS WRIGHT TREMAINE LLP

## CASES

*Alemite Mfg. Corp. v. Staff,* 42 F.2d 832 (2d Cir. 1930) ................................................ 14

*Alexander v. United States,* 509 U.S. 544 (1993) ........................................................ 4, 6

*Allen v. Ghoulish Gallery,* No. 06cv371, 2007 U.S. Dist. LEXIS 37514
    (S.D. Cal. May 23, 2007) ................................................................................. 12

*Almeida v. Amazon.com, Inc.,* 456 F.3d 1316 (11th Cir. 2006) ................................. 15

*Balboa Island Village Inn, Inc. v. Lemen,* 40 Cal. 4th 1141 (2007) .......................... 9

*Bantam Books, Inc. v. Sullivan,* 372 U.S. 58 (1963) ........................................... 1, 7, 8

*Barnes v. Yahoo!, Inc.,* No. 05-926, 2005 WL 3005602 (D. Or. Nov. 8, 2005) .......... 16

*Bartnicki v. Vopper,* 532 U.S. 514 (2001) ................................................................ 10

*Batzel v. Smith,* 333 F.3d 1018 (9th Cir. 2003) .................................................. 15, 16

*Ben Ezra, Weinstein & Co. v. Am. Online, Inc.,* 206 F.3d 980 (10th Cir. 2000) ......... 15

*Best W. Int'l v. Doe,* No. CV-06-1537, 2006 WL 2091696 (D. Ariz. July 25, 2006) ......... 7

*Blumenthal v. Drudge,* 992 F. Supp. 44 (D.D.C. 1998) ............................................ 16

*Bridge C.A.T. Scan Assocs. v. Technicare Corp.,* 710 F.2d 940 (2d Cir. 1983) ......... 5

*Carafano v. Metrosplash.com, Inc.,* 339 F.3d 1119 (9th Cir. 2003) ..................... 15, 16

*Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.,* 827 F.2d 1291
    (9th Cir. 1987) .............................................................................................. 6, 8

*Carroll v. President & Comm'rs of Princess Anne,* 393 U.S. 175 (1968) ......... 1, 13, 14

*CBS, Inc. v. Davis,* 510 U.S. 1315 (1994) ............................................................... 5, 9

*CBS, Inc. v. United States Dist. Court,* 729 F.2d 1174
    (9th Cir. 1984) ................................................................................................. 4

*Cohen v. Cowles Media Co.,* 501 U.S. 663 (1991) .................................................. 10

*Copp v. Paxton,* 45 Cal. App. 4th 829 (1996) ........................................................ 12

*Cox Broad. Corp. v. Cohn,* 420 U.S. 469 (1975) ...................................................... 8

*Delfino v. Agilent Technologies, Inc.,* 145 Cal. App. 4th 790 (2006),
    *cert. denied,* 128 S. Ct. 98 (2007) ................................................................. 16

*Della Penna v. Toyota Motor Sales, USA, Inc.,* 11 Cal. 4th 376 (1995) .................. 12

*Dendrite Int'l, Inc. v. Doe,* 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001) ............... 7

Brief of Amici Curiae
Case No. CV08-0824 JSW

DAVIS WRIGHT TREMAINE LLP

*Doe v. Cahill*, 884 A.2d 451 (Del. 2005) ........................................................... 7

*Donato v. Moldow*, 865 A.2d 711 (N.J. Super. Ct. App. Div. 2005) ............................................. 16

*EEOC v. Severn Trent Servs., Inc.*, 358 F.3d 438 (7th Cir. 2004) ................................................. 12

*Elvis Presley Enters., Inc. v. Passport Video*, 357 F.3d 896 (9th Cir. 2004) ........................... 13

*Envtl. Planning & Info. Council v. Superior Court*, 36 Cal. 3d 188 (1984) .............................. 10

*FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300 (7th Cir. 1990) ......................................... 11

*Ford Motor Co. v. Lane*, 67 F. Supp. 2d 745 (E.D. Mich. 1999) ................................................. 1, 5

*FTC v. Enforma Natural Prods., Inc.*, 362 F.3d 1204 (9th Cir. 2004) ................................. 1, 12, 13

*Gilbert v. Nat'l Enquirer, Inc.*, 43 Cal. App. 4th 1135 (1996) ........................................................ 9

*Glover v. Johnson*, 855 F.2d 277 (6th Cir. 1988) ........................................................................ 13

*Goldblum v. NBC*, 584 F.2d 904 (9th Cir. 1978) ...................................................................... 4, 9

*Granny Goose Foods v. Local 70, Int'l Brotherhood of Teamsters*, 415 U.S. 423 (1974) ...... 1, 12

*Huggins v. Povich*, No. 131164/94, 1996 WL 515498 (N.Y. Sup. Ct. Apr. 19, 1996) ............... 12

*Hunt v. NBC*, 872 F.2d 289 (9th Cir. 1989) ................................................................................. 4

*In re Charlotte Observer*, 921 F.2d 47 (4th Cir. 1990) ............................................................. 7, 9

*In re King World Prods., Inc.*, 898 F.2d 56 (6th Cir. 1990) ......................................................... 8

*In re North*, 16 F.3d 1234 (D.C. Cir. 1994) ................................................................................. 8

*In re Providence Journal Co.*, 820 F.2d 1342 (1st Cir. 1986), *modified on rehearing en banc*, 820 F.2d 1354 (1st Cir. 1987), *cert. dismissed on other grounds, United States v. Providence Journal Co.*, 485 U.S. 693 (1988) .................................................................................... 5, 6, 8

*In re Rare Coin Galleries of America, Inc.*, 862 F.2d 896 (1st Cir. 1988) ................................. 13

*Kathleen R. v. City of Livermore*, 87 Cal. App. 4th 684 (2001) ................................................ 15

*Levine v. United States Dist. Court*, 764 F.2d 590 (9th Cir. 1985) ............................................ 13

*Lovell v. City of Griffin*, 303 U.S. 444 (1938) ............................................................................. 7

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) ......................................................... 7

*Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Restaurant Employees Int'l*, 239 F.3d 172 (2d Cir. 2001) ........................................................ 9

*Near v. State of Minnesota ex rel. Olson*, 283 U.S. 697 (1931) ......................................... 1, 4, 6, 9

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) ....................................................... *passim*

DAVIS WRIGHT TREMAINE LLP

iv

*New York Times Co. v. United States*, 403 U.S. 713 (1971) ............................... 1, 5, 6, 9

*Nicholson v. McClatchy Newspapers*, 177 Cal. App. 3d 509 (1986) ........................... 11

*Novak v. Overture Servs.*, 309 F. Supp. 2d 446 (E.D.N.Y. 2004) ............................ 16

*Optinrealbig.com, LLC v. Ironport Sys., Inc.*, 323 F. Supp. 2d 1037 (N.D. Cal. 2004) .............. 14

*Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971) ............................. 8, 9, 12

*Pacific Gas & Elec. Co. v. Public Utilities Comm'n of Cal.*, 475 U.S. 1 (1986) ..................... 7

*Pearson v. Dodd*, 410 F.2d 701 (D.C. Cir. 1969) ............................... 11

*Pillsbury, Madison & Sutro v. Schectman*, 55 Cal. App. 4th 1279 (1997) .................... 11

*Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219 (6th Cir. 1996) ................... 1, 5, 6

*Religious Tech. Ctr. v. F.A.C.T.NET, Inc.*, 901 F. Supp. 1519 (D. Colo. 1995) ................ 8

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231
    (N.D. Cal. 1995) ............................... 6

*Reno v. ACLU*, 521 U.S. 844 (1997) ............................... 7

*Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97 (1979) ............................... 4, 10

*Stead Motors v. Automotive Machinists Lodge 1173*, 886 F.2d 1200 (9th Cir. 1989) ............. 13

*United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803 (2000) .................... 14

*United States v. Leon*, 468 U.S. 897 (1984) ............................... 13

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007) ................ 16

*Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652 (1975) ..................... 11

*Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Village of Stratton*, 536 U.S. 150 (2002) ........... 7

*Zeran v. Am. Online, Inc.*, 129 F.3d 327 (4th Cir. 1997) ..................... 15, 16

## STATUTES & RULES

12 U.S.C. § 3401 et seq. ............................... 11

47 U.S.C. § 230 ............................... *passim*

Fed. R. Civ. P. 52 ............................... 12

Fed. R. Civ. P. 65 ............................... 12

v

DAVIS WRIGHT TREMAINE LLP

**MISCELLANEOUS**

Adam Liptak and Brad Stone, *Judge Shuts Down Website Specializing in Leaks*, N.Y. Times, Feb. 20, 2008 .................................................................................................. 2, 3

Alexander Bickel, *The Morality of Consent* 61 (1975) ................................................. 7

Eric Schmitt and Michael R. Gordon, *Leak on Cross-Border Chases From Iraq*, N.Y. Times, Feb. 4, 2008 ....................................................................................................... 2

Julian Assange and Daniel Schmitt, Bank Julius Baer v. Wikileaks, Jan. 23, 2008, available at http://www.sunshinepress.org/wiki/Bank_Julius/Baer_vs._Wikileaks ........... 2

*Kenya dismisses Moi graft claims,* BBC News, Aug. 31, 2007, http://news.bbc.co.uk/2/-hi/africa/6972337.stm ................................................................................................ 2

M. Nimmer, *Nimmer on Freedom of Speech*, § 4.03 (1984) .......................................... 6

Ryan Singel, *Sensitive Guantanamo Bay Manual Leaked Through Wiki Site*, Wired.com, Nov. 14, 2007, http://www.wired.com/politics/onlinerights/news/2007/11-gitmo ........... 2

2 William Blackstone, *Commentaries* .......................................................................... 5

DAVIS WRIGHT TREMAINE LLP

vi

# I.  Summary of Argument

*Amici* are news organizations and non-profit organizations that, on a daily basis, protect the rights of journalists and other citizens to report on information available on the Internet.  The Permanent Injunction requiring Dynadot to disable Wikileaks.org and the Temporary Restraining Order issued against Wikileaks impose prior restraints that violate the First Amendment.

*First,* Wikileaks provides a forum for dissidents and whistleblowers across the globe to post documents, but the Dynadot Injunction imposes a prior restraint that drastically curtails access to Wikileaks from the Internet based on a limited number of postings challenged by Plaintiffs.  The Dynadot Injunction therefore violates the bedrock principle that an injunction cannot enjoin *all communication* by a publisher or other speaker.  *Near v. State of Minnesota ex rel. Olson*, 283 U.S. 697 (1931); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64 n.6, 71 (1963).

*Second,* the TRO against Wikileaks violates the First Amendment because judicial orders enjoining reporting on or dissemination of documents constitute prior restraints.  *New York Times Co. v. United States* ("*Pentagon Papers*"), 403 U.S. 713 (1971); *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219 (6th Cir. 1996); *Ford Motor Co. v. Lane*, 67 F. Supp. 2d 745 (E.D. Mich. 1999).  Under *Pentagon Papers*, the First Amendment prohibits prior restraints in nearly every circumstance, even where national security may be at risk and the press's source is alleged to have obtained the documents unlawfully.  The privacy and commercial interests Plaintiffs cite are simply not on the same order of magnitude required to justify a prior restraint, and the grab bag of federal, state, and foreign laws they cite do not authorize prior restraints.

*Third,* both the TRO and Dynadot Injunction lack the rigorous findings required for a prior restraint and are far broader than constitutionally permissible, as the TRO purports to reach anyone with "notice," not just parties, and is not narrowly tailored.  *Granny Goose Foods, Inc. v. Local 70, Int'l Brotherhood of Teamsters*, 415 U.S. 423, 443 (1974); *FTC v. Enforma Natural Prods., Inc.*, 362 F.3d 1204, 1215 (9th Cir. 2004); *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175 (1968).

*Finally,* the TRO and Dynadot Injunction are precluded by Section 230 of the Communications Decency Act, which prohibits injunctive relief against websites and services

1

1  such as Wikileaks and Dynadot for publishing information provided by third parties.

2  **II.    Statement of Facts**

3      The website www.wikileaks.org "invites people to post leaked materials with the goal of

4  discouraging 'unethical behavior' by corporations and governments." Adam Liptak and Brad

5  Stone, *Judge Shuts Down Website Specializing in Leaks*, N.Y. Times, Feb. 20, 2008 (hereinafter

6  "*Liptak*"). "It has posted documents said to show the rules of engagement for American troops in

7  Iraq, a military manual for the operation of the detention center at Guantanamo Bay, Cuba, and

8  other evidence of what it has called corporate waste and wrongdoing." *Id.* Documents posted on

9  Wikileaks have been the basis for major news stories in recent months on the U.S. military's rules

10 of engagement in Iraq (N.Y. Times); the treatment of terrorist suspects held at Guantanamo

11 (Wired.com); and official corruption in Kenya and Somalia (BBC News).[1]

12     Plaintiffs Bank Julius Baer & Co. Ltd. and Julius Baer Bank and Trust Co. LTD (together,

13 "Plaintiffs" or "JB") allege that confidential bank documents that JB believes were stolen by

14 "disgruntled ex-employee" Rudolf Elmer ("Elmer") were posted on www.wikileaks.org

15 commencing on or about January 13, 2008. Brief in Support of TRO ("Pl. Br.") at 3, 8. Wikileaks

16 has confirmed that it "has released several hundred documents from a Swiss banking

17 whistleblower purportedly showing offshore tax evasion and money laundering by extremely

18 wealthy and in some cases, politically sensitive, clients from the US, Europe, China and Peru."[2]

19     On February 6, 2008, JB filed a Complaint against Wikileaks, alleging claims for unlawful

20 business practices, interference with contract and prospective economic advantage, and

21 conversion. Two days later, JB filed an *ex parte* motion for a preliminary injunction and

22 temporary restraining order. The Court held a hearing on the matter less than a week later, at

23 which Wikileaks did not appear.

24     On February 15, 2008, the Court entered a "Permanent Injunction," apparently as a result

25

26 [1]    Eric Schmitt and Michael R. Gordon, *Leak on Cross-Border Chases From Iraq*, N.Y.
   Times, Feb. 4, 2008; Ryan Singel, *Sensitive Guantanamo Bay Manual Leaked Through Wiki Site*,
27 Wired.com, Nov. 14, 2007, http://www.wired.com/politics/onlinerights/news/2007/11/-gitmo;
   *Kenya dismisses Moi graft claims*, BBC News, Aug. 31, 2007, http://news.bbc.co.uk/2/-
   hi/africa/6972337.stm.
28 [2]    Julian Assange and Daniel Schmitt, "Bank Julius Baer v. Wikileaks," Jan. 23, 2008,
   available at http://www.sunshinepress.org/wiki/Bank_Julius_Baer_vs._Wikileaks.

DAVIS WRIGHT TREMAINE LLP

of a Stipulation between Plaintiffs and Defendant Dynadot, requiring that "Dynadot shall immediately clear and remove all DNS hosting records for the wikileaks.org domain name and prevent the domain name from resolving to the wikileaks.org website or any other website or server other than a blank park page, until further order of this Court."[3]  Because the wikileaks.org domain name has been "cleared" pursuant to the injunction, the ability to access the site to review *any* document (even those unrelated to JB) or post any documents has been severely impeded. However, "[t]he site itself could still be accessed at its Internet Protocol address (http://88.80.13.160/) – the unique number that specifies a Web site's location on the Internet. Wikileaks also maintained 'mirror sites,' or copies usually produced to ensure against failures and this kind of legal action" from countries like China. *See Liptak.*  Some of these sites were registered in countries other than the United States, through domain registrars other than Dynadot, and thus were unaffected by the injunction. *Id.*

On February 15, the Court also entered its "Amended Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction" enjoining Wikileaks and "all others who receive notice of this order" from, *inter alia*, posting, publishing, disseminating, or otherwise using certain documents and information originating from JB and which JB claims to be private, "whether or not such documents and information are authentic . . . or forged."  The Court scheduled a hearing for February 29, 2008 (the conclusion of the ten-day limit for a temporary restraining order) and

---

[3]     An Internet user generally accesses a website by entering its domain name – such as www.cand.uscourts.gov – into his Internet browser.  The browser, through a series of communications with a domain name server ("DNS"), resolves the human-readable domain name into a machine-readable Internet protocol ("IP") address – such as 123.45.67.89.  The DNS system is essentially a phone book for the computer to translate website names to IP addresses, the latter of which may be located by the computer's browser.  In theory, a user could access a site directly using its IP address, but this is practically untenable.  The DNS system is thus critical to the functioning of the Internet – including both the World Wide Web and e-mail, as website and email addresses (*e.g.*, Judge@cand.uscourts.gov) contain human-readable domain names.

Operators of websites obtain their domain names from DNS registrars, such as Dynadot. These registrars control the domain names registered through them, allowing them to add, modify, and delete information concerning the domain name, such as the IP address to which the domain name resolves.  The registrars have the ability to practically disable websites by deleting the IP address of the website from the DNS system, so that users who enter the domain name into their browsers or attempt to send an email to an address with that domain name do not actually reach the site or deliver the email.

3

ordered Wikileaks to show cause why a preliminary injunction should not issue that continues the

terms of the Temporary Restraining Order. Wikileaks has not filed any opposition, nor has it

appeared in the case. In a filing on February 22, 2008, JB contends that Wikileaks has waived its

rights and that the court should not hear from Wikileaks "or any third parties." *See* Pl. Notice of

Non-Opposition at 3.

*Amici* file this brief to alert the Court to the fundamental First Amendment issues at stake

which have not been addressed by JB or Wikileaks (who has not appeared in this case) and which

have a critical impact on Media Amici. *See* Motion for Leave to File Amici Brief, filed

concurrently herewith. Defendant Dynadot LLC consents to *Amici*'s participation. JB opposes

*Amici*'s participation.

### III.   JB Has Failed to Meet the Exacting Standard for a Prior Restraint

"Temporary restraining orders and permanent injunctions – *i.e.*, court orders that actually

forbid speech activities – are classic examples of prior restraints." *Alexander v. United States*,

509 U.S. 544, 550 (1993). Prior restraints represent "the most serious and the least tolerable

infringement on First Amendment rights," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559

(1976), constitute "one of the most extraordinary remedies known to our jurisprudence," *Hunt v.

NBC,* 872 F.2d 289, 293 (9th Cir. 1989), and are "presumptively unconstitutional," *Goldblum v.

NBC*, 584 F.2d 904, 906-07 (9th Cir. 1978) (Kennedy, J.) (granting writ of mandamus and

vacating prior restraint). "Under our constitutional system prior restraints, if permissible at all, are

permissible only in the most extraordinary of circumstances." *CBS, Inc. v. United States Dist.

Court*, 729 F.2d 1174, 1183 (9th Cir. 1983) (granting writ of mandamus and vacating TRO); *Smith

v. Daily Mail Publ'g Co.*, 443 U.S. 97, 102 (1979) ("Prior restraints have been accorded the most

exacting scrutiny . . ."). The First Amendment forbids prior restraint of speech even more

categorically than criminal punishment because "[a] prior restraint . . . has an immediate and

irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication

'chills' speech, prior restraint 'freezes' it at least for the time." *Nebraska Press Ass'n*, 427 U.S. at

559; *see also Near*, 283 U.S. at 713-14 (" 'The liberty of the press ... consists in laying no

4

1 | previous restraints upon publications . . . ' ") (quoting 2 William Blackstone, *Commentaries*,

2 | *151-52).

3 | It is well established that court orders that forbid dissemination of confidential documents,

4 | such as the TRO against Wikileaks and the Dynadot Injunction, constitute prior restraints,

5 | regardless of how the documents were obtained. *Pentagon Papers*, 403 U.S. 713 (1971)

6 | (injunction against publication of classified documents purloined from Defense Department is a

7 | prior restraint); *Procter & Gamble*, 78 F.3d at 225-27 (TRO enjoining publication of leaked

8 | documents sealed by court order is a prior restraint); *In re Providence Journal Co.*, 820 F.2d

9 | 1342, 1345 (1st Cir. 1986) ("temporary restraining order barring publication of [FBI] logs and

10 | memoranda" is a prior restraint), *modified on reh'g en banc*, 820 F.2d 1354 (1st Cir. 1987), *cert.*

11 | *dismissed on other grounds*, *United States v. Providence Journal Co.*, 485 U.S. 693 (1988);

12 | *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 946 (2d Cir. 1983) (TRO against

13 | publication of document is a prior restraint regardless of "[t]he fact that the order at issue here

14 | involves trade secrets"); *Lane*, 67 F. Supp. 2d at 747-48 (holding that to order an Internet poster to

15 | remove internal Ford documents would constitute a prior restraint).[4]

16 | Notwithstanding this clear authority, JB has ignored the First Amendment rights

17 | implicated by the TRO, and limits its legal analysis to the ordinary injunctive relief standard, Pl.

18 | Br. at 11, Pl. Notice of Non-Opposition at 2 n.1. "In the case of a prior restraint on pure speech,"

19 | however, "the hurdle is substantially higher" than for an ordinary TRO. *Procter & Gamble*, 78

20 | F.3d at 226-27. This "most extraordinary remedy" can be ordered "only where the evil that would

21 | result from the reportage is both great and certain," *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317

22 | (1994) (Blackmun, J., in chambers) (emphasis added), and in the most exceptional circumstances

23 | – such as to prevent the dissemination of information about troop movements during wartime,

24 |

---

25 | [4] In *Lane*, the poster knew the employees breached confidentiality agreements and threatened to encourage such breach, Ford alleged that the poster "solicited and received trade

26 | secrets that were misappropriated" and Ford "presented substantial evidence to support its claim that [the poster] violated the Michigan Uniform Trade Secrets Act" – a far cry from this case,

27 | where there is no plausible allegation that Wikileaks directly solicited documents from Elmer or knew of his agreements with JB when it posted the documents. 67 F. Supp. 2d at 746, 748. Even

28 | under more compelling circumstances, however, the *Lane* court *still* rejected an injunction as "an invalid prior restraint of free speech in violation of the First Amendment." *Id.* at 746.

5

*Near*, 283 U.S. at 716, or to "suppress[] information that would set in motion a nuclear holocaust." *Pentagon Papers*, 403 U.S. at 726 (Brennan, J., concurring). Thus, "[i]n its nearly two centuries of existence, the Supreme Court has *never* upheld a prior restraint on pure speech," *In re Providence Journal*, 820 F.2d at 1348 (emphasis added), even when "faced with the competing interest of national security or the Sixth Amendment right to a fair trial," *Procter & Gamble*, 78 F.3d at 227.

## IV. The Order Requiring Dynadot to Disable the Wikileaks Website Is an Unconstitutional Prior Restraint

The first of the two prior restraints at issue is the Court's entry of a permanent injunction against Dynadot that requires Dynadot to disable and lock the wikileaks.org domain name. This order has the effect of permanently and drastically curtailing access to the entire site – restraining *all* of the speech on the site, including speech having nothing to do with JB's activities. This is precisely the sort of injunction rejected by the Supreme Court in *Near*, 283 U.S. 697, where a newspaper was completely enjoined from future publication based on prior articles. *See also Alexander*, 509 U.S. at 550 ("[P]ermanent injunctions, *i.e.*, – court orders that actually forbid speech activities – are classic examples of prior restraints.") (quoting M. Nimmer, *Nimmer on Freedom of Speech* § 4.03, at 4-14 (1984)).

As the Ninth Circuit has stated, "[e]ven when a speaker has repeatedly exceeded the limits of the First Amendment, courts are extremely reluctant to permit the state to close down his communication forum altogether." *Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291, 1296 (9th Cir. 1987); *see also Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1259 (N.D. Cal. 1995) ("While a specifically-tailored injunction in a copyright case does not offend the First Amendment, attempting to shut down a critic's speech activities, including those that do not implicate the copyright laws in the least, would constitute an unwarranted prior restraint on speech.").

Neither Plaintiffs' nor Dynadot's submissions to the Court purport to justify the blanket prior restraint against Wikileaks.[5] The First Amendment "protects the public's interest in

---

[5]  Plaintiffs readily admit that the purpose of the Dynadot injunction is to smoke out representatives of wikileaks.org in order for JB to proceed in its suit against them. *See* Pl. Br. at 21 n.3 (explaining that the injunction is intended to force "the Wikileaks defendants [to] stop

DAVIS WRIGHT TREMAINE LLP

6

receiving information." *Pacific Gas & Elec. Co. v. Public Utilities Comm'n of Cal.*, 475 U.S. 1, 8 (1986) (plurality opinion). Indeed, Plaintiffs appear to recognize that they have no right to enjoin the entirety of the Wikileaks website, which contains countless documents of public interest, as well as analysis and discussion of those documents. *See* Pl. Br. at 10 (explaining the limited relief sought).

The indirect nature of the restraint on Wikileaks – compelling Dynadot to shut down the wikileaks.org domain – makes it no less offensive. *Bantam Books,* 372 U.S. at 64 n.6, 71 (finding unlawful prior restraint against publishers, where government coerced distributors into consenting to cease distributing the publishers' works: "The constitutional guarantee of freedom of the press embraces the circulation of books as well as their publication, and the direct and obviously intended result of the Commission's activities was to curtail the circulation in Rhode Island of books published by appellants.") (citing *Lovell v. City of Griffin,* 303 U.S. 444, 452 (1938) ("[W]ithout the circulation, the publication would be of little value.'") (citation omitted)).

The fact that the documents have been available online since January 13, 2008, and the Wikileaks site is still accessible through its IP address and through "mirror" sites in other countries cannot save the restraint, which seeks to block the primary means of access to the site. *See Reno v. ACLU*, 521 U.S. 844, 879-80 (1997) (Internet speech restrictions not justified by remaining avenues for such speech). If anything, this cuts against the validity of the restraint, in that it is not only unjustified but ineffective. *Nebraska Press Ass'n*, 427 U.S. at 567 (prior restraint unsupportable where ineffective). Prior restraints are particularly inappropriate where, as here, "the cat is out of the bag." *In re Charlotte Observer*, 921 F.2d 47, 50 (4th Cir. 1990) (district

hiding behind anonymity"). This is not a valid purpose for a prior restraint. Moreover, the First Amendment protects the right to speak anonymously. *See Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Village of Stratton*, 536 U.S. 150, 166-67 (2002); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995). This right applies equally to speech on the Internet. *See Best W. Int'l v. Doe*, No. CV-06-1537, 2006 WL 2091696, at *3-4 (D. Ariz. July 25, 2006); *Doe v. Cahill*, 884 A.2d 451, 456 (Del. 2005); *Dendrite Int'l v. Doe*, 775 A.2d 756, 765-66 (N.J. Super. Ct. App. Div. 2001).

Even if the injunction were only in effect until Wikileaks submitted to the Court's jurisdiction, as JB suggests, it would be constitutionally infirm: "'Prior restraints fall on speech with a brutality and a finality all their own. Even if they are ultimately lifted they cause irremediable loss – a loss in the immediacy, the impact, of speech.'" *Nebraska Press Ass'n*, 427 U.S. at 609 (Brennan, J., concurring) (quoting Alexander Bickel, *The Morality of Consent* 61 (1975)).

DAVIS WRIGHT TREMAINE LLP

court erred in issuing prior restraint where "[o]nce announced to the world, the information lost its secret characteristic"); *see also In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994) (authorizing publication of investigative report of independent counsel where information was widely known, because "it is impossible to remove leaked material from the news media and cram it back into grand jury secrecy"); *Religious Tech. Ctr. v. F.A.C.T.NET, Inc.*, 901 F. Supp. 1519, 1527 (D. Colo. 1995) (widely disclosed documents lose status as trade secrets).

The fact that Dynadot consented to the injunction also is irrelevant. In *Bantam*, the distributor of the publishers' works agreed to cease distribution under government pressure, but the state action was held to be a prior restraint against the publishers' expression nonetheless. Whether or not Dynadot could on its own choose to disable the wikileaks.org domain name, the Court cannot put its imprimatur on such action. *See Carlin*, 827 F.2d at 1296-97 (distinguishing between unconstitutional restraint involving state action and permissible private restraint). As such the permanent injunction against Dynadot constitutes an unconstitutional prior restraint.

**V.     The TRO Against Wikileaks Is an Impermissible Prior Restraint**

     **A.     Privacy and Reputational Interests Cannot Justify a Prior Restraint**

The TRO focused on the JB documents fares no better than the blanket injunction. The rationales offered by JB do not even approach the rigorous justification required for a prior restraint forbidding not just Wikileaks but the world – everyone "with notice" of the order – from reporting on the documents. "Designating the conduct as an invasion of privacy" does not warrant a prior restraint. *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419-20 (1971); *see also In re Providence Journal*, 820 F.2d at 1350 (privacy, "although meriting great protection, is simply not of the same magnitude" as the interests that could justify a prior restraint); *In re King World Prod., Inc.*, 898 F.2d 56, 57-58 (6th Cir. 1990) (vacating TRO against broadcast of video filmed by producer who invaded doctor's privacy by posing as a patient and surreptitiously filming him); *see also Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 487-96 (1975) (First Amendment prohibits even subsequent punishment for publishing juvenile rape victim's name contained in indictment).

JB also complains about its damaged business reputation caused by its inability to protect private information against disclosure by a renegade employee, but "the interest . . . in being free

8

from public criticism of . . . business practices" cannot justify a prior restraint. *Keefe*, 402 U.S. at 419; *see also Davis*, 510 U.S. at 1318 (1994) (Blackmun, J., in chambers) (finding prior restraint not justified by potential for "significant economic harm"); *In re Charlotte Observer*, 921 F.2d at 49 (prior restraint to "protect[] the reputation of [an] attorney" held impermissible). JB's allegations that the documents contain defamatory forgeries likewise cannot justify a prior restraint, particularly one not limited to the just that information, for subsequent punishment, not prior restraint, is "the appropriate sanction for calculated defamation or other misdeeds in the First Amendment context." *See Davis*, 510 U.S. at 1318 (Blackmun, J., in chambers); *see also Near*, 283 U.S. at 705 (reversing injunction against publication of "malicious, scandalous and defamatory matter" as prior restraint); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Restaurant Employees Int'l*, 239 F.3d 172, 177 (2d Cir. 2001) ("[C]ourts have long held that equity will not enjoin a libel."); *Gilbert v. Nat'l Enquirer, Inc.*, 43 Cal. App. 4th 1135, 1144 (1996) ("[P]rior restraints are not permitted to stop the publication of a defamatory statement."); *Balboa Island Village Inn, Inc. v. Lemen*, 40 Cal. 4th 1141, 1155 (2007) (at minimum, defamatory speech cannot be enjoined, if even, until after "a trial at which it is determined that the defendant defamed the plaintiff.").

Finally, while JB's latest filing gestures at identity theft and predicts a "devastating impact on financial institutions," *see* Pl. Notice of Non-Opposition at 2, such vague prognostications about the banking industry, based solely on the Declaration of JB's outside counsel, constitute rank speculation insufficient to justify a prior restraint. *Davis*, 510 U.S. at 1318 (Blackmun, J., in chambers) ("[S]peculative predictions . . . based on 'factors unknown and unknowable'" cannot justify a prior restraint); *Goldblum*, 584 F.2d at 906 ("wholly speculative" possibility of future criminal prosecution insufficient for prior restraint). Nor does this speculation compare to threats posed in earlier cases in which the prior restraints were nonetheless rejected. *See Pentagon Papers*, 403 U.S. at 726-27 (Brennan, J., concurring) (threat of harm to national security caused by disclosure of defense department documents too speculative to justify prior restraint); *Nebraska Press Ass'n*, 427 U.S. at 567 (concerns about defendant's fair trial rights deemed too speculative to justify prior restraint).

9

### B. The Laws Cited by JB Do Not Authorize Any Punishment of Wikileaks, Let Alone a Prior Restraint

JB attempts to paint Wikileaks as an accomplice to Elmer, liable under California common law for Elmer's alleged wrongdoings. "This case cannot realistically be viewed from an exclusively common law perspective, however, since the very nature of the activities complained of invites constitutional analysis as well." *Envtl. Planning & Info. Council v. Superior Court*, 36 Cal. 3d 188, 195 (1984). Wikileaks posts an open invitation to whistleblowers worldwide to post documents anonymously on its site for purposes of public dissemination, review, and discussion. Even under the facts alleged by JB, Wikileaks itself obtained the documents lawfully – *i.e.*, the documents were allegedly stolen by Elmer and then voluntarily provided by Elmer to Wikileaks – and the Supreme Court has made it clear that laws imposing subsequent punishment based on dissemination of lawfully obtained information violate the First Amendment, even if the source of the information provides it illegally. *See, e.g., Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001) ("[A] stranger's illegal conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern."); *Cohen v. Cowles Media Co.*, 501 U.S. 663, 668-69 (1991) ("[I]f a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order . . . .") (quoting *Daily Mail Publ'g*, 443 U.S. at 103).

In support of its request for a TRO, JB cites to "applicable consumer banking and privacy protection laws, including applicable Swiss and Cayman Islands laws, as well as federal and California Constitutional privacy rights and unfair business practice laws" that "prohibit" the documents from being published. Pl. Brief at 1. But most of the laws JB cites in support of its position do not, on their face, even apply to third-parties like Wikileaks. With regard to "applicable Swiss and Cayman Islands laws," there is no allegation that Wikileaks (as opposed to Elmer) is subject to the jurisdiction of either Switzerland or the Cayman Islands. Even if Wikileaks were subject to these laws, however, and even if third-parties like Wikileaks were potentially liable under the Cayman Islands and Swiss statutes cited to by JB, Heistand Decl., Exs.

10

DAVIS WRIGHT TREMAINE LLP

1  B and C, the statutes impose only subsequent punishment, and do *not* authorize prior restraints.[6]

2  Although bank customers undoubtedly have a privacy interest in their financial information, the

3  laws cited by JB do not address Wikileaks' – as opposed to Elmer's – conduct.

4  Nor do the remaining tort claims alleged in JB's Complaint provide any basis for liability

5  or, more importantly, overcome the constitutional prohibition against prior restraint. With regard

6  to JB's claim of conversion, because Wikileaks is not in possession of the original documents, and

7  because it did not steal the documents from JB, there can be no claim for conversion under

8  California law. *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 303 (7th Cir. 1990) ("[T]he

9  receipt of copies of documents, rather than the documents themselves, should not ordinarily give

10  rise to a claim of conversion [because] . . . the possession of copies of documents – as opposed to

11  the documents themselves – does not amount to an interference with the owner's property

12  sufficient to constitute conversion.") (applying California law).[7] The *FMC Corp.* Court concluded

13  that, even though the defendant news station received stolen documents from a third party source,

14  it was "free to retain copies of any of FMC's documents in its possession (and to disseminate any

15  information contained in them) in the name of the First Amendment." *Id.* at 305. So, too, is

16  Wikileaks entitled to disseminate the documents in the name of the First Amendment. *See*

17  *Nicholson v. McClatchy Newspapers*, 177 Cal. App. 3d 509, 519-20 (1986) (government may not

18  impose liability upon the press for obtaining confidential or restricted information). Even if

19  Wikileaks could be liable for conversion, the cases cited *supra* make it abundantly clear that a

20  prior restraint is not a constitutionally acceptable remedy.

21  Finally, as for JB's claims for interference with contract and prospective economic

22  ⁶ Similarly, the federal and California financial privacy laws cited in JB's brief, even if
23  they applied to Wikileaks, do *not* authorize a prior restraint. Pl. Br. at 13-14. The federal Right to
  Financial Privacy Act requires government agencies to follow certain procedures when seeking
24  financial records of bank customers, 12 U.S.C. § 3401 *et seq.*, and the California cases to which
  JB cites discuss the obligation of *banks* not to disclose their customers' private information unless
25  compelled by court order. *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 656-57
  (1975).
  ⁷ *See also Pearson v. Dodd*, 410 F.2d 701, 705 (D.C. Cir. 1969) (plaintiff not denied
26  "property use" of documents where third party made copies of the documents and provided them
  to reporter; court specifically rejected "proposition that one who receives information from an
27  intruder, knowing it has been obtained by improper intrusion, is guilty of a tort"); *Pillsbury,
  Madison & Sutro v. Schectman*, 55 Cal. App. 4th 1279, 1287 (1997) (recognizing that "underlying
28  First Amendment issue" would present a policy exception to third party liability for conversion of
  stolen documents).

DAVIS WRIGHT TREMAINE LLP

11

advantage, again, JB has not shown that it is likely to prevail on these claims, and indeed does not

address them in its moving papers.[8]  Even if Wikileaks could be subsequently held liable for the

torts of interference with contract and prospective economic advantage, there is *no* justification for

a prior restraint. *Allen v. Ghoulish Gallery*, No. 06cv371, 2007 U.S. Dist. LEXIS 37514, at *8

(S.D. Cal. May 23, 2007) (denying motion for an injunction where "the conduct sought to be

enjoined appears to fall under [claims] for trade libel, defamation and intentional interference with

prospective economic advantage, for which there are other remedies at law. . . . Enjoining the

alleged conduct would act as a prior restraint on plaintiff's speech, violating his first amendment

rights."); *see also Keefe*, 402 U.S. at 419-20 (prior restraint inappropriate to prevent criticism of

business practices).

**VI.    Both the Order Granting the TRO Against Wikileaks and the Stipulated Permanent Injunction Regarding Dynadot Lack Findings Required for a Prior Restraint and Are Not Narrowly Tailored**

The Court has not made sufficient findings to support such a prior restraint in either its

Permanent Injunction against the maintenance of any content on the domain name wikileaks.org,

or its Temporary Restraining Order barring the posting of any "BJB documents" on any Wikileaks

web site.  By its terms, Fed. R. Civ. P. 65(d)(1) requires every injunction and every restraining

order to "state the reasons why it issued," and Fed. R. Civ. P. 52(a)(1) and (2) require the Court to

"state the findings and conclusions that support its action."  An injunction or restraining order that

does not rest on sufficiently specific, express findings and conclusions must be set aside. *Granny

Goose Foods*, 415 U.S. at 443; *Enforma Natural Prods.*, 362 F.3d at 1215; *EEOC v. Severn Trent

Servs.*, 358 F.3d 438, 442 (7th Cir. 2004); *In re Rare Coin Galleries of America, Inc.*, 862 F.2d

---

[8]  The allegations in the Complaint make clear that the publication of the documents by
Wikileaks was not "designed to" induce breach of any contractual relationship, but rather to
disseminate documents of public concern.  Any impact on the contract with Elmer was, at most,
incidental, not intended, and does not give rise to facts permitting a claim of interference with
contract. *See, e.g.*, *Huggins v. Povich*, No. 131164/94, 1996 WL 515498, at * 9 (N.Y. Sup. Ct.
Apr. 19, 1996) ("a broadcaster whose motive and conduct is intended to foster public awareness or
debate cannot be found to have engaged in the wrongful or improper conduct required to sustain a
claim for interference with contractual relations").  With regard to the interference with
prospective economic advantage claim, Wikileaks' lawful publication of the documents also
cannot give rise to such claim. *Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal. 4th 376,
393 (1995) (plaintiff must plead "conduct that was wrongful by some legal measure other than the
fact of interference itself"); *see also Copp v. Paxton*, 45 Cal. App. 4th 829, 845 (1996) ("claims
for . . . interference with prospective economic advantage may not be based on speech that is
entitled to constitutional protection").

12

DAVIS WRIGHT TREMAINE LLP

1   896, 899-900 (1st Cir. 1988).

2          The need for detailed findings is heightened when, as here, the injunction trenches on

3   constitutional interests. *Glover v. Johnson*, 855 F.2d 277, 283-84 (6th Cir. 1988); *Elvis Presley*

4   *Enters., Inc. v. Passport Video*, 357 F.3d 896, 898 (9th Cir. 2004).  When a prior restraint is at

5   issue, a district court's order must establish that "(1) the activity restrained poses either a clear and

6   present danger or a serious and imminent threat to a protected competing interest, (2) the order is

7   narrowly drawn, and (3) less restrictive alternatives are not available." *Levine v. United States*

8   *Dist. Court*, 764 F.2d 590, 595 (9th Cir. 1985) (affirming prior restraint of speech by trial

9   participants where justified by serious and imminent threat to right to a fair trial) (citations

10  omitted).  *See Nebraska Press Ass'n*, 427 U.S. at 565 (denying prior restraint because threat to fair

11  speculative).

12         In light of the general rule against the wholesale adoption of proposed findings by the

13  prevailing party, *Stead Motors v. Automotive Machinists Lodge 1173*, 886 F.2d 1200, 1204 n.5

14  (9th Cir. 1989), findings to support a preliminary injunction may be cast aside on appeal when

15  derived entirely from a plaintiff's proposed order. *Enforma Natural Prods.*, 362 F.3d at 1215.

16  Wholesale adoption of a plaintiff's proposed findings seems especially inappropriate when the

17  findings purport to support a prior restraint.  In the context of a prior restraint against speech,

18  "judgment as to whether the facts justify the use of the drastic power of injunction necessarily

19  turns on subtle and controversial considerations and upon a delicate assessment of the particular

20  situation." *Carroll*, 393 U.S. at 183.  In this case, the Court adopted verbatim proposed

21  injunctions drafted by Plaintiffs, without the benefit of argument from an opposing party, which

22  set forth in detail the actions enjoined but either say nothing about the factual or legal basis for the

23  injunction (in the case of the permanent injunction), or recite in passing that the Court had "found

24  that good cause exists therefor" (in the case of the restraining order).  The Court's wholesale

25  adoption of Plaintiffs' language is especially troubling here, where no party alerted the Court to

26  the important First Amendment concerns at stake and, accordingly, the constitutional interests of

27  the public to receive information were apparently not considered. *See United States v. Leon*, 468

28  U.S. 897, 938 (1984) ("the judiciary's role [is] as the guardian of the people's constitutional

13

liberties").

There is no indication which of the several causes of action set forth in the complaint formed a basis for a finding that success was likely or there were serious questions going to the merits and the claims indeed rest on dubious foundation. *See supra* at 10-12 and *infra* at 14-16. Even if, for example, JB could demonstrate an imminent danger of identity theft, the proposed injunctive relief is not "narrowly tailored" nor the least restrictive alternative since it requires wholesale removal rather than limited redaction of information like social security numbers. *See United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 813 (2000). The TRO is also drastically overbroad because it purports to "enjoin the world at large," which courts lack the power to do, *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930) (Hand, J.), particularly in First Amendment cases, where the injunctive order "must be tailored as precisely as possible to the exact needs of the case," *Carroll*, 393 U.S. at 184. Likewise, the injunction against Dynadot renders inaccessible a broad array of Wikileaks content entirely unrelated to JB. *See supra* n.1.

## VII. Section 230 of the Communications Decency Act Bars JB's Claims Against Wikileaks and Dynadot

The validity of the TRO aimed at Wikileaks and the permanent injunction directed at Dynadot is further undercut by the broad immunity granted to defendants Wikileaks and Dynadot by section 230 of the Communications Decency Act ("CDA 230"). Because CDA 230 likely immunizes Wikileaks and Dynadot from liability for JB's underlying legal claims, JB cannot establish serious questions going to the merits, let alone a liklihood of success on the merits. *See Optinrealbig.com, LLC v. Ironport Systems, Inc.*, 323 F. Supp. 2d 1037, 1047 (N.D. Cal. 2004) (denying motion for a preliminary injunction because defendant was immune under CDA 230).

CDA 230 provides immunity for a "provider or user of an interactive computer service," such as Wikileaks and Dynadot, from state tort claims based on the publication of "information provided by another information content provider." 47 U.S.C. § 230(c)(1). This case falls squarely within CDA 230 because the essence of JB's complaint is that Wikileaks violated state and foreign laws by publishing materials provided by a disgruntled former employee. The immunity applies equally to JB's claims for damages, declaratory, and injunctive relief. *See Kathleen R. v. City of Livermore*, 87 Cal. App. 4th 684, 697-98 (2001) ("[C]laims for declaratory

14

and injunctive relief are no less causes of action than tort claims for damages and thus fall

squarely within the Section 230(e)(3) prohibitions."); *Ben Ezra, Weinstein & Co. v. Am. Online,*

*Inc.*, 206 F.3d 980, 983-84 (10th Cir. 2000).

   Most federal courts have interpreted CDA 230 expansively. *See Carafano v.*

*Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003); *Batzel v. Smith*, 333 F.3d 1018,

1026-27 (9th Cir. 2003); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006);

*Zeran v. America Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997). This expansive interpretation

reflects an understanding that "[m]aking interactive computer services and their users liable for the

speech of third parties would severely restrict the information available on the Internet" and

furthers the congressional policy of "prevent[ing] lawsuits from shutting down websites and other

services on the Internet." *Batzel*, 333 F.3d at 1027-28.

   Dynadot meets the requirements for CDA 230 immunity: it is a provider of an "interactive

computer service," and the claims against it are based on the publication of material provided by

"another information content provider." The statute defines "interactive computer service" as

"any information service, system, or access software provider that provides or enables computer

access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Courts have interpreted this

language broadly – the term includes "'*any*' information services or other systems, as long as the

service or system allows 'multiple users' to access 'a computer server.'" *Batzel*, 333 F.3d at 1030

(emphasis in original). By resolving domain names into IP addresses, Dynadot enables users to

access its clients' servers and therefore provides an interactive computer service under CDA 230.

   As a provider of interactive computer services, Dynadot cannot be held liable for

publishing material provided by "another information content provider." CDA 230 defines the

term "information content provider" as "any person or entity that is responsible, in whole or in

part, for the creation or development of information provided through the Internet or any other

interactive computer service." 47 U.S.C. § 230(f)(3). There is no question that Dynadot had no

role in creating or developing the bank records in question, and that a third party (Elmer) posted

these materials. Therefore, CDA 230 bars JB's claims against Dynadot.

   Wikileaks also meets the requirements for CDA 230 immunity. First, as an interactive

DAVIS WRIGHT TREMAINE LLP

website, Wikileaks is a provider of an "interactive computer service." *See Batzel,* 333 F.3d at 1030 & n.16 ("There is . . . no need here to decide whether a listserv or website itself fits the broad statutory definition of 'interactive computer service,' because the language of § 230(c)(1) confers immunity not just on 'providers' of such services, but also on 'users' of such services). Second, all of JB's legal claims are grounded on the publication of material provided by a third party (*i.e.,* "another information content provider"). Despite their various guises, the underlying basis of each claim is publication of JB's confidential documents, and all these state tort claims fall within the heart of CDA 230's immunity. *See, e.g., Carafano,* 339 F.3d at 1125 (CDA barred claims against website when user posted personal information about plaintiff, including her home address and phone number); *Delfino v. Agilent Technologies, Inc.,* 145 Cal. App. 4th 790, 806-07 (2006) (CDA provides immunity for "a variety of tort claims" based on publication, including invasion of privacy and negligence), *cert. denied,* 128 S. Ct. 98 (2007); *Novak v. Overture Servs.,* 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004) (applying Section 230 immunity to a claim of tortious interference with prospective economic advantage). JB's allegations that Wikileaks, by its general invitation to post documents, somehow induced the leak does not change the analysis under CDA 230.[9] The Ninth Circuit has held that "suggesting," "encouraging," or "soliciting" content does not preclude statutory immunity for an interactive computer service. *Carafano,* 339 F.3d at 1124.

Finally, Wikileaks' continued publication of the documents after JB complained does not diminish its immunity. Courts have been unwilling to hold interactive computer services liable for failure to address disputed material posted by a third party after notice. *See, e.g., Zeran,* 129 F.3d at 327 (AOL protected by CDA 230 despite knowledge that posting was a hoax and delay in removal); *Barnes v. Yahoo!, Inc.,* No. 05-926, 2005 WL 3005602 (D. Or. Nov. 8, 2005) (Yahoo! not liable despite refusal to remove after knowledge that posting was a hoax). Because both Dynadot and Wikileaks are likely to be immune under CDA 230, JB cannot establish serious questions going to the merits, let alone a likelihood of success on the merits, of their claims.

---

[9] *See Blumenthal v. Drudge,* 992 F. Supp. 44, 52-53 (D.D.C. 1998) (barring liability despite payment for content); *Universal Commc'n Sys., Inc. v. Lycos, Inc.,* 478 F.3d 413, 419 (1st Cir. 2007) (rejecting liability despite argument that the service induced unlawful postings); *Donato v. Moldow,* 865 A.2d 711 (N.J. Super. Ct. App. Div. 2005) (rejecting liability despite encouragement of users to submit complaints about public officials).

16

DAVIS WRIGHT TREMAINE LLP

1    DATED this 26th day of February, 2008.

2  Respectfully submitted,

3  DAVIS WRIGHT TREMAINE LLP

4

5  s/ Thomas R. Burke

   Thomas R. Burke (CA State Bar No. 141930)        Kelli L. Sager (CA State Bar No. 120162)
6  DAVIS WRIGHT TREMAINE LLP                        DAVIS WRIGHT TREMAINE LLP
   505 Montgomery Street                            865 South Figueroa Street, Suite 2400
7  Suite 800                                        Los Angeles, California 90017-2566
   San Francisco, California  94111                 Telephone:    (213) 633-6800
8  Telephone:    (415) 276-6500                     Facsimile:    (213) 633-6899
   Facsimile:    (415) 276-6599                     Email:        kellisager@dwt.com
9  Email:        thomasburke@dwt.com

10 Laura R. Handman
   (admission *pro hac vice* pending)
11 DAVIS WRIGHT TREMAINE LLP
   1919 Pennsylvania Avenue, NW
12 Suite 200
   Washington, DC 20006
13 Telephone:    (202) 973-4200
   Facsimile:    (202) 973-4499
14 Email: laurahandman@dwt.com

15 Attorneys for *Amici Curiae*

16

17

18

19

20

21

22

23

24

25

26

27

28