



Karl Olson (SBN 104760)
Levy, Ram & Olson
639 Front Street, Fourth Floor
San Francisco, California 94111
(415) 433-4949
ko@lrolaw.com

Paul Alan Levy (DC Bar 946400) (*pro hac vice* motion being filed)
Deepak Gupta (DC Bar 495451)
Public Citizen Litigation Group
1600 20th Street, N.W.
Washington, D.C. 20009
(202) 588-1000
plevy@citizen.org, dgupta@citizen.org

Peter Scheer (DC Bar 255950)
California First Amendment Coalition
534 4th Street #B
San Rafael, CA 94901
(415) 460-5060
pscheer@cfac.org

Attorneys for Public Citizen and California First Amendment Coalition

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

BANK JULIUS BAER & CO. LTD, A Swiss entity; and JULIUS BEAR BANK AND TRUST CO,., a Cayman Islands entity,

Plaintiffs,

v.

WIKILEAKS, an entity of unknown form, WIKILEAKS.ORG, an entity of unknown form, DYNADOT, LLC a California limited liability company, and DOES 1 through 10 inclusive,

Defendants.

No. CV08-0824 JSW

**MOTION OF PUBLIC CITIZEN AND CALIFORNIA FIRST AMENDMENT COALITION TO INTERVENE AS DEFENDANTS OR, IN THE ALTERNATIVE, TO APPEAR AS *AMICI CURIAE***

DATE: February 29, 2008
TIME: 9:00 a.m.
PLACE: Courtroom 2
JUDGE: Honorable Jeffrey S. White

## TABLE OF CONTENTS

Notice of Motion and Motion . . . . . . . . . . 1

Memorandum of Points and Authorities in Support of Motion to Intervene . . . . . . . . . . 1

Identity and Interests of Proposed Intervenors . . . . . . . . . . 1

A. California First Amendment Coalition . . . . . . . . . . 1

B. Public Citizen. . . . . . . . . . . 3

Argument . . . . . . . . . . 6

I. Public Citizen and the California First Amendment Coalition Are Entitled to Intervention as of Right Under Rule 24(a)(2). . . . . . . . . . . 6

A. This Motion Is Timely. . . . . . . . . . . 7

B. Proposed Intervenors Have Substantial Interests in Accessing the Information on the Wikileaks Website–Interests That Are Fully Protected by the First Amendment and That Have Already Been Threatened By This Court's Injunction.. . . . . . . . . . 8

C. The Existing Parties Are Not Adequately Representing the Proposed Intervenors' Interests... . . . . . . . . . . 12

II. In the Alternative, Proposed Intervenors Should be Granted Leave to Intervene Permissively Under Rule 24(b)(2).. . . . . . . . . . 13

III. In the Alternative, Proposed Intervenors Should Be Permitted to Appear as *Amici Curiae*. . . . . . . . . . . 14

Conclusion . . . . . . . . . . 15

## TABLE OF AUTHORITIES

### Cases

*Arakaki v. Cayetano*
324 F.3d 1078 (9th Cir. 2003) . . . . . . . . 8, 12

*Beckman Industries, Inc. v., Int'l Ins. Co.*
966 F.2d 470 (9th Cir. 1992) . . . . . . . . 13

*Board of Educ. v. Pico*
457 U.S. 853 (1982) . . . . . . . . 11

*Bose Corp. v. Consumers Union of United States, Inc.*
466 U.S. 485 (1984) . . . . . . . . 10

*Butterworth v. Smith*
494 U.S. 624 (1990) . . . . . . . . 11

*California ex rel. Lockyer v. United States*
450 F.3d 436 (9th Cir. 2006) . . . . . . . . 8

*Carroll v. President and Comm'rs of Princess Anne*
393 U.S. 175 (1968) . . . . . . . . 12

*Cobell v. Norton*
246 F.Supp.2d 59 (D.D.C.2003) . . . . . . . . 14

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*
472 U.S. 749 (1985) . . . . . . . . 11

*Elrod v. Burns*
427 U.S. 347 (1976) . . . . . . . . 9

*First Nat'l Bank of Boston v. Bellotti*
435 U.S. 765 (1978) . . . . . . . . 11

*Forest Conservation Council v. U.S. Forest Serv.*
66 F.3d 1489 (9th Cir. 1995) . . . . . . . . 7, 8

*Garrison v. Louisiana*
379 U.S. 64 (1964) . . . . . . . . 10

*Hoptowit v. Ray*
682 F.2d 1237 (9th Cir.1982) . . . . . . . . 14

*Kleindienst v. Mandel*
408 U.S. 753 (1972) . . . . . . . . 10

*League of United Latin American Citizens v. Wilson*
131 F.3d 1297 (9th Cir. 1997) . . . . . . . . 6, 7

*Martin v. City of Struthers*
319 U.S. 141 (1943) . . . . . . . . 10

*NAACP v. Claiborne Hardware Co.*
458 U.S. 886 (1982) . . . . . . . . . . 10

*Nebraska Press Ass'n v. Stuart*
427 U.S. 539 (1976) . . . . . . . . . . 11

*New York Times Co v. Sullivan*
375 U.S. 254 (1964) . . . . . . . . . . 11

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC*
335 F.Supp.2d 1061 (N.D.Cal. 2005) . . . . . . . . . . 14

*Public Citizen v. Liggett Group, Inc.*
858 F.2d 775 (1st Cir. 1988) . . . . . . . . . . 13

*Red Lion Broadcasting Co. v. F.C.C.*
395 U.S. 367 (1969) . . . . . . . . . . 10

*Sagebrush Rebellion, Inc. v. Watt*
713 F.2d 525 (9th Cir. 1983) . . . . . . . . . . 8

*Southwest Ctr. for Biological Diversity v. Berg*
268 F.3d 810 (9th Cir. 2001) . . . . . . . . . . 7

*Stanley v. Georgia*
394 U.S. 557 (1969) . . . . . . . . . . 10

*Tory v. Cochran*
544 U.S. 734 (2005) . . . . . . . . . . 12

*United States v. City of Los Angeles*
288 F.3d 391 (9th Cir. 2002) . . . . . . . . . . 7, 13

*Venegas v. Skaggs*
867 F.2d 527 (9th Cir. 1989), *aff'd*, 495 U.S. 82 (1990) . . . . . . . . . . 13

**Statutes**

California Business and Professions Code § 17200 . . . . . . . . . . 12

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on February 29, 2008, at 9:00 a.m., or as soon thereafter as this matter may be heard by this Court, located at 450 Golden Gate Avenue, San Francisco, California, Public Citizen and the California First Amendment Coalition ("Proposed Intervenors") will and do hereby move to intervene as defendants in this case pursuant to Federal Rule of Civil Procedure 24. Proposed Intervenors seek intervention for the purpose of requesting that the court lift its permanent injunction, deny the preliminary injunction sought by the plaintiffs, and dismiss this action because the Court lacks subject matter jurisdiction.

This motion seeks an order permitting the Proposed Intervenors to intervene as defendants in this action and to file their proposed (1) Motion to Dismiss for Lack of Subject Matter Jurisdiction, (2) Motion to Lift Permanent Injunction, and (3) Brief in Opposition to Injunctive Relief and in Support of Dismissal for Lack of Subject Matter Jurisdiction, copies of which are being filed concurrently with this motion. In the alternative, Proposed Intervenors seek leave to appear as *amici curiae*.

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION TO INTERVENE**

## IDENTITY AND INTERESTS OF PROPOSED INTERVENORS

### A. California First Amendment Coalition

California First Amendment Coalition is a nonprofit public interest organization dedicated to advancing free speech and open-government rights on behalf of its members, including news organizations. *See* Declaration of Peter Scheer ("Scheer Decl.") ¶ 1. CFAC's activities on behalf of its members include litigation (cases involving issues of censorship, rights of access to court and agency records, and access to legislative proceedings of state and local governments), education (providing free legal information on First Amendment and freedom-of-information issues), and public advocacy (Op-Eds and other articles, public speaking). *Id.* ¶ 5.

CFAC's members include most of the large daily papers in California, including the *Los*

*Angeles Times*, the *San Francisco Chronicle*, the *San Jose Mercury News*, the *San Diego Union-Tribune*, the *Orange County Register*, the *Sacramento Bee*, the *Press-Enterprise*, the *Oakland Tribune* and the *Fresno Bee*. *Id.* ¶ 4. CFAC and many of its members have found Wikileaks to be a valuable tool for journalists. *Id.* ¶ 6. In the past year, anonymous contributors to Wikileaks have posted documents to the website that have become the basis for major news stories. These include news stories on the US military's rules of engagement in Iraq (in the *New York Times*) official corruption in Kenya (*BBC News*), among others.

One of CFAC's members, *Wired Magazine*, has recently published at least six stories (excluding its coverage of this lawsuit) based on information found at Wikileaks. *See* Scheer Decl. ¶ 6. One such story was an important report concerning the treatment of detainees held by the U.S. military at Guantánamo Bay, Cuba, based on otherwise unavailable information found at wikileaks.org. *See* Ryan Singel, *Sensitive Guantánamo Bay Manual Leaked Through Website*, Wired Magazine, Nov. 14, 2007, available at http://www.wired.com/politics/onlinerights/news/2007/11/gitmo.

Journalists—particularly those national security, technology, foreign affiairs and international human rights issues—have found Wikileaks useful both for the records posted there and for published discussions about those records from members of the informal Wikileaks community. *See* Scheer Decl. ¶ 6. These discussions, among other things, help journalists to assess the authenticity of documents on Wikileaks. *Id.* ¶ 7. CFAC is also interested in Wikileaks, and its continued availability, as a means for dissidents in China to disclose evidence of human rights violations and official corruption—and to do so without fear of being identified by Chinese authorities. *Id.* ¶ 8. CFAC is currently involved in a legal initiative before the United States Trade Representative (USTR) that seeks to have the World Trade Organization (WTO) order an end to China's extensive censorship of the internet. CFAC's argument, which CFAC hopes will persuade the USTR to adopt in a complaint to the WTO, is that China's censorship of the internet violates its obligations under treaties to which it became subject when it joined WTO. *Id.*

CFAC seeks to intervene in this litigation to protect its own significant interests, as well as the

significant interests of its members, as guaranteed by the First Amendment, to access the information disclosed on Wikileaks. *Id.* ¶ 9. As noted above, those interests are particularly compelling for CFAC's journalist and corporate news-organization members, whose ability to report on important matters in the public interest often depends upon the willingness and ability of those with access to documents concerning governmental and corporate misconduct to come forward despite fear of retribution. *Id.* This Court's permanent injunction of February 15, 2008, which ordered the Wikileaks.org site shut down, seriously threatens the ability of CFAC and its members to access the information that would otherwise be available on Wikileaks.org. *Id.* ¶ 10. Thus, the disposition of this case has already had, and may continue to have, the effect of impeding the ability of CFAC and its members to protect their significant First Amendment interests in the material posted on Wikileaks.

CFAC is also concerned that its First Amendment interests, and the First Amendment interests of its members, will not be adequately represented in this Court absent CFAC's intervention because Wikileaks has not appeared in this action to defend itself. *Id.* ¶ 11. Moreover, even if Wikileaks does appear, there is no reason to believe that Wikileaks would be able to adequately represent the interests of CFAC or its members.

**B. Public Citizen**

Public Citizen, established in 1971, is a national nonprofit organization that advocates for openness and democratic accountability in government; for the right of consumers to seek redress in the courts; for clean, safe and sustainable energy sources; for social and economic justice in trade policies; for strong health, safety and environmental protections; and for safe, effective and affordable prescription drugs and health care. Public Citizen has approximately 15,000 members in California. *See* Declaration of Taylor Lincoln ("Lincoln Decl.") ¶ 1.

Much of Public Citizen's advocacy, on issues ranging from corruption in politics to the regulation of drugs, is conducted through original research and reporting. *Id.* ¶¶ 2, 3. Public Citizen has become known for authoritative, investigative reports whose findings are widely reported in the press and used by members of Congress and others in shaping public policy. *Id.* ¶ 3. These reports–which often highlight corporate or governmental abuses that would otherwise go unnoticed—

often rely on a combination of information from public databases, various Internet resources, searches of news reports, and information from whistleblowers and consumers. *Id.* ¶ 3.

For example, Public Citizen's Congress Watch division has recently published research reports on the following topics:

- A report showing that arbitration firms and credit card companies enjoy a cozy, mutually beneficial relationship at the expense of consumers they force into binding mandatory arbitration. Using data that is only available for consumer disputes arbitrated in the state of California, the findings provide a glimpse of how arbitration traps consumers throughout the country in unfair, secret proceedings in which for-profit arbitrators make the rules. Public Citizen's research uncovered consumers who spent years fending off collection agencies, cleaning up identity theft messes and struggling to bounce back from credit rating hits.

- Several reports tracking the major fundraisers, or bundlers, for the 2008 presidential campaigns, including periodic reports showing the the number that are registered federal lobbyists.

- A study showing that, in spite of a law requiring manufacturers to provide the Consumer Product Safety Commission with "immediate" notification of dangerous products, the agency typically delays nearly seven months after learning of dangerous, defective products before telling the public.

- A study revealing that a greatly disproportionate share of medical malpractice cases in the state of New York involve doctors enlisted in a special program for physicians with high-risk histories.

*Id.* ¶ 3.

Public Citizen's Health Research Group also depends on leaked government and corporate documents to perform its work and bring to light safety concerns that may save thousands of lives. *See* Declaration of Peter Lurie ("Lurie Decl.") ¶¶ 3-6. Dr. Lurie, the Deputy Director of the Health Research Group, provides two examples of the usefulness of such information. The first example concerns Food and Drug Administration (FDA) consideration of a drug company plan to conduct research on its new drug in Latin America using a design that the agency acknowledged would be unacceptable in the United States. Dr. Lurie reports that:

> The FDA convened an internal meeting to discuss the ethics of the proposed research. The public had no idea that the meeting was taking place, as the FDA customarily will not confirm the existence of a New Drug Application while the drug is still under review, much less of any meeting convened to discuss it. An FDA employee who had been present at the meeting provided us with the slides that had been presented. On February 22, 2001, we released a letter to the Department of Health and Human Services criticizing the proposed research and

attaching the leaked documents. On April 4, 2001, the company redesigned the study to address our criticisms.

*Id.* ¶ 4. Public Citizen's researchers make use of leaked corporate documents as well. Dr. Lurie recounts an instance in which Public Citizen "obtained internal corporate inspection data and memoranda relating to devices for the disposal of sharp, potentially infected injection equipment." *Id.* ¶ 5. The documents established that the walls of the devices were not reliably thick enough to prevent needles from piercing them. "On July 6, 1995, [Public Citizen's Health Research Group] wrote a letter to the FDA commissioner exposing these unsafe devices and the very next day the company ordered a recall of thousands of them." *Id.*

Information concerning corporate and governmental conduct is essential to Public Citizen's research and advocacy work. As the above examples illustrate, the most useful information of this kind comes in the form of actual corporate and government documents revealing the facts at issue. Many of Public Citizen's reports are informed by leaked documents that have been previously published or posted elsewhere. Lincoln Decl. ¶ 4; Lurie Decl. ¶¶ 3, 6.

Other divisions of Public Citizen also produce research reports that depend on access to sensitive government and corporate documents. Public Citizen's Global Trade Watch produces reports concerning trade policy, particularly with regard to its impact on environmental and labor protections. Lincoln Decl. ¶ 5. These reports are often highly critical of governments, multinational corporations, and international institutions such as the World Bank, and frequently rely on sensitive government and corporate documents that are at risk of suppression.

Public Citizen's researchers believe that the Wikileaks is a valuable tool for the unique type of research that the organization conducts. *Id.* ¶ 6. Both the subject matter of the website (government and corporate misconduct) and the type of information posted on the site (original government and corporate documents) are directly relevant to Public Citizen's work. *Id.* Public Citizen, therefore, has a strong interest, protected by the First Amendment, in access to the documents posted on Wikileaks. Public Citizen's ability to perform its research work is significantly enhanced by the willingness of those with information on governmental and corporate misconduct to disclose that information without threat of retaliation. If Wikileaks is shut down, the ability of Public Citizen and its members

to access that information will be significantly impaired. *Id.* ¶ 7. Indeed, this Court's permanent injunction of February 15, 2008, which ordered the Wikileaks.org site shut down, already threatens the ability of Public Citizen to access the information that would otherwise be available on Wikileaks. Thus, the disposition of this case has already had, and may continue to have, the effect of impeding the ability of Public Citizen to protect its significant First Amendment interests in the material posted on Wikileaks. *Id.* ¶ 8.

Public Citizen is also concerned that its First Amendment interests will not be adequately represented in this Court absent Public Citizen's intervention because Wikileaks has not appeared in this action to defend itself. *Id.* ¶ 9. Moreover, even if Wikileaks does appear, there is no reason to believe that Wikileaks would be able to adequately represent the interests of Public Citizen.

## ARGUMENT

### I. Public Citizen and the California First Amendment Coalition Are Entitled to Intervention As of Right Under Rule 24(a)(2).

Federal Rule of Civil Procedure 24 provides that, upon timely application, "anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). In the Ninth Circuit, a person seeking intervention under Rule 24(a)(2) must satisfy a four-part test

> (1) the application must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the transaction that is the subject of the litigation; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the parties before the court.

*League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). As demonstrated below, the Proposed Intervenors satisfy each of these requirements. First, the intervention motion is timely filed because it is being filed within just a few days of Proposed Intervenors' notice of this Court's order and at an early stage of the proceedings. Second, both Public Citizen and the California First Amendment Coalition have significant and specific interests in the information revealed on the website that is the subject of this action. Both organizations represent

the interests of researchers and journalists whose work depends on their ability to access information on corporate and government misconduct of the type disclosed on Wikileaks.org. Those interests are fully protected by the First Amendment. Third, those interests have already been threatened by the permanent injunction issued in this case and will continue to be at risk unless the injunction is lifted and the action is dismissed. Fourth, the existing parties do not adequately represent the Proposed Intervenor' interests because the defendants have not appeared and nobody has made the jurisdictional and substantive arguments presented in Proposed Intervenors' papers.

Federal district courts in the Ninth Circuit "construe the Rule broadly in favor of proposed intervenors." *United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002) (internal quotation marks and brackets omitted). "A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a practical interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an interested party to express its views before the court." *Id.* (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995)). The courts' treatment of motions to intervene is "guided primarily by practical considerations, not technical distinctions." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). Those practical considerations overwhelmingly favor intervention in this case because the defendants have not appeared at all and because the Proposed Intervenors' significant and constitutionally protected interests are at stake and will otherwise go undefended.

**A. This Motion Is Timely.**

"Timeliness is the threshold requirement for intervention as of right." *League of United Latin American Citizens*, 131 F.3d at 1302. To determine whether an intervention motion is timely, courts in the Ninth Circuit consider three factors: (1) the stage of the proceedings at which the applicant seeks to intervene, (2) the prejudice to other parties, and (3) the reason for and length of the delay. *Id.* Here, all three factors demonstrate that the motion is timely. First, the application has been filed at a very early stage of the proceedings, very soon after Proposed Intervenors' first learned of this action. Second, intervention will not unduly prejudice the plaintiffs because the defendants have not

appeared to defend their interests or those of their readers and nobody else has raised the jurisdictional and substantive arguments raised by Proposed Intervenors; thus, intervention will not result in duplicative or prolonged litigation. To the contrary, intervention will have the salutary effect of giving the Court an adversarial presentation of the issues, including briefing on the fundamental question of whether the Court possesses jurisdiction in the first place. Finally, because there has been no delay at all, the reason-and-length-of-delay factor is irrelevant.

**B. Proposed Intervenors Have Substantial Interests In Accessing the Information on the Wikileaks Website—Interests That Are Fully Protected by the First Amendment and That Have Already Been Threatened by This Court's Injunction.**

**1.** "The requirement of a significantly protectable interest is generally satisfied when 'the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue.'" *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)). The Ninth Circuit's "'interest' test is primarily a practical guide for disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Forest Conservation Council*, 66 F.3d at 1496.

This test is not a rigorous or demanding standard, but instead considers whether the proposed intervenor has a practical interest in the outcome that may be impaired absent intervention. *See, e.g.*, *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (holding that a public interest organization that supported a legislative measure had a sufficient interest to intervene and defend the measure's legality merely by virtue of having supported the measure); *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (explaining that intervenors need not show "enforceable rights" because "our intervention caselaw has not turned on such technical distinctions. Rather, we have taken the view that a party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.").

In this case, the practical effect is obvious: Where, as here, "the injunctive relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests, that party satisfies the 'interest' test." *Forest Conservation Council*, 66 F.3d at 1494. This

is particularly so in the context of First Amendment rights, because "[t]he loss of First Amendment freedoms, even for minimal periods of time, constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Indeed, in this case, the Court's permanent injunction order has *already* harmed Proposed Intervenors' First Amendment rights to access the important materials posted on the Wikileaks wesbsite.

Proposed Intervenors CFAC and Public Citizen have demonstrated that they have significant First Amendment interests that may be harmed by the injunctive relief in this case. Their concerns, moreover, are not mere generalized grievances that they share in common with the general population, but instead are grounded in specific informational needs that are vital to the work of both organizations and their members. As detailed above and in the Declaration of Peter Scheer, CFAC's members include the most of the major daily newspapers in California, including the *Los Angeles Times*, the *San Francisco Chronicle*, the *San Jose Mercury News*, the *San Diego Union-Tribune*, the *Orange County Register*, the *Sacramento Bee*, the *Press-Enterprise*, the *Oakland Tribune* and the *Fresno Bee*. *See* Scheer Decl. ¶ 4. CFAC and many of its members believe that Wikileaks is a valuable tool for journalists and news organizations that cover such matters as foreign affairs and government corruption. Similarly, as detailed above and in the Declarations of Dr. Peter Lurie and Taylor Lincoln, Public Citizen's research work focuses on bringing to light matters of public concern involving governmental and corporate abuses and misconduct and thus depends on the availability of documents revealing such conduct–especially leaked documents.

These concerns are not merely speculative. For example, one of CFAC's members, *Wired Magazine*, recently published an important story concerning the treatment of terrorist suspects held at Guantánamo Bay, Cuba, on the basis of government information found at wikileaks.org. *See* Scheer Decl. ¶ 6; Ryan Singel, *Sensitive Guantánamo Bay Manual Leaked Through Website*, Wired Magazine, Nov. 14, 2007, available at http://www.wired.com/politics/onlinerights/news/2007/11/gitmo (reporting that "[a] never-before-seen military manual detailing the day-to-day operations of the U.S. military's Guantánamo Bay detention facility has been leaked to the web, affording a rare inside glimpse into the institution where the United States has imprisoned hundreds of suspected

terrorists since 2002.") (dated Nov. 14, 2007). The story discussed both the importance of the military manual and the important role of the Wikileaks website in bringing the information to light. *Id.*

The right of Public Citizen and CFAC, and their members, to receive such information is fully protected by the First Amendment. It is well established that the First Amendment not only "embraces the right to distribute literature," but also "necessarily protects the right to receive it." *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943); *accord Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) (the First Amendment encompasses the "right to receive information and ideas"); *Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 390 (1969) ("It is the right of the public to receive suitable access to social, political, esthetic, moral, and other ideas and experiences which is crucial here. That right may not constitutionally be abridged …"); *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("It is now well established that the Constitution protects the right to receive information and ideas").

Although the right to receive information and ideas is "fundamental to our free society regardless of their social worth," *id.*, 394 U.S. at 564, the right to access the materials posted on the Wikileaks website is peculiarly deserving of protection under the First Amendment because the materials implicate issues of the utmost importance, such as international human rights, political corruption, and other governmental misconduct. As much or more than any other value, the First Amendment serves the people's interest in self-government. "The First Amendment presupposes that the freedom to speak one's mind is not only an aspect of individual liberty–and thus a good unto itself–but also is essential to the common quest for truth and the vitality of society as a whole." *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 503-04 (1984). Thus, "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964). Because of its central role in enabling the public to govern itself, "expression on public issues 'has always rested on the highest rung of the hierarchy of First Amendment values." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982) (citation omitted). The constitutional safeguard was fashioned for the very

purpose of "assur[ing] unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *New York Times Co v. Sullivan*, 375 U.S. 254, 269 (1964).

The right of the recipient to receive information and the special status of information on matters of public concern are intertwined: "[P]ublic debate must not only be unfettered; it must also be informed. For that reason the Court has repeatedly stated that First Amendment concerns encompass the *receipt* of information and ideas as well the right of free expression." *Board of Educ. v. Pico*, 457 U.S. 853, 867 n.20 (1982) (emphasis added); *accord First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 782 n.18 (1978); *see also Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 767 (1985) (White, J., concurring ("In a country like ours, where the people purport to be able to govern themselves through their elected representatives, adquate information about their government is of transcendent importance."). Abuse of power, unlawful activity, misconduct, or gross mismanagement by government are chief among issues that demand a well-informed public so that the citizenry can compel the government to correct its abuses and hold public officials accountable. To that end, the Supreme Court has emphasized that the disclosure of "information relating to alleged government misconduct . . . has traditionally been recognized as lying at the core of the First Amendment." *Butterworth v. Smith*, 494 U.S. 624, 632 (1990).

**2.** The impairment component of the Ninth Circuit's "interest" test is satisfied here as well. The Ninth Circuit has stated that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Southwest Ctr.*, 268 F.3d at 822 (quoting Fed. R. Civ. P. 24 advisory committee note). Proposed Intervenors' First Amendment rights to access the important information on the wikileaks web site have already been affected, "in a practical sense," by the permanent injunction.

Because domain names are protected by the First Amendment, the permanent injunction rendering the Wikileaks domain name inoperable is a classic prior restraint, "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Indeed, the permanent injunction has a far greater impact on Proposed Intervenors than it does on Dynadot (whose own speech has not been restricted in the slightest). Because this

prior restraint prevents all use of the Wikileaks.org domain name, not just use by Dynadot, it has prevented both Proposed Intervenors and the public from using that domain name to access all of the documents and other materials available thereby. Indeed, unless the permanent injunction interfered with the ability of members of the public to access the site, Plaintiffs would not have sought such relief. However, the First Amendment does not permit the issuance of injunctive relief that hinders access to documents and other information that is not even arguably Plaintiffs' property. *See Tory v. Cochran*, 544 U.S. 734, 736 (2005) (citing *Carroll v. President and Comm'rs of Princess Anne*, 393 U.S. 175, 183-84 (1968), for the proposition that an "order" issued in "the area of First Amendment rights" must be "precis[e]" and narrowly "tailored" to achieve the "pin-pointed objective" of the "needs of the case"). The permanent injunction has therefore injured Proposed Intervenors' First Amendment rights to access these documents and information.

### C. The Existing Parties Are Not Adequately Representing the Proposed Intervenors' Interests.

In determining whether a proposed intervenor's interests will be adequately represented, courts consider: (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceedings that other parties would neglect. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). The burden to make this showing is "minimal, and would be satisfied if [a proposed intervenor] could demonstrate that representation of [its] interests 'may' be inadequate." *Id.* In this case, Public Citizen and CFAC's interests obviously have not been protected by the current parties to this action. Defendants Wikileaks and Wikileaks.org have yet to appear in this case, and so cannot represent Proposed Intervenors' interests. Defendant Dynadot consented to the permanent injunction against it, and is thus obviously adverse to Proposed Intervenors. Finally, only Proposed Intervenors Public Citizen and CFAC have made arguments concerning the foundational question of whether this Court has jurisdiction to hear this case in the first place, and whether California Business and Professions Code

§ 17200 applies to non-commercial speech. Given the important and wide-ranging interests at stake, this Court should grant this motion for that reason alone.

**II. In the Alternative, Public Citizen and the California First Amendment Coalition Should Be Granted Leave to Permissive Intervention Under Rule 24(b)(2).**

Even if Public Citizen CFAC were not entitled to intervene as a matter of right, the Court should nevertheless grant their request for intervention under Rule 24(b). Rule 24(b) provides that, upon timely application, "anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b).

Ninth Circuit case law sets out three conditions for permissive intervention under Rule 24(b): (1) the applicant has its own independent ground for subject matter jurisdiction; (2) the application is timely; and (3) the applicant's claim or defense and the main action have a question of law or a question of fact in common. *City of Los Angeles*, 288 F.3d at 403. Courts should also consider practical considerations in determining whether to exercise discretion to allow permissive intervention, including whether the intervenor's interests are adequately represented by other parties, whether intervention would cause delay or prejudice, and judicial economy. *Venegas v. Skaggs*, 867 F.2d 527, 530-31 (9th Cir. 1989), *aff'd*, 495 U.S. 82 (1990).

First, although permissive intervention ordinarily requires a showing of independent jurisdictional grounds, the Ninth Circuit has held that an independent jurisdictional basis is not required where, as here, the intervenors do not seek to litigate their own *claim* on the merits. *Beckman Industries, Inc. v., Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992); *see Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783-84 (1st Cir. 1988). That approach is particularly sensible in this case because Proposed Intervenors' primary purpose for intervening is to demonstrate to the Court that it lacks jurisdiction over the entire controversy.

Second, for the reasons already set out above, the motion is timely.

Third, as with the independent-jurisdictional-grounds prong, commonality between claims and defenses is not required where the proposed intervenor does not seek to raise a claim on the merits. Indeed, as in *Beckman* and *Public Citizen*, intervenors here seek to dissolve an order that the Court has already issued. In any event, Proposed Intervenors' challenge to the permanent injunction entered by the Court in this action easily satisfies the commonality test.

## III. In the Alternative, Proposed Intervenors Should Be Permitted to Appear as *Amici Curiae*.

Finally, even if the Court denies Public Citizen and CFAC's request for both intervention as of right and permissive intervention, it should nevertheless permit them to file their brief as amici curiae. *See, e.g., In Re Grand Jury Subpoenas*, 438 F.Supp.2d 1111, 1112 n.1 (N.D. Cal. 2006) (White, J.) (considering amicus brief filed by major media organizations). "The district court has broad discretion to appoint *amici curiae*." *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir.1982). "District courts frequently welcome amicus briefs from nonparties concerning legal issues that have potential ramifications beyond the parties directly involved or if the amicus has 'unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.'" *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 335 F.Supp.2d 1061, 1067 (N.D.Cal. 2005) (quoting *Cobell v. Norton*, 246 F.Supp.2d 59, 62 (D.D.C.2003)). Here, Public Citizen and CFAC are providing a unique perspective on the threshold question of whether this Court possesses jurisdiction over this action.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

Public Citizen and CFAC should be permitted to intervene as Defendants in this action for the purpose of seeking dissolution of the permanent injunction, denial of the request for a preliminary injunction, and dismissal for lack of subject matter jurisdiction.

Date: February 26, 2008

Respectfully submitted,

By: ***/s/ Karl Olson***

Karl Olson (SBN 104760)
ko@lrolaw.com
Levy, Ram & Olson LLP
639 Front Street, 4th Floor
San Francisco, CA 94111
Tel: 415-433-4949
Fax: 415-433-7311

Paul Alan Levy (DC Bar 946400)
plevy@citizen.org
Deepak Gupta (DC Bar 495451)
Public Citizen Litigation Group
1600 – 20th Street, N.W.
Washington, D.C. 20009
Tel: 202-588-1000

Peter Scheer (DC Bar 255950)
pscheer@cfac.org
California First Amendment Coalition
534 4th Street, #B
San Rafael, CA 94901
Tel: 415-460-5060

Attorneys for Public Citizen and California First Amendment Coalition