UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| BANK JULIUS BAER & CO., LTD, a Swiss entity; and JULIUS BAER BANK & TRUST CO. LTD., a Cayman Island entity, <br><br> Plaintiffs, <br><br> v. <br><br> WIKILEAKS, an entity of unknown form; WIKILEAKS.ORG, an entity of unknown form; DYNADOT, LLC, a California limited liability company; and DOES 1 through 10, inclusive, <br><br> Defendants. | No. CV-08-0824 JSW |

## DECLARATION OF PETER SCHEER

I, Peter Scheer, declare as follows:

1. I am the executive director of the California First Amendment Coalition (CFAC). This declaration is submitted in support of the motion by CFAC and Public Citizen, Inc. to intervene (or, in the alternative, to participate as *amici curiae*) in this case.

2. I am a lawyer and journalist and have been executive director of CFAC since 2004. I was previously the editor and publisher of *The Recorder*, a daily legal newspaper in San Francisco, and publisher of *Legal Times*, a Washington, DC-based weekly on law and lobbying. I practiced law in Washington, DC, both in the U.S. Justice Department and in private practice, was a partner in the Washington, DC firm of Onek, Klein & Farr, and was general counsel to the National Security Archive. In 2006, I was awarded the Eugene S. Pulliam First Amendment Award by the Society of Professional Journalists. My articles on First Amendment and other issues have appeared in numerous publications, both print

and online, including the *Sacramento Bee*, *Slate.com*, the *San Jose Mercury News*, *Salon.com*, the *Orange County Register*, the *San Francisco Chronicle*, the *San Diego Union-Tribune*, the *Los Angeles Daily Journal*, *The Recorder*, and *American Lawyer* magazine. I received my J.D. in 1978 from Harvard Law School, where I was a member of the *Harvard Law Review*.

3. CFAC is a nonprofit public interest organization dedicated to advancing free speech and open-government rights. CFAC was founded and incorporated in 1988. Its offices are located at 534 Fourth Street, Suite B, San Rafael, CA 94901. Its web address is www.cfac.org.

4. CFAC is a membership organization. Its members are individuals, professional associations, and corporations. Among CFAC's corporate members are many California news media, including most of the large daily papers. These include the *Los Angeles Times*, the *San Francisco Chronicle*, the *San Jose Mercury News*, the *San Diego Union-Tribune*, the *Orange County Register*, the *Sacramento Bee*, the *Press-Enterprise*, the *Oakland Tribune* and the *Fresno Bee*. Nonprint news media members include *Wired.com*.

5. CFAC's mission includes advocacy for the First Amendment rights of the public and its members, including news organizations. Its activities on behalf of the public and its members include selected litigation (cases involving issues of censorship, rights of access to court and agency records, and access to legislative proceedings of state and local governments), education (providing free legal information on First Amendment and freedom-of-information issues), and public advocacy (through Op-Eds and other articles, published both in print and online, and public speaking).

6.   CFAC and many of its members believe that defendant Wikileaks is a valuable tool for journalists. In the past year anonymous contributors to Wikileaks have posted documents to the website that have become the basis for major news stories. These include news stories on treatment of terrorist suspects held at Guantanamo (first published by *Wired.com*, a CFAC member), the US military's rules of engagement in Iraq (the *New York Times*), and official corruption in Kenya (*BBC News*), among others. Indeed, CFAC member *Wired.com* has published at least six stories (excluding coverage of this lawsuit) about wikileaks.org.

7.   For Journalists who report on national security, technology, foreign affairs and international human rights issues, Wikileaks is useful both for the records posted there and for published discussions about those records from members of the informal Wikileaks community. These discussions, among other things, can help journalists to assess the authenticity and significance of documents on Wikileaks. Wikileaks is also important to journalists (of all types: traditional media, "new" media, and bloggers) as an alternative model for the distribution of information—one that potentially could be adapted for use locally and regionally as well as for international news.

8.   CFAC and its members are also interested in Wikileaks, and its continued availability, as a means for dissidents in China to disclose evidence of human rights violations and official corruption--and to do so with some degree of confidence that they will not be identified by Chinese authorities. CFAC has initiated a proceeding before the US Trade Representative that seeks to have the World Trade Organization order an end to China's extensive censorship of the internet. CFAC's position, which we hope to persuade the USTR to adopt in a complaint to the WTO, is that China's censorship of the internet violates its

obligations under treaties to which it became subject when it joined WTO.

9. CFAC seeks to intervene in this litigation to protect its own significant interests, as well as the significant interests of its members, prospective members, and the public generally, as guaranteed by the First Amendment, to access the information disclosed on Wikileaks. As noted above, those interests are particularly compelling for CFAC's journalist and corporate news-organization members, whose ability to report on important matters in the public interest often depends upon the willingness and ability of those with access to documents concerning governmental and corporate misconduct to come forward despite fear of retribution.

10. This Court's permanent injunction of February 15, 2008, which ordered the Wikileaks.org site shut down, seriously impairs the ability of CFAC and its members to access the information that would otherwise be available on Wikileaks.org. Thus, the disposition of this case has already had, and may continue to have, the effect of impeding the ability of CFAC, its members, and the public to protect their significant First Amendment interests in the material posted on Wikileaks.

11. CFAC is concerned that its First Amendment interests, and the First Amendment interests of its members (including member news media and their audiences) will not be adequately represented in this Court absent CFAC's intervention because Wikileaks has not appeared in this action to defend itself. Moreover, even if Wikileaks does appear, there is no reason to believe that Wikileaks would be able to adequately represent the interests of CFAC or its members.

Executed at San Rafael, California, this 25th day of February, 2008.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_/s/ Peter Scheer_
Peter Scheer