Karl Olson (SBN 104760)
ko@lrolaw.com
Levy, Ram & Olson
639 Front Street, Fourth Floor
San Francisco, California 94111
(415) 433-4949

Paul Alan Levy (DC Bar 946400) (pro hac vice motion being filed)
plevy@citizen.org
Deepak Gupta (DC Bar 495451)
Public Citizen Litigation Group
1600 - 20th Street, N.W.
Washington, D.C. 20009
(202) 588-1000

Peter Scheer (DC Bar 255950)
pscheer@cfac.org
California First Amendment Coalition
534 - 4th Street, #B
San Rafael, California 94901
(415) 460-5060

Attorneys for Public Citizen and California First Amendment Coalition

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| BANK JULIUS BAER & CO. LTD, A Swiss entity; and JULIUS BEAR BANK AND TRUST CO, a Cayman Islands entity, <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br>WIKILEAKS, an entity of unknown form, WIKILEAKS.ORG, an entity of unknown form, DYNADOT, LLC a California limited liability company, and DOES 1 through 10 inclusive, <br><br>　　　　Defendants. | No. CV08-0824 JSW <br><br>**BRIEF OF INTERVENORS / AMICI CURIAE PUBLIC CITIZEN AND CALIFORNIA FIRST AMENDMENT COALITION IN OPPOSITION TO INJUNCTIVE RELIEF AND IN SUPPORT OF DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION** <br><br>DATE:　February 29, 2008 <br>TIME:　9:00 a.m. <br>PLACE:　Courtroom 2 |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

I. INTRODUCTION AND STATEMENT OF ISSUES ............................. 1

II. FACTS AND PROCEDURAL HISTORY ........................................ 1

    A. Facts ................................................................................ 1

    B. Proceedings to Date. ........................................................... 2

ARGUMENT ............................................................................... 3

III. THE PERMANENT INJUNCTION SHOULD BE LIFTED, THE PRELIMINARY INJUNCTION SHOULD BE DENIED, AND THE ACTION SHOULD BE DISMISSED, BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION. ................................................................. 3

IV. THE PERMANENT INJUNCTION SHOULD BE LIFTED, AND THE PRELIMINARY INJUNCTION SHOULD BE DENIED, BECAUSE PLAINTIFFS HAVE NOT SHOWN ANY LIKELIHOOD OF SUCCESS ON THE MERITS, AND CERTAINLY NOT A SUFFICIENT LIKELIHOOD TO JUSTIFY A PRIOR RESTRAINT. ........................................................................ 7

V. THE PERMANENT INJUNCTION, PROPOSED TRO AND PRELIMINARY INJUNCTION ARE UNCONSTITUTIONAL PRIOR RESTRAINTS THAT ARE JUSTIFIED NEITHER BY THE LAW NOR BY THE EVIDENCE, ARE OVERBROAD, AND ARE NOT SUPPORTED BY ADEQUATE FINDINGS AND CONSIDERATION OF NARROWER ALTERNATIVES. ........................ 10

CONCLUSION ........................................................................... 13

# TABLE OF AUTHORITIES

**CASES**

*Auburn Police Union v. Carpenter*,
    8 F.3d 886 (1st Cir. 1993) .................................................... 10

*Bank of United States v. Deveaux*,
    5 Cranch (9 U.S.) 561 (1809) ................................................. 4

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) ................................................ 7

*Bird v. Parsons*,
    289 F.3d 865 (6th Cir. 2002) ................................................. 6

*Carafano v. Metrosplash.com*,
    339 F.3d 1119 (9th Cir. 2003) ................................................ 7

*Carden v. Arkoma Assoc.*,
    494 U.S. 185 (1990) ....................................................... 4, 5

*Carroll v. Commissioners of Princess Anne*,
    393 U.S. 175 (1968) ...................................................... 10, 12

*Cheng v. Boeing Co.*,
    708 F.2d 1406 (9th Cir. 1983) ................................................ 5

*Fair Housing Council of San Fernando Valley v. Roommates.com*,
    506 F.3d 716 (9th Cir. 2007) ................................................. 7

*Gardner v. UICI*,
    508 F.3d 559 (9th Cir. 2007) ................................................. 6

*Gibbs v. Buck*,
    307 U.S. 66 (1939) ........................................................... 4

*Grupo Dataflux v. Atlas Global Group*,
    541 U.S. 567 (2004) .......................................................... 5

*Hewlett v. Squaw Valley Ski Corp.*,
    54 Cal. App.4th 499, 519, 63 Cal. Rptr.2d 118 (3d Dist.1997) ................. 8

*Isuzu Motors Ltd. v. Consumers Union of U.S.*,
    12 F. Supp. 2d 1035 (C.D. Cal. 1998) ...................................... 8, 9

*Jackson v. Twentyman*,
    2 Peters (27 U.S.) 136 (1829) 5

*Johnson v. Columbia Properties Anchorage*,
    437 F.3d 894 (9th Cir. 2000) ................................................. 5

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939, 119 Cal. Rptr. 2d 296, 45 P.3d 243 (2002) ................... 8

*Keimer v. Buena Vista Books*,
   75 Cal. App. 4th 1220, 89 Cal. Rptr. 2d 781 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Lockheed Martin Corp. v. Network Solutions*,
   194 F.3d 980 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Louisville C & C R Co. v. Letson*,
   2 How (43 U.S.) 497, 11 L. Ed. 353 (1844) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Nissan Motor Co. v. Nissan Computer Corp.*,
   378 F.3d 1002 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*O'Connor v. Superior Court*,
   177 Cal. App. 3d 1013, 223 Cal. Rptr. 357 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Organization for a Better Austin v. Keefe*,
   402 U.S. 415 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*People's Bank v. Calhoun*,
   12 Otto (102 U.S.) 256 (1880) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Procter & Gamble Co. v. Bankers Trust Co.*,
   78 F.3d 219 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Rezec v. Sony Pictures Entertainment*,
   116 Cal. App. 4th 135, 10 Cal.Rptr.3d 333 (Cal.App. 2 Dist. 2004) . . . . . . . . . . . . . . . . 8

*Sessions v. Chrysler Corp.*,
   517 F.2d 759 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Steelworkers v. R.H. Bouligny*,
   382 U.S. 145 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Strawbridge v. Curtiss*,
   3 Cranch (7 U.S.) 267 (1806) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Thomson v. Gaskill*,
   315 U.S. 442 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**CONSTITUTION, STATUTES AND RULES**

United States Constitution

    First Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 10, 11

28 U.S.C. §1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1332(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1332(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1 | 28 U.S.C. § 1332(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

2 | 28 U.S.C. § 1603(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

3 | Communications Decency Act,
       47 U.S.C.. § 230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Freedom of Information Act,
       5 U.S.C. § 552 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

California Bus. & Prof. Code
       Section 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 9

Federal Rules of Civil Procedure
       Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**MISCELLANEOUS**

Wright, Miller & Cooper, Federal Prac. & Proc. (2d ed 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

## I. INTRODUCTION AND STATEMENT OF ISSUES

The California First Amendment Coalition and Public Citizen, as intervenors and/or amici curiae, urge this Court to dismiss this matter for lack of subject matter jurisdiction for the reasons stated below. If the case is not dismissed, the permanent injunction should be dissolved, and the temporary restraining order should be allowed to expire. Plaintiffs have demonstrated neither that this court has subject matter jurisdiction, nor that their claims justify injunctive relief or the issuance of a prior restraint.

## II. FACTS AND PROCEDURAL HISTORY

### A. Facts

Defendant Wikileaks is a loose association of "transparency activists," having been "founded by Chinese dissidents, journalists, mathematicians and startup company technologists, from the US, Taiwan, Europe, Australia and South Africa." http://88.80.13.160/wiki/Wikileaks:About, attached Lincoln Decl., Exhibit A, at 14. It makes available the facilities for government and corporate whistleblowers to "leak" documents that show wrongdoing and the need for reform. Its mission is based on the proposition that "transparency in government activities leads to reduced corruption, better government and stronger democracies," *id.* at 2, although it also seeks to uncover corporate fraud to "civilize corporations by exposing uncivil plans and behavior." *Id.* at 7-8. Wikileaks operates by enabling anyone who possesses documents that the person believes merits public attention to post them, and then enabling members of the Wikileaks community to evaluate and comment on the authenticity and significance of the documents, as well as commenting on the comments. *Id.*

The plaintiffs in this case are a pair of banking companies – according to the complaint, the parent, Bank Julius Baer ("BJB"), is a Swiss "entity," while Julius Baer Bank and Trust ("JBBT"), one of BJB's subsidiaries, is a Cayman Islands "entity." Complaint ¶¶ 5, 6. Plaintiffs have filed this case alleging that a former BJB employee, Rudolph Elmer, who is apparently a Swiss citizen who worked in Cayman Islands for the Banks, has used Wikileaks to publish a variety of documents, many of them authentic copies of documents belonging to plaintiffs but, allegedly, improperly removed by Elmer at the end of his employment, that are embarrassing to the plaintiffs and harmful to the privacy

1  interests of plaintiffs' customers.  *Id.*  ¶¶ 13-27.  Statements published on defendant Wikileaks' web
2  sites assert that the documents "purportedly show[] offshore tax evasion and money laundering by
3  extremely wealthy and in some cases, politically sensitive, clients from the US, Europe, China and
4  Peru." http://88.80.13.160/wiki/Bank_Julius_Baer_vs._Wikileaks. *See also* http://88.80.13.160/wiki/
5  Bank_Julius_Baer (citing probe by German tax authorities into "possible tax evasion" by individual
6  clients of plaintiffs).  Perhaps for this reason, although plaintiffs have identified the set of documents
7  published on Wikileaks as "the JB Property" throughout their complaint and their moving papers,
8  plaintiffs have been careful to assert that not every item in this collection of documents is a genuine
9  copy of an authentic document taken from them.  To the contrary, plaintiffs consistently assert that
10 some unspecified fraction of the published documents are "semi-altered, semi-fraudulent, or forged."
11 Complaint ¶ 27.

### B.  Proceedings to Date

13 On February 6, 2008, plaintiffs sued Wikileaks for allowing the documents to be published,
14 alleging that jurisdiction is proper in this Court because Wikileaks is a "fictitious business name, alias
15 or entity of unknown type and origin, with its principal place of business in the State of California."
16 *Id.* ¶¶ 7, 8.  No claims are asserted under federal law; hence, subject matter jurisdiction is predicated
17 on diversity of citizenship.  The complaint alleges that the publication of the documents is an "unfair
18 and unlawful business practice" under California Business and Professions Code § 17200, as well as
19 being tortious interference with plaintiffs' contract with Elmer, interference with prospective business
20 advantage (because it will harm their banking activities), and conversion of their business property.

21 In addition to suing Wikileaks, defendants have named as defendants ten John Does who
22 participated in the allegedly wrongful posting of the documents, as well as Dynadot, a California
23 corporation that is the domain name registrar through which Wikileaks registered one of its several
24 domain names, wikileaks.org.  The complaint never explains, however, why plaintiffs have a cause
25 of action against Dynadot specifically; it simply alleges claims against defendants generally.
26 Moreover, although Elmer (whose citizenship is never alleged) is known to have been involved with
27 the documents, and may well be responsible for the postings, no claims are alleged against Elmer.

Plaintiffs moved for a temporary restraining order ("TRO") and preliminary injunction against the posting of the so-called "JB Property." Plaintiffs did not, however, submit for the Court's inspection the entire set of documents whose posting they sought to enjoin. Instead, they submitted a **list** of all the folders in which the documents were contained, as well as presenting (eventually under seal) a "sample" of the documents at issue that plaintiffs' counsel claimed were "representative" of the entire set. Counsel did not explain what sampling method they had employed to assure such representative status. Plaintiffs also submitted a proposed TRO, which the Court entered without alteration (except for crossing out the word "proposed" in the caption). The TRO recited in passing that the Court "found that good cause exists therefor" and that plaintiffs "hav[e] shown that immediate harm will result to Plaintiffs in the absence of immediate relief."

Plaintiffs also obtained the agreement of defendant Dynadot that it could be dismissed from the action upon the Court's adoption of a "permanent injunction" compelling Dynadot both to freeze the domain name "wikileaks.org" (so that Wikileaks could not move it to some other registrar), and to disable the domain name and "prevent the domain name from resolving to the wikileaks.org website of any other website or server other than a blank park page." Like the TRO, this injunction was signed in the form submitted by plaintiffs, with only the word "proposed" stricken; this injunction did not recite that good cause existed to enter it, and provided no other justification for the order other than "finding that immediate harm will result to Plaintiffs in the absence of injunctive relief." There were no findings to establish jurisdiction, no finding of likelihood of success on the merits, and no evident consideration of whether the wrong was co-extensive with the remedy or whether any narrower relief could serve plaintiffs' interests.

## ARGUMENT

### III. THE PERMANENT INJUNCTION SHOULD BE LIFTED, THE PRELIMINARY INJUNCTION SHOULD BE DENIED, AND THE ACTION SHOULD BE DISMISSED, BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION.

The first reason why the Court should not have granted any injunctive relief in this case, and why no further relief should be granted (either by extending the TRO or converting it into a preliminary injunction) is that the Court lacks jurisdiction of the subject matter. At bottom, this is a

-3-

dispute between a Swiss bank and a Swiss citizen who is using an entity with foreign citizenship, Wikileaks, to post documents online. Federal courts are not available for the litigation of such cases.

Because no federal claims are pleaded, subject matter jurisdiction rests on a plea of diversity jurisdiction. Once a challenge has been raised, plaintiff has the burden of showing the existence of subject matter jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Gibbs v. Buck*, 307 U.S. 66, 72 (1939). 28 USC § 1332 provides as follows:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
>   (1) citizens of different States;
>   (2) citizens of a State and citizens or subjects of a foreign state;
>   (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
>   (4) a foreign state, defined in section 1603 (a) of this title, as plaintiff and citizens of a State or of different States.

A significant corollary principle, which does not appear in the text of the statute but has been the law for more than two centuries, is that diversity must be complete – there cannot be **any** persons of like citizenship on both sides of the case, *Strawbridge v. Curtiss*, 3 Cranch (7 U.S.) 267 (1806). "[W]here more than one plaintiff sues more than one defendant and the jurisdiction rests on diversity of citizenship, each plaintiff must be capable of suing each defendant." 13B Wright, Miller & Cooper, *Federal Prac. & Proc.* § 3605, at 399-400 (2d ed 1984). Plaintiff cannot possibly satisfy the requirements of diversity jurisdiction in this case.

In this case, the complaint concedes that both of the plaintiffs are foreign citizens – BJB is alleged to be a Swiss "entity", and JBBT is alleged to be a Cayman Islands "entity."[1/] Defendants Wikileaks and Wikileaks.org are each alleged in the complaint to be a "fictitious business name, alias or entity of unknown type and origin, with its principal place of business in the State of California." *Id.* ¶¶ 7, 8. Although plaintiffs may have assumed that this allegation was sufficient to support diversity jurisdiction, that assumption was incorrect, because a corporation is the **only** form of

---

[1/] The complaint does not specify that plaintiffs are corporations, which would mean that they are only citizens of Switzerland and Cayman Islands. If these entities take some other form, they could well be citizens of other foreign states as well, and perhaps even citizens of one or more States. Given the other flaws in diversity jurisdiction, the Court need not consider whether they have some other form.

-4-

fictional entity whose citizenship can be determined without "look[ing] to the character of the individuals who compose [it]." *Carden v. Arkoma Associates*, 494 U.S. 185, 188 (1990), citing *Bank of United States v. Deveaux*, 5 Cranch 61, 86, 91-92, 3 L.Ed. 38 (1809), and *Louisville, C. & C.R. Co. v. Letson*, 2 How. 497, 558, 11 L.Ed. 353 (1844). In *Carden*, the Supreme Court went on to emphasize, "While the rule regarding the treatment of corporations as 'citizens' has become firmly established, we have (with [one] exception) just as firmly resisted extending that treatment to other entities." 494 U.S. at 189. *Accord*, *Grupo Dataflux v. Atlas Global Group,* 541 U.S. 567 (2004) (limited partnership takes the foreign citizenship of any foreign partners). For example, in *Steelworkers v. R.H. Bouligny*, 382 U.S. 145 (1965), the Supreme Court confirmed that an unincorporated association's citizenship is that of each of its members. As recently as 2006, the Ninth Circuit upheld the same approach for limited liability companies. *Johnson v. Columbia Properties Anchorage,* 437 F.3d 894 (9th Cir. 2006). Thus, only if plaintiffs can show that Wikileaks is a corporation, and then only if it can show that Wikileaks' citizenship is not foreign, can it preserve subject matter jurisdiction in this case.

Although the complaint's failure to specify the form of Wikileaks' organization should be sufficient to warrant dismissal for lack of jurisdiction, because of the rule that "the essential elements of diversity jurisdiction must be alleged in the pleadings," 13B Wright, Miller & Cooper, *Federal Prac. & Proc.* § 3602, at 372 (2d ed 1984), the evidence of record affirmatively shows that Wikileaks is **not** diverse from the plaintiffs. The "about" page on the Wikileaks web site, which is accessible online at http://88.80.13.160/wiki/Wikileaks:About, and also is attached as Exhibit A, shows that "Wikileaks was founded by Chinese dissidents, journalists, mathematicians and startup company technologists, from the US, Taiwan, Europe, Australia and South Africa." It is apparent from this web site that to the extent that Wikileaks has any entity existence at all, it is an unincorporated association composed largely of citizens of foreign states. And yet the law is clear that diversity jurisdiction

"does not encompass foreign plaintiffs suing foreign defendants." *Cheng v. Boeing Co.*, 708 F.2d 1406, 1412 (9th Cir. 1983). *See also Jackson v. Twentyman*, 2 Peters (27 U.S.) 136 (1829).[2/]

Diversity would be lacking even if this proved to be a case of citizens of one foreign state suing citizens of a **different** foreign state. Citizens of different domestic **States** may sue under section 1332(a)(1), but this clause does not authorize suits by citizens of different foreign states; such suits may only be brought (under section 1332(a)(2)) between citizens of a (domestic) State and citizens of a foreign state. In the *Boeing* case, for example, there were actually two cases at issue – the *Cheng* case, brought by citizens of several countries against an American company and a Taiwan company, and the *Harada* case, brought exclusively by Japanese citizens against the same group of defendants. The lack of complete diversity was sufficient to preclude suit in federal court in the United States for either set of plaintiffs.[3/]

There is a provision of the diversity statute, section 1332(a)(3), that authorizes suits between citizens of different states if citizens of foreign states are "additional parties," but, for two reasons, that provision does not apply here even though plaintiffs also sued Dynadot, a corporation whose California citizenship we assume for current purposes. First, as noted above, diversity must be **complete**, and the presence of a single diverse party, especially a party whose involvement in the case is at best tangential, does not serve to cure the lack of complete diversity. But equally or more important is the fact that the joinder of Dynadot is fraudulent in every sense of the word, and the citizenship of parties fraudulently joined is disregarded for diversity purposes. *Gardner v. UICI*, 508

---

[2/] Although plaintiffs may object that they should not be required to accept the veracity of this web page, it is the best available evidence of the character and nature of Wikileaks, and plaintiffs themselves have cited pages from the Wikileaks web site that plaintiffs have deemed advantageous to their cause. And, in any event, it is **plaintiffs** who bear the burden of establishing the Court's subject matter jurisdiction, and, until they do so, the Court should not exercise its injunctive power on their behalf.

[3/] Indeed, given the compelling argument advanced by the media amici that Wikileaks, like Dynadot, is an interactive computer service provider and hence immune from suit under section 230, at bottom this suit should properly be viewed as a dispute between a Swiss and Cayman bank against a Swiss citizen, Elmer, who worked in Cayman for many years, and who is using Wilileaks to post documents in violation of his employment agreement. On this analysis, there is not even diversity of foreign citizenship, although as argued in the text, such diversity would not be sufficient to provide diversity jurisdiction..

F.3d 559, 561 (9th Cir. 2007). The complaint does not plead any cause of action specifically against Dynadot, apart from the assumption that it was somehow a party to Wikileaks' wrongdoing; at best, Dynadot was joined only for the purpose of securing complete relief against Wikileaks, and in any event Ninth Circuit law establishes that a domain name registrar cannot be sued over allegedly wrongful uses of domain names. *Lockheed Martin Corp. v. Network Solutions*, 194 F.3d 980 (9th Cir. 1999); *accord Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002). Moreover, as more fully argued by the media amici, Dynadot's domain name registration services make it an "interactive computer service," which the Communications Decency Act, 47 U.S.C. § 230, immunizes from liability for wrongs allegedly committed by its users. *Carafano v. Metrosplash.com*, 339 F.3d 1119, 1122 (9th Cir. 2003); *Batzel v. Smith*, 333 F.3d 1018, 1026-27 (9th Cir. 2003).[4/] Moreover, lack of subject matter jurisdiction cannot be "cured" by the consent of the parties, *People's Bank v. Calhoun*, 12 Otto (102 U.S.) 256, 260-261 (1880), and this Court has a duty to determine on its own motion whether diversity jurisdiction exists, not withstanding the Dynadot's failure to raise the issue itself. *Sessions v. Chrysler Corp.*, 517 F.2d 759, 761 (9th Cir. 1975). Accordingly, the "permanent injunction" against Dynadot should be dissolved for lack of subject matter jurisdiction, and the entire case should be dismissed for the same reason.

**IV.  THE PERMANENT INJUNCTION SHOULD BE LIFTED, AND THE PRELIMINARY INJUNCTION SHOULD BE DENIED, BECAUSE PLAINTIFFS HAVE NOT SHOWN ANY LIKELIHOOD OF SUCCESS ON THE MERITS, AND CERTAINLY NOT A SUFFICIENT LIKELIHOOD TO JUSTIFY A PRIOR RESTRAINT.**

The second reason why plaintiffs were not entitled to the permanent injunction, and why the TRO should be neither extended nor converted into a preliminary injunction, is that plaintiffs have failed to demonstrate any likelihood of success on the merits. The media amici have shown that the various "miscellaneous" causes of action pleaded in the Complaint cannot succeed on their own merits, and why plaintiffs have not overcome the First Amendment free speech rights of Wikileaks

---

[4/]  Although the Ninth Circuit recently granted en banc review to decide whether a limitation imposed on Section 230 immunity was valid, *Fair Housing Council of San Fernando Valley v. Roommates.com*, 506 F.3d 716 (9th Cir. 2007), granting review of 489 F.3d 921, neither the limitation at issue in *Roommates*, nor the questions on which en banc review was granted, weaken the precedential force of *Carafano* or *Batzel* for the purposes of this case.

and its members, not to speak of the First Amendment rights of Public Citizen, the California First Amendment Coalition, and their members, to read the Wikileaks web site.[5/] Similarly, we agree with the media amici that both Dynadot and Wikileaks are section 230 "interactive computer services" that cannot be held liable for alleged wrongs committed by persons who post leaked documents on the Wikileaks web site, and are immune from suit over such postings. We embrace and endorse all of those arguments, and do not repeat them here.

There is an additional reason why plaintiffs' claim under section 17200 of the California Business and Professions Code cannot succeed. As the court said in *Rezec v. Sony Pictures Entertainment*, 116 Cal.App.4th 135, 10 Cal.Rptr.3d 333, (Cal.App. 2 Dist. 2004):

> California's consumer protection laws, like the unfair competition law, **govern only commercial speech**. (See Kasky v. Nike, Inc., supra, 27 Cal.4th at pp. 953-956, 962, 969-970, 119 Cal. Rptr.2d 296, 45 P.3d 243; Keimer v. Buena Vista Books, Inc. (1999) 75 Cal. App.4th 1220, 1230-1231, 89 Cal. Rptr.2d 781; O'Connor v. Superior Court (1986) 177 Cal.App.3d 1013, 1018-1020, 223 Cal. Rptr. 357.) **Noncommercial speech is beyond their reach**. ( Ibid.)

116 Cal.App.4th at 140, 10 Cal.Rptr.3d at 337 (emphasis added).

Indeed, in the *O'Connor* case, the court said that section 17200 is constitutional **only** because it is subject to such limits. 177 Cal. App.3d at 1019, 223 Cal. Rptr. at 360. Similarly, the district court in *Isuzu Motors Ltd. v. Consumers Union of U.S.*, 12 F. Supp.2d 1035 (C.D. Cal. 1998) – one of the cases cited by **plaintiffs** – ruled that section 17200 "**only** applies to activities that 'can properly be called a business practice.' *Id.* at 1048 (quoting *Hewlett v. Squaw Valley Ski Corp.*, 54 Cal. App.4th 499, 519, 63 Cal. Rptr.2d 118 (3d Dist.1997).

Plaintiffs' brief in support of its motion for a TRO or preliminary injunction states in passing that "there is no requirement that the activity or conduct sought to be enjoined is commercial," Mem. at 12, but not a single one of the five cases in plaintiffs' string citation makes any such statement. Three of the five cases involve claims against standard commercial enterprises – a collection agency (Merchants Collection Association), a seed company (Stover Seed Co.), and a commercial distributor of pornography (EWAP, Inc.). A fourth case was brought against the publisher of a "Christian

---

[5/] Because we are intervening, and not simply filing as amici, we reserve the right to raise those arguments on appeal if need be.

Yellow Pages," which **sold** advertisements for the purpose of promoting Christian businesses. In holding that section 17200 applied, the court rested squarely on the commercial aspects of the enterprise. Accordingly, the defendants' non-profit status was not enough to allow them to escape the rubric of a "business establishment" under the Unruh Civil Rights Act or a "business practice" under section 17200. *Pines v. Tomson*, 160 Cal. App.3d 370, 386 and n.10, 206 Cal. Rptr. 866, 875-876 (2 Dist. 1984). Finally, plaintiffs rely on *Isuzu Motors, supra*, but their parenthetical description of that case – that defamatory statements by Consumers Union "are covered even though it is completely non-commercial", Mem. at 12 – is a misstatement. In fact, the opinion on which plaintiffs rely addressed only a motion to dismiss under Rule 12(b)(6), and the motion was denied **only** because the allegations were facially sufficient under the forgiving standard of that Rule. The Court noted that the plaintiffs would have to show that defendant had engaged in a business practice and "expressed doubt that the allegedly fraudulent publications underlying plaintiff's § 17200 claim constitute 'business acts or practices.'" 12 F. Supp.2d at 1048. However, emphasizing that the case was only "at the pleading stage," the court denied the motion to dismiss because the complaint in that case "sufficiently allege[d]" a business practice. *Id.*

Here, however, to obtain injunctive relief, plaintiffs cannot rest on the permissive standard for pleading; they must **prove** that the defendant was engaged in a business practice; they must do so in the face of California appellate precedent holding that noncommercial speech is beyond the purview of section 17200; and they must show the existence of an actionable business practice with sufficient certainty to overcome the heavy burden of justifying a prior restraint. Moreover, there is not only no **proof** that Wikileaks has any commercial character, but a review of the Wikileaks web site, including not only the pages attached to this brief as Exhibit A but also the various pages attached to plaintiffs' moving papers, show that Wikileaks is a strictly noncommercial site that exists to allow criticism of governments and corporations. And the Ninth Circuit has squarely held that even though criticism of corporations may harm their business, that impact does not make the speech commercial. *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1017-1018 (9th Cir. 2004). Finally, not only have plaintiffs presented no proof that Wikileaks is a commercial web site or engages in commercial

speech, but the Court made no findings to that effect, which alone vitiates both the permanent injunction and the TRO that were based on plaintiffs' claims of wrongdoing. Accordingly, the Court should dissolve the permanent injunction, and should allow the TRO to expire without either extending it or converting it into a preliminary injunction.

## V. THE PERMANENT INJUNCTION, PROPOSED TRO, AND PRELIMINARY INJUNCTION ARE UNCONSTITUTIONAL PRIOR RESTRAINTS THAT ARE JUSTIFIED NEITHER BY THE LAW NOR BY THE EVIDENCE, ARE OVERBROAD, AND ARE NOT SUPPORTED BY ADEQUATE FINDINGS AND CONSIDERATION OF NARROWER ALTERNATIVES.

When an injunction is entered based on a finding of likelihood of success in establishing illegal speech, instead of a final adjudication, it is a prior restraint subject to strict First Amendment scrutiny. *Auburn Police Union v. Carpenter*, 8 F3d 886, 903 (1st Cir. 1993). *See also Carroll v. Commissioners of Princess Anne*, 393 U.S. 175 (1968). The TRO is thus unquestionably a prior restraint. Although the Supreme Court has not yet decided whether a permanent injunction forbidding speech that has already been determined to have been unlawful is a prior restraint, for two reasons, that rationale would not be a sufficient basis to excuse the permanent injunction in this case from being treated as a prior restraint. First, the permanent injunction prevents speech (the posting of documents unrelated to plaintiffs) about which plaintiffs do not even claim any impropriety; second, even with respect to the so-called "JB Property," there has been no finding after trial that such posting is improper or unlawful. And, with respect to the TRO that plaintiffs now ask the Court to convert into a preliminary injunction, there has been no final determination that anything posted on the Wikileaks web site is, in fact, improper.

We agree with the media amici and with the Electronic Frontier Foundation and the American Civil Liberties Union ("EFF/ACLU") that the barrier against prior restraints is extremely high, and indeed that the Supreme Court has never upheld a classic prior restraint – a court order enjoining speech. There is an additional point: The Supreme Court has squarely refused to accept injury to business interests as a sufficient basis for a prior restraint. For example, that was the acknowledged **objective** of leaflets disseminated about a realtor in *Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971), but the Supreme Court nevertheless held that the injunction was an impermissible

-10-

prior restraint: "No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices in pamphlets or leaflets warrants the use of the injunctive power of a court." *Id.* at 419. Similarly, in *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219 (6th Cir. 1996), the Sixth Circuit invalidated as an abuse of discretion a preliminary injunction against the publication of Business Week magazine, and squarely rejected "private litigants' . . . commercial self-interest" as a basis for a prior restraint, thus overturning a preliminary injunction that had been issued in favor of a company whose private documents had been discussed in a news publication. *Id.* at 225. *Cf. NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) (advocacy of economic boycott of local merchants fully protected by First Amendment).

We agree as well with the media amici insofar as they argue that the Court's orders do not contain **any** findings of wrongdoing, or reflect any express consideration of whether alternative means or a narrower injunction might adequately protect the plaintiffs' legitimate interests while trenching on less protected speech.[6] Without repeating their citations, we do wish to call the Court's attention to some specific examples of that failing – the vastly overbroad definition of the term "JB Property." As defined by the plaintiffs, the category of documents whose posting plaintiffs asked the Court to enjoin, and which the Court did enjoin by its verbatim adoption of plaintiffs' proposed orders, includes many documents that are not actual copies of documents taken by Elmer from plaintiffs' files. According to plaintiffs, some unknown fraction of the total of 694 documents and folders displayed on Wikileaks are "semi-altered, semi-fraudulent, or forged." *E.g.*, Mem. Supporting TRO at 8-9, citing Hiestand Decl. ¶¶24-25 and Spiegel Decl. ¶9. Nothing in plaintiffs' briefs explains why plaintiffs believe that they have a valid cause of action to prevent the posting of such documents, and the Court's findings do not explain such a ruling. Nor have plaintiffs provided the Court with any evidence showing which documents fall into those three categories, and which are actually authentic copies of plaintiffs' own documents.

---

[6] Public Citizen and CFAC file separately for two reasons – (1) to bring the lack of subject matter jurisdiction to the Court's attention, and (2) to ensure that there is some party with standing to appeal the preliminary injunction if necessary. Although we understand that the ACLU and EFF will also seek to intervene, they take no position on the TRO, but address only the permanent injunction.

-11-

1  Moreover, plaintiffs have not furnished the Court with a complete set of the documents at
2  issue, but have only given the Court a list of the documents, along with what plaintiffs grandly
3  describe as a "representative sample" of the documents whose posting the Court has enjoined.
4  Although the sampling of a very large number of documents can be a legitimate way for a court to
5  conduct *in camera* review to determine, for example, what documents qualify for attorney-client
6  privilege in a discovery dispute, or what documents at issue in a Freedom of Information Act case
7  pose a genuine threat to national security, we question whether any sampling can allow a court to pass
8  judgment on whether to issue a prior restraint against the posting of specific documents that the Court
9  has not evaluated. And even if a sampling approach is to be permitted, there is no reason to put the
10 fox in charge of the henhouse by allowing plaintiffs' counsel, however sincere and well-intentioned,
11 to determine the method of sampling – indeed, in this case there is not only no description of the
12 sampling method, there is not any assurance that there **was** any sampling method. Consequently, the
13 Court is in no position to make findings that the posting of all of "JB Property" would violate
14 plaintiffs' rights, not to speak of weighing, for each document, the "subtle and controversial
15 distinctions" and making for each document the "delicate assessment," *Carroll v. President and*
16 *Commissioners of Princess Anne*, 393 U.S. 175, 183 (1968), that is required before finding that **all**
17 of the documents pose such a severe risk of immediate and serious harm as to warrant the issuance
18 of a prior restraint. Indeed, the Court lacks a foundation for making any such findings because only
19 a small sample of the documents has been provided to it, and plaintiffs have not indicated which if
20 any of the documents are authentic copies of its own property, and which purported causes of action
21 justify restraint against which documents.

22 For these reasons, as well as those ably argued by the media amici and the ACLU/EFF
23 intervenors, the TRO should be allowed to expire, and the permanent injunction should be dissolved.
24 / / /
25 / / /
26 / / /
27 / / /
28

-12-
MEMORANDUM OF INTERVENORS/AMICI CURIAE OPPOSING INJUNCTIONS AND SEEKING DISMISSAL, No. CV08-0824 JSW

## CONCLUSION

The case should be dismissed for lack of subject matter jurisdiction. The permanent injunction should be dissolved, and the temporary restraining order should be allowed to expire. No preliminary injunction should be issued.

Date: February 26, 2008

Respectfully submitted,

By: */s/ Karl Olson*
Karl Olson (SBN 104760)
ko@lrolaw.com
Levy, Ram & Olson LLP
639 Front Street, 4th Floor
San Francisco, CA  94111
Tel: 415-433-4949
Fax: 415-433-7311

Paul Alan Levy (DC Bar 946400)
plevy@citizen.org
Deepak Gupta (DC Bar 495451)
Public Citizen Litigation Group
1600 – 20th Street, N.W.
Washington, D.C.  20009
Tel: 202-588-1000

Peter Scheer (DC Bar 255950)
pscheer@cfac.org
California First Amendment Coalition
534 4th Street, #B
San Rafael, CA  94901
Tel: 415-460-5060

Attorneys for Public Citizen and California First Amendment Coalition