1  STEVEN L. MAYER (No. 62030)
   Email: smayer@howardrice.com
2  HOWARD RICE NEMEROVSKI CANADY
        FALK & RABKIN
3  A Professional Corporation
   Three Embarcadero Center, 7th Floor
4  San Francisco, California  94111-4024
   Telephone:    415/434-1600
5  Facsimile:    415/217-5910

6  ANN BRICK (No.65296)
   Email: abrick@aclunc.org
7  AMERICAN CIVIL LIBERTIES UNION
        FOUNDATION OF NORTHERN
8        CALIFORNIA, INC.
   39 Drumm Street
9  San Francisco, California  94111
   Telephone:    415/621-2493
10 Facsimile:    415/255-8437

11 ADEN J. FINE (No. 186728)                    MATTHEW J. ZIMMERMAN (No. 212423)
   Email: afine@aclu.org                        Email: mattz@eff.org
12 AMERICAN CIVIL LIBERTIES UNION               ELECTRONIC FRONTIER
        FOUNDATION                                   FOUNDATION
13 125 Broad Street—18th Floor                  454 Shotwell Street
   New York, New York 10004                     San Francisco, California  94110
14 Telephone:    212/549-2693                   Telephone:    415/436-9333
   Facsimile:    212/549-2651                   Facsimile:    415/436-9993
15
   Attorneys for Movants and Prospective Intervenors
16 PROJECT ON GOVERNMENT OVERSIGHT *et al.*

17 *Additional Counsel Listed On Signature Page*

18               UNITED STATES DISTRICT COURT

19              NORTHERN DISTRICT OF CALIFORNIA

20                 SAN FRANCISCO DIVISION

21 BANK JULIUS BAER & CO. LTD, a Swiss          No. CV-08-0824 JSW
   entity, *et al.*,
22                                              Action Filed: February 6, 2008
                   Plaintiffs,
23                                              MOTION TO INTERVENE AND
         v.                                     SUPPORTING MEMORANDUM OF
24                                              POINTS AND AUTHORITIES
   WIKILEAKS, an entity of unknown form, *et al.*,   [Fed R. Civ. P. 24(a), 24(b)]
25
                   Defendants.                  Date:     May 9, 2008
26                                              Time:     9:00 a.m.
                                                Place:    Courtroom 2
27                                              Judge:    Honorable Jeffrey S. White

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

# TABLE OF CONTENTS

|  | Page(s) |
|---|---|
| NOTICE OF MOTION AND MOTION | 1 |
| MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE | 1 |
| INTRODUCTION | 1 |
| SUMMARY OF ARGUMENT | 2 |
| BACKGROUND | 3 |
| ARGUMENT | 6 |
| I.    MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT UNDER RULE 24(a)(2). | 7 |
| A.    The Motion To Intervene Is Timely. | 7 |
| B.    Movants Have Substantial First Amendment Interests In Accessing The Wikileaks Website. | 7 |
| C.    The Disposition Of The Lawsuit Already Has Adversely Affected Movants' First Amendment Rights. | 10 |
| D.    The Existing Parties Have Not Adequately Represented Movants' Interests In This Litigation. | 12 |
| II.    ALTERNATIVELY, MOVANTS ARE ENTITLED TO INTERVENE PERMISSIVELY UNDER RULE 24(b)(2). | 13 |
| CONCLUSION | 15 |

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) .......................... 7, 12

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ...................................... 2

*Bd. of Educ. v. Pico*, 457 U.S. 853 (1982) ...................................... 8

*Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992) .......... 9

*Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005) .............. 9

*Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175 (1968) .... 10, 11

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980) ... 11

*Clement v. California Dep't of Corr.*, 364 F.3d 1148 (9th Cir. 2004) .......... 9

*County of Fresno v. Andrus*, 622 F.2d 436 (9th Cir. 1980) .................... 8

*Elrod v. Burns*, 427 U.S. 347 (1976) ........................................... 12

*Florida Star v. B.J.F.*, 491 U.S. 524 (1989) .................................... 2

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995) .. 8

*Kleindienst v. Mandel*, 408 U.S. 753 (1972) ................................. 2, 8

*Lamont v. Postmaster Gen.*, 381 U.S. 301 (1965) ............................. 8

*Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994) ................... 11

*Martin v. City of Struthers*, 319 U.S. 141 (1943) ............................. 8

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) ..................... 9

*Natural Res. Def. Council, Inc. v. Gutierrez*, No. C-07-04771, 2008 WL 360852
    (N.D. Cal. Feb. 6, 2008) ................................................. 14

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) ....................... 1, 10

*Oklahoma Publ'g Co. v. District Court*, 430 U.S. 308 (1977) .................. 2

*Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971) ...................... 10

*Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n*, 475 U.S. 1 (1986) .............. 1

*Red Lion Broad. Co. v. FCC*, 395 U.S. 367 (1969) ........................... 8

*Reno v. ACLU*, 521 U.S. 844 (1997) ........................................ 9, 11

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3    *Schneider v. New Jersey*, 308 U.S. 147 (1939)    11

4    *Sierra Club v. EPA*, 995 F.2d 1478 (9th Cir. 1993)    7, 8

5    *Smith v. Intercosmos Media Group, Inc.*, No. Civ. A. 02-1964, 2002 WL 31844907
6        (E.D. La. Dec. 17, 2002)    13

     *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975)    11
7
     *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914 (9th Cir. 2003)    14
8
     *Southwestern Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001)    7, 10
9
     *Stanley v. Georgia*, 394 U.S. 557 (1969)    8, 10
10
     *Taubman Co. v. Webfeats*, 319 F.3d 770 (6th Cir. 2003)    9
11
     *Tory v. Cochran*, 544 U.S. 734 (2005)    10
12
     *United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002)    14
13
     *United States v. Stringfellow*, 783 F.2d 821 (9th Cir. 1986), *vacated on other
14        grounds sub nom. Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370
         (1987)    7
15
     *Venegas v. Skaggs*, 867 F.2d 527 (9th Cir. 1989), *aff'd*, 495 U.S. 82 (1990)    14
16
     *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425
17        U.S. 748 (1976)    11

18

**Statutes**

19
20    28 U.S.C.
         §1331    14
         §1367(a)    13
21
     47 U.S.C. §230(c)(1)    13
22
     Fed. R. Civ. P.
23        24    1, 6
         24(a)    6, 7, 13, 15
24        24(a)(2)    7
         24(b)    6, 13, 15
25        24(b)(2)    13

26

**Other Authorities**

27
     Fed. R. Civ. P. 24 advisory committee's note    10
28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1

**TABLE OF AUTHORITIES**

2
                                                                          **Page(s)**

3   http://www.icann.org/transfers/policy-12jul04.htm                        12

4   http://www.pir.org/PDFs/ORG-RRA-3-April-2007-FINAL.pdf, Section 3.5       12

5   William W. Schwarzer et al., *California Practice Guide:  Federal Civil Procedure
      Before Trial* ¶7:261-262 (2004)                                         14

6

7

8

9

10

11

12

13 

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on Friday, May 9, 2008, at 9:00 a.m., or as soon thereafter as the matter may be heard by the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Movants Project on Government Oversight, American Civil Liberties Union, Inc., American Civil Liberties Union Foundation, Inc., Electronic Frontier Foundation and Jordan McCorkle ("Movants") will and hereby do move to intervene as Defendants and Cross-Complainants in the above-referenced action pursuant to Federal Rule of Civil Procedure 24 in order to assert the claims and defenses set forth in their proposed Answer and Cross-Complaint In Intervention, a copy of which has been filed concurrently with this Motion.

This motion seeks the following relief: an order permitting Movants to intervene as Defendants and Cross-Complainants in the above-referenced action and to file their proposed Answer and Cross-Complaint In Intervention, a copy of which has been filed concurrently with this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO INTERVENE**

**INTRODUCTION**

In addition to protecting the rights of those who engage in expression themselves, the First Amendment "protects the public's interest in receiving information." *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n*, 475 U.S. 1, 8 (1986) (plurality opinion). Moreover, "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Yet—without a word of opposition from any party to this action—the Court has entered a "permanent injunction" pursuant to stipulation that renders inoperable a domain name known as "wikileaks.org," even though most of the documents and other materials on the site accessed through that domain name (the "Wikileaks website") have nothing to do with the controversy between Plaintiffs and Defendants.

Movants are organizations and a member of the public who have accessed these documents on the Wikileaks site by using the wikileaks.org domain name and who intend to do so in the future.

1   They also want to continue to access such documents in the least burdensome manner possible.

2   They seek leave to intervene in this action so that they can move to vacate the permanent injunction,

3   which will in turn ensure that their First Amendment rights, and the rights of other members of the

4   public, to access the Wikileaks website are not injured by an overbroad prior restraint.[1]

5

6   **SUMMARY OF ARGUMENT**

7       Movants meet each of the requirements for intervention as of right contained in Rule 24(a).

8   *First*, this Motion is timely.  Plaintiffs Bank Julius Baer & Co., Ltd. and Julius Baer Bank & Trust

9   Co. Ltd. ("BJB") commenced this action on February 6, 2008, and the permanent injunction

10  rendering the "Wikileaks.org" domain name totally inoperable was entered less than two weeks ago.

11  Movants brought this Motion as soon as reasonably practicable under the circumstances.  *See* Part

12  I(A), *infra*.



13      *Second*, Movants have a clear interest in the subject of this action.  The First Amendment

14  encompasses the "'right to receive information and ideas.'"  *Kleindienst v. Mandel*, 408 U.S. 753,

15  762 (1972) (citation omitted).  The documents and materials posted on the Wikileaks website

16  concern matters of great public interest, including the U.S. Army's operations in Guantanamo Bay,

17  human rights abuses in China and political corruption in Kenya.  Movants have accessed documents

18  such as these through the wikileaks.org domain name before, and will do so again if they can.

19  Movants' interests in unfettered access to these materials through wikileaks.org is therefore

20  protected by the First Amendment.  *See* Part I(B), *infra*.

21      *Third*, the Court's disposition of this action has *already* impaired Movants' rights.  The Court

22  has entered a permanent injunction ordering Defendant Dynadot, LLC. ("Dynadot"), the domain

23  ─────────────────────

24  [1]Movants do not presently seek access to the documents and information that Plaintiffs claim
as their property and therefore do not address the significant First Amendment questions raised by

25  Plaintiffs' motion for a preliminary injunction.  We note, however, that Plaintiffs' request for a
preliminary injunction requiring that the documents be removed from the Wikileaks website raises

26  serious First Amendment concerns.  Plaintiffs' Complaint does not appear to allege that Wikileaks
played any role in the alleged theft of the documents at issue.  The situation here thus appears to be

27  analogous to that in *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001), *Florida Star v. B.J.F.*, 491 U.S.
524, 541 (1989), and *Oklahoma Publishing Co. v. District Court*, 430 U.S. 308 (1977), making it

28  unlikely that Plaintiffs are entitled to a preliminary injunction.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    name registrar for the "Wikileaks.org" domain name, to disable that domain name and to block it

2    from being registered by or transferred to any other registrar. In effect, the Court has ordered the

3    domain name "wikileaks.org" to be shut down and locked up permanently, thus interfering with

4    Movants' access to *all* the materials available through that domain name, including documents and

5    other information that are not even arguably subject to this lawsuit. *See* Part I(C), *infra*.

6        *Fourth*, Movants' interests have *not* been represented by the existing parties. Wikileaks and

7    Wikileaks.org have not yet appeared in this case. Dynadot stipulated to the permanent injunction

8    and in return received an order requiring Plaintiffs to dismiss it from the case. No party has

9    represented Movants, or other members of the public, who wish to access information that is not

10   subject to Plaintiffs' claim of ownership. *See* Part I(D), *infra*.

11       Alternatively, the Court should let Movants intervene under Rule 24(b). *See* Part II, *infra*.

12                                  **BACKGROUND**

13       Plaintiffs commenced this action on February 6, 2008, asserting six causes of action based

14   solely on the allegation that the Wikileaks website had improperly obtained and published certain

15   confidential documents belonging to BJB. Compl. (Docket No. 1) ¶¶1, 25-27.[2]

16       The principal Defendants named in the Complaint are "Wikileaks" and "Wikileaks.org,"

17   individuals or entities who are alleged to own and/or operate the "Wikileaks" website. *Id.* ¶¶7-8.

18   The Wikileaks site describes itself as an Internet website where participants can anonymously

19   disclose and comment on documents and other materials of public interest. *See* Proposed Answer

20   and Cross-Complaint in Intervention ("Cross-Complaint") ¶14. According to the site, its "primary

21   interest" "is in exposing oppressive regimes in Asia, the former Soviet bloc, Sub-Saharan Africa and

22   the Middle East, but we also expect to be of assistance to people of all regions who wish to reveal

23   unethical behavior in their governments and corporations." *Id.* ¶15.

24       The Wikileaks website utilizes technology designed to permit third parties to post electronic

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

26       [2]The Complaint asserts the following causes of action: (1) Unlawful and Unfair Business

27   Practices in Violation of California Business & Professions Code Section 17200; (2) Declaratory
     Relief; (3) Interference With Contract; (4) Interference With Prospective Economic Advantage; (5)

28   Conversion and (6) Injunctive Relief.

documents easily for public availability. Cross-Complaint ¶16. Information on the site states that it was founded "by Chinese dissidents, journalists, mathematicians and startup company technologists, from the US, Taiwan, Europe, Australia and South Africa." *Id.* ¶17. Among other things, material posted to the website includes the U.S. Army's operations manual for the Guantanamo Bay detention facility, documents concerning the United States' expenditures on its military efforts in Afghanistan and Iraq, and reports exposing alleged corruption by Kenyan political leaders. *Id.*

In addition to Defendants "Wikileaks" and "Wikileaks.org," Plaintiffs' Complaint also named Dynadot as a Defendant to the declaratory and injunctive relief causes of action. *See* Compl. 19, 25. Dynadot is one of several Internet domain name registrars that are accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN"), a non-profit corporation originally chartered by the U.S. Department of Commerce to oversee a number of Internet-related tasks, including the registration of domain names. The "wikileaks.org" domain name is registered—in essence, permitted to function—by Dynadot.[3]

At the same time or shortly after they filed their Complaint, Plaintiffs sought injunctive relief. The Memorandum they filed supporting their motion for a temporary restraining order and an order to show cause regarding the issuance of a preliminary injunction ("Memo") makes only passing reference to injunctive relief against Dynadot. Indeed, its sole reference to an order compelling Dynadot to shut down the wikileaks.org domain name is contained in a single four-line footnote. *See* Memo 21 n.3. That footnote did not discuss the probability of success of Plaintiffs' claims against Dynadot or the balance of hardships caused by granting the relief sought. Nor did the footnote discuss the impact of injunctive relief against Dynadot on third parties or the public interest. Indeed, neither the footnote nor the Memorandum as a whole mentioned the First Amendment. Finally, the injunctive relief sought by that footnote was only temporary—*i.e.*, an



HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

---

[3]At a very simplified level, an Internet website can be accessed through a web browser either by inputting an "IP address"—a unique numerical address in a specified format (such as 88.80.13.160) that is associated with the computer that hosts the website—or by inputting a website's domain name (such as wikileaks.org), which, if it has been properly registered, will direct traffic to the website's IP address. Multiple domain names may be associated with a single IP address. ICANN holds a complete list of domain names in the world and asserts overall responsibility for managing the domain name system ("DNS"), a global, distributed Internet database.

1   order compelling Dynadot to shut down the wikileaks.org domain name *until the "JB property" was*

2   *returned. See id.*[4]

3      The "permanent injunction" granted by the Court was, as its name implies, decidedly not

4   temporary.  This order, entered on February 15, 2008, on stipulation between Plaintiffs and

5   Dynadot, requires the latter to, among other things, immediately (1) "disable the wikileaks.org

6   domain name" (Order Granting Permanent Injunction (Docket No. 48) ¶2 ("Order")); (2) "clear and

7   remove all DNS hosting records for the wikileaks.org domain name and prevent the domain name

8   from resolving to the wikileaks.org website or any other website or server other than a blank park

9   page" (*id.* ¶4) and (3) "lock the wikileaks.org domain name to prevent transfer of the domain name

10  to a different domain registrar" (*id.* ¶1).

11     The permanent injunction has the effect of blocking access by anyone in the United States

12  (and the world) to the Wikileaks website through the wikileaks.org domain name.  As a result, it

13  impedes access to the entire Wikileaks site, not just the documents that BJB claims are at issue in

14  this litigation.  Although there are foreign country domain names that apparently resolve to the same

15  IP address as wikileaks.org and are unaffected by the Court's injunction, including wikileaks.be

16  (Belgium) and wikileaks.de (Germany), and although sophisticated users or those who have been

17  following the controversy in the press may realize that the Wikileaks website is still reachable

18  through these foreign domain names, the permanent injunction nevertheless precludes anyone who

19  enters wikileaks.org into his or her browser from obtaining access to the site that was once available

20  at that URL.

21     Movants are a group of not-for-profit organizations with an interest in receiving the

22  information provided on the Wikileaks website, either themselves or on behalf of their members,

23  and an individual user of the Wikileaks website, each of whom has a demonstrable interest in

24  continued, uninterrupted access to the site:

25  _____

26  [4]Indeed, the Memorandum is replete with passages indicating that Plaintiffs were seeking only
    the return of their purported property and did not seek broader relief that would impair the public's

27  ability to access other information on the Wikileaks site that concerned the Plaintiffs but did not
    constitute "confidential" or "private" information over which Plaintiffs claimed ownership.  *See*

28  Memo 8:20-21, 10:3-8.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

- The Project on Government Oversight ("POGO") is an independent, non-profit organization that investigates and exposes corruption and other government misconduct. POGO staff members read and followrd postings on the Wikileaks website prior to the filing of Plaintiffs' lawsuit and have strong reason to believe that future postings will be of use in the organization's ongoing investigations. This lawsuit is also of particular interest to POGO because POGO will be unable to encourage whistleblowers who need an outlet for their documents to use the Wikileaks website if it is no longer as easily available as possible. (Cross-Complaint ¶4)

- The American Civil Liberties Union ("ACLU") is a nationwide, non-profit, nonpartisan organization. The ACLU is frequently involved in litigation and advocacy efforts concerning the rights of whistleblowers and numerous human rights issues, many of which are the subjects of material on the Wikileaks website. Staff members of the ACLU access and rely on documents and information posted on the Wikileaks website, and intend to do so in the future because of the material's close connections to the everyday work of the ACLU. As one example, the ACLU previously issued public statements regarding the U.S. Army's operations manual for the Guantanamo Bay detention facility that was first disclosed on the Wikileaks website, and will likely do so again if similar documents are posted on the website. (*Id.* ¶5)

- Electronic Frontier Foundation ("EFF") is a donor-supported membership organization working to protect fundamental rights regardless of technology; to educate the press, policymakers and the general public about civil liberties issues related to technology; and to act as a defender of those liberties. EFF has over 10,000 paying members nationwide. EFF members access information from and/or post information to the Wikileaks website and intend to do so in the future. (*Id.* ¶6)

- Jordan McCorkle is a senior at the University of Texas. He is a regular user of the Wikileaks website, which he visits at least once each week, sometimes more. He depends on Wikileaks as a source of information that is not available in the more traditional media so that he can keep abreast of recent developments and, where appropriate, make his views known to others about what he has learned from visiting the site. Mr. McCorkle wants to be able to continue to access the site so that both he and the public independently can assess questionable activities performed by corporate and governmental entities. (*Id.* ¶7)

None of the Movants are associated with, have any connections to, or have any involvement with the maintenance of the Wikileaks website. Id. ¶8.

## ARGUMENT

Intervention is governed by two distinct provisions of Rule 24 of the Federal Rules of Civil Procedure. Rule 24(a) sets forth the requirements for intervention as of right, while Rule 24(b) sets forth the requirements for permissive intervention. Movants satisfy the requirements of both and should be allowed to intervene in this action to challenge the Court's permanent injunction on First Amendment grounds.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

MOTION TO INTERVENE AND SUPPORTING MEMORANDUM          CV-08-0824 JSW

-6-

# I.

## MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT UNDER RULE 24(a)(2).

Rule 24(a), governing intervention as of right, is construed by federal courts "liberally in favor of potential intervenors." *Southwestern Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). The decision whether to allow intervention is "'guided primarily by practical considerations,' not technical distinctions." *Id.* (citing *United States v. Stringfellow*, 783 F.2d 821, 826 (9th Cir. 1986), *vacated on other grounds sub nom. Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987)). In considering a motion to intervene, the Court must accept all well-pleaded allegations in Movants' proposed pleadings. *Southwestern Ctr.*, 268 F.3d at 820.

The Ninth Circuit has adopted a four-part test to resolve applications for intervention as of right:

> (1) [T]he applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties. (*Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003))

Movants meet each of these requirements.

### A.    The Motion To Intervene Is Timely.

Plaintiffs commenced this action on February 6, 2008, and Defendants Wikileaks and Wikileaks.org have yet to answer the Complaint. Accordingly, this litigation is in its infancy, and the Motion is timely. *See Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993) (application timely when filed at outset of litigation). Although the Court has entered a "permanent injunction," the Court retained jurisdiction to enforce or modify it. As a result, permitting Movants to intervene to protect their interests will not delay adjudication of the action.

### B.    Movants Have Substantial First Amendment Interests In Accessing The Wikileaks Website.

The "significantly protectable interest" the Ninth Circuit requires for intervention is "'primarily a practical guide to disposing of lawsuits by involving as many apparently concerned

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   persons as is compatible with efficiency and due process.'" *County of Fresno v. Andrus*, 622 F.2d

2   436, 438 (9th Cir. 1980) (citations omitted). "It is generally enough that the interest [asserted] is

3   protectable under some law, and that there is a relationship between the legally protected interest

4   and the claims at issue." *Sierra Club*, 995 F.2d at 1484. Where "the injunctive relief sought by

5   plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable

6   interests, that party satisfies the 'interest' test." *Forest Conservation Council v. U.S. Forest Serv.*,

7   66 F.3d 1489, 1494 (9th Cir. 1995).

8       The injunctive relief already granted by this Court more than meets this test. The permanent

9   injunction blocks the public's access to the Wikileaks site through the domain name wikileaks.org.

10  *See* Compl. (Docket No. 1) ¶78(g) (requesting that the domain name wikileaks.org be locked, and

11  that its transfer be prevented); Order ¶1 (ordering same). As a result, Movants cannot use that

12  domain name to access *any* of the documents and information that were formerly available or might

13  become available in the future on the Wikileaks website, even documents and information that have

14  no connection to Plaintiffs and that are of national, if not international, interest. *See* p.6, *supra*.

15      Consequently, the permanent injunction has "direct, immediate, and harmful effects" on the

16  First Amendment rights of Movants and the public to access this information without judicial

17  hindrance. A long line of Supreme Court precedent holds that the First Amendment not only

18  "embraces the right to distribute literature," it also "necessarily protects the right to *receive* it."

19  *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943) (emphasis added); *accord Bd. of Educ. v. Pico*,

20  457 U.S. 853, 867 (1982) ("the right to receive ideas is a necessary predicate to the *recipient's*

21  meaningful exercise of his own rights of speech, press, and political freedom") (emphasis in

22  original); *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) (First Amendment encompasses "'right

23  to receive information and ideas'") (citation omitted); *Red Lion Broad. Co. v. FCC*, 395 U.S. 367,

24  390 (1969) ("It is the right of the public to receive suitable access to social, political, esthetic, moral,

25  and other ideas and experiences which is crucial here. That right may not constitutionally be

26  abridged . . ."); *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("It is now well established that the

27  Constitution protects the right to receive information and ideas"); *Lamont v. Postmaster Gen.*, 381

28  U.S. 301, 308 (1965) ("The dissemination of ideas can accomplish nothing if otherwise willing


HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

MOTION TO INTERVENE AND SUPPORTING MEMORANDUM          CV-08-0824 JSW

1   addressees are not free to receive and consider them. It would be a barren marketplace of ideas that

2   had only sellers and no buyers") (Brennan, J., concurring).

3       This right to receive information specifically includes information disseminated over the

4   Internet. In *Clement v. California Department of Corrections*, 364 F.3d 1148 (9th Cir. 2004), an

5   inmate at Pelican Bay State Prison alleged that the prison violated his First Amendment rights by

6   prohibiting inmates from receiving material downloaded from the Internet. *Id.* at 1150. The district

7   court denied the prison's motion for summary judgment on Clement's claims, *sua sponte* granted

8   summary judgment in Clement's favor and issued a permanent statewide injunction against

9   enforcement of the policy. *Id.* The Ninth Circuit affirmed, holding that the constitutional right to

10  receive information applies to "material disseminated over the internet as well as by the means of

11  communication devices used prior to the high-tech era." *Id.* at 1151; *see also Reno v. ACLU*, 521

12  U.S. 844, 874 (1997) (invalidating law that restricted adults' right to access information on the

13  Internet).

14      Moreover, the protection for Internet speech applies to domain names, which when used for

15  expressive, noncommercial purposes are fully protected by the First Amendment. *Taubman Co. v.*

16  *Webfeats*, 319 F.3d 770, 778 (6th Cir. 2003) ("the domain name is a type of public expression, no

17  different in scope than a billboard or a pulpit").[5] Accordingly, the permanent injunction rendering

18  the domain name inoperable implicates Movants' First Amendment interests in receiving documents

19  and information from the Wikileaks website, and thus satisfies Rule 24(a)'s "protectable interest"

20  requirement. *Cf. Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472-73 (9th Cir. 1992)

21  (affirming intervention by third party to seek modification of protective order to access deposition

22  transcripts). Indeed, although the right to receive information and ideas is "fundamental to our free

23

24      [5]There is an exception when a domain name uses a third party's trademark for purely
        commercial purposes, in which case the First Amendment may provide reduced protection. *See*
25      *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 682 (9th Cir. 2005). No such claim is presented
        here. Where, as here, the domain name is expressive and describes the content of the material on the
26      website, the domain name functions much like the title or author's name on a book and is fully
        protected by the First Amendment. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 348
27      (1995) ("the identity of the speaker is no different from other components of [a] document's
        contents that the author is free to include or exclude").
28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1  society *regardless* of their social worth" (*Stanley*, 394 U.S. at 564 (emphasis added)), the right to

2  access the materials posted on the Wikileaks website is peculiarly deserving of protection under the

3  First Amendment.  These documents concern issues of national and international importance, such

4  as international human rights, political corruption and other such core socio-political issues.  *See* p.3,

5  *supra*.  Movants have accessed such documents in the past and relied on them as part of their

6  research, policy and public advocacy efforts.  *See* pp. 5-6, *supra*.

7

8      **C.**    **The Disposition Of The Lawsuit Already Has Adversely Affected Movants'**

9          **First Amendment Rights.**

10      The Ninth Circuit has stated that "'[i]f an absentee would be substantially affected in a

11  practical sense by the determination made in an action, he should, as a general rule, be entitled to

12  intervene.'"  *Southwestern Ctr.*, 268 F.3d at 822 (quoting Fed. R. Civ. P. 24 advisory committee's

13  note).  Movants' First Amendment rights to access the important information on the Wikileaks

14  website have already been affected, "in a practical sense," by the permanent injunction.  Because the

15  injunction prevents *all use* of the wikileaks.org domain name, it has prevented both Movants and the

16  public from using that domain name to access all of the documents and other materials available

17  thereby.  Indeed, it is precisely because the permanent injunction interferes with the ability of

18  members of the public to access the site that Plaintiffs sought such relief.  It thus impairs not only

19  the First Amendment rights of Wikileaks, but also those belonging to Movants.

20      In this sense, the injunction is no different than a hypothetical order prohibiting Dynadot from

21  passing out leaflets telling potential viewers how to access the Wikileaks site.  That plainly would

22  violate the First Amendment (*Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971)), and so does

23  the permanent injunction.  Like the injunction against leafleting overturned in *Organization for a*

24  *Better Austin*, the permanent injunction rendering the domain name inoperable is a classic prior

25  restraint, "the most serious and the least tolerable infringement on First Amendment rights."  *Neb.*

26  *Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).  Moreover, the First Amendment does not permit

27  the issuance of injunctive relief that hinders access to documents and other information that is not

28  even arguably Plaintiffs' property.  *See Tory v. Cochran*, 544 U.S. 734, 738 (2005) (quoting *Carroll*

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    *v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183-84 (1968), for the proposition that an

2    "order" issued in "the area of First Amendment rights" must be "precis[e]" and narrowly "tailored"

3    to achieve the "pin-pointed objective" of the "needs of the case") (internal quotation marks omitted);

4    *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765-66 (1994) (injunction may burden no more

5    speech than necessary).   The permanent injunction has therefore injured Movants' First Amendment

6    rights to access these documents and information.   Accordingly, they should be allowed to intervene

7    in this action so that they can move to vacate that injunction.

8    Plaintiffs may respond by asserting that, as mentioned above, some or all of the documents

9    and information available through the wikileaks.org domain name remain available to the public

10   using foreign domain names other than wikileaks.org.   *See* p.5, *supra*.   That proves only the

11   pointlessness, and thus the lack of constitutionally adequate justification, for the sweeping injunctive

12   relief entered by the Court.   *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S.

13   557, 564 (1980) (law that restricts speech "may not be sustained if it provides only ineffective or

14   remote support for the government's purpose").

15   Nor can the availability of alternate routes to the Wikileaks website compromise Movants'

16   First Amendment rights in obtaining access to that site through wikileaks.org.   The Supreme Court

17   has repeatedly held that "one is not to have the exercise of his liberty of expression in appropriate

18   places abridged on the plea that it may be exercised in some other place." *Schneider v. New Jersey*,

19   308 U.S. 147, 163 (1939); *accord Reno v. ACLU*, 521 U.S. 844, 879-80 (1997) (rejecting the

20   government's contention that content-based restriction on speech in numerous Internet modalities

21   was permissible because the law allowed a "reasonable opportunity" for such speech to occur

22   elsewhere on the Internet; citing *Schneider*, the Court noted that "[t]he Government's position is

23   equivalent to arguing that a statute could ban leaflets on certain subjects as long as individuals are

24   free to publish books"); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,

25   425 U.S. 748, 757 n.15 (1976) ("We are aware of no general principle that the freedom of speech

26   may be abridged when the speaker's listeners could come by his message by some other

27   means . . ."); *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 556 (1975) (holding an

28   otherwise impermissible prior restraint against performance of musical "Hair" is not saved by

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    availability of other forums for production). It is equally immaterial if the permanent injunction's

2    only effect was to delay, rather than completely frustrate, access to the Wikileaks website. *See*

3    *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even

4    minimal periods of time, unquestionably constitutes irreparable injury").

5            Nor, of course, can the permanent injunction's infringement on *Movants*' First Amendment

6    rights be justified by the fact that *Dynadot* agreed to it. Indeed, the injunction effectively grants

7    Plaintiffs relief that they could not have obtained by private agreement. The Public Interest

8    Registry, pursuant to a Registry Agreement with ICANN, operates the .org top-level domain. *See*

9    http://www.icann.org/tlds/agreements/org/. Dynadot, like all domain name registrars of the .org

10   domain, entered into a Registry-Registrar Agreement with PIR. The terms of the Registry-Registrar

11   Agreement requires Dynadot to adhere to the "ICANN standards, policies, procedures, and practices

12   for which PIR has monitoring responsibility," among other obligations. *See* http://www.pir.org/

13   PDFs/ORG-RRA-3-April-2007-FINAL.pdf, Section 3.5. This includes the ICANN Policy on

14   Transfer of Registrations between Registrars, which states that domain name registrars (such as

15   Dynadot) "may deny a transfer request only in the following specific instances." *See*

16   http://www.icann.org/transfers/policy-12jul04.htm. While this list includes a "[c]ourt order by a

17   court of competent jurisdiction," it does not include a private agreement between the registrar and a

18   third party.

19

20   **D.    The Existing Parties Have Not Adequately Represented Movants' Interests**
         **In This Litigation.**

21

22           In determining whether a proposed intervenor's interests will be adequately represented,

23   courts consider (1) whether the interest of a present party is such that it will undoubtedly make all

24   the intervenor's arguments, (2) whether the present party is capable and willing to make such

25   arguments, and (3) whether a proposed intervenor would offer any necessary elements to the

26   proceedings that other parties would neglect. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir.

27   2003). The burden to make this showing is "minimal, and would be satisfied if [a proposed

28   intervenor] could demonstrate that representation of [its] interests 'may' be inadequate." *Id.*

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

In this case, Movants' interests have not been protected by the current parties to this action. Defendants Wikileaks and Wikileaks.org have yet to appear in this case, and so cannot represent Movants' interests.[6]  Defendant Dynadot consented to the permanent injunction against it, and is thus obviously adverse to Movants.[7]  In short, on the present record, none of the parties to this litigation can or will argue that the permanent injunction violates the rights of people who want to access the Wikileaks website without judicial hindrance.

## II.

### ALTERNATIVELY, MOVANTS ARE ENTITLED TO INTERVENE PERMISSIVELY UNDER RULE 24(b)(2).

Even if Movants were not entitled to intervene as a matter of right in this proceeding under Rule 24(a), the Court should nonetheless allow them to intervene permissively pursuant to Rule 24(b).  Rule 24(b) provides, in relevant part,

> Upon timely application anyone may be permitted to intervene in an action . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . .    In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. (Fed. R. Civ. P. 24(b))

Ninth Circuit case law sets out three conditions for permissive intervention under this rule: (1) the applicant has its own independent ground for subject matter jurisdiction,[8] (2) the application

---

[6]Even if they do appear, the Wikileaks Defendants would doubtless have other interests in addition to, and different from, those of Movants.  Accordingly, they would still be inadequate surrogates to represent Movants' discrete interests in removing the harm to their First Amendment rights caused by the permanent injunction.  For example, Wikileaks could raise issues such as whether this Court has jurisdiction over it that could prevent it from asserting Movants' First Amendment interests in a thorough manner, if at all.

[7]Dynadot's willingness to stipulate to sweeping injunctive relief is particularly troublesome because, as a domain name registrar, it is immune from any liability in this action under Section 230 of the Communications Decency Act ("CDA").  47 U.S.C. §230(c)(1).  That statute precludes Dynadot from being treated as a speaker or publisher of information provided by an information content provider such as Wikileaks.  *See Smith v. Intercosmos Media Group, Inc.*, No. Civ. A. 02-1964, 2002 WL 31844907 (E.D. La. Dec. 17, 2002) (holding that Intercosmos, a domain name registrar, was immune under Section 230).

[8]This particular requirement applies only to Movants' request for permissive intervention.  Independent subject matter jurisdiction need not be established for intervention as of right under Rule 24(a).  *See* 28 U.S.C. §1367(a) (conferring supplemental jurisdiction over "claims that (continued . . . )

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    is timely, and (3) the applicant's claim or defense and the main action have a question of law or a

2    question of fact in common. *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir.

3    2002). Courts should also consider practical considerations in determining whether to exercise

4    discretion to allow permissive intervention, including whether the intervenor's interests are

5    adequately represented by other parties, whether intervention would cause delay or prejudice, and

6    judicial economy. *Venegas v. Skaggs*, 867 F.2d 527, 530-31 (9th Cir. 1989), *aff'd*, 495 U.S. 82

7    (1990). Movants meet each of these requirements.

8    *First*, there is an independent basis for subject matter jurisdiction over Movants' claims.

9    These claims rest on Movants' rights under the First and Fifth Amendments. *See* Cross-Complaint

10    ¶23. They thus invoke federal question jurisdiction. 28 U.S.C. §1331.

11    *Second*, for the reasons already set out above (*see* Part I(A), *supra*), the motion is timely.

12    *Third*, there are essential legal and factual questions common to the existing action and

13    Movants' claims and defenses in intervention. If allowed to intervene, Movants will move to vacate

14    the permanent injunction entered against Dynadot because the injunction violates Movants' and the

15    public's First Amendment rights as *recipients* of information. Because a court considering

16    injunctive relief must consider the injunction's effect on the public interest (*Southwest Voter*

17    *Registration Education Project v. Shelley*, 344 F.3d 914, 917 (9th Cir. 2003) ("The district court

18    must also consider whether the public interest favors issuance of the injunction"); *Natural Res. Def.*

19    *Council, Inc. v. Gutierrez*, No. C-07-04771, 2008 WL 360852, at *3 (N.D. Cal. Feb. 6, 2008) ("In

20    determining whether to issue an injunction, courts must also consider the public interest")), these

21    issues were necessarily raised by Plaintiffs' request for sweeping permanent injunctive relief.

22

23

24

25

26

27    ( . . . continued)
      involve . . . intervention of additional parties"); William W. Schwarzer et al., *California Practice*
28    *Guide: Federal Civil Procedure Before Trial* ¶7:261-262 (2004).

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

MOTION TO INTERVENE AND SUPPORTING MEMORANDUM        CV-08-0824 JSW
-14-

1

**CONCLUSION**

2      For the foregoing reasons, Movants respectfully request that this Court grant their motion for

3  intervention as of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, or, in the

4  alternative, their motion for permissive intervention pursuant to Rule 24(b).

5  DATED: February 26, 2008.

6                                             Respectfully,

7                                             STEVEN L. MAYER
                                             CHRISTOPHER KAO
8                                             SHAUDY DANAYE-ELMI
                                             HOWARD RICE NEMEROVSKI CANADY FALK &
9                                                  RABKIN
                                             A Professional Corporation
10
                                             ANN BRICK
11                                            AMERICAN CIVIL LIBERTIES UNION
                                                  FOUNDATION OF NORTHERN
12                                                 CALIFORNIA, INC.

13                                            ADEN J. FINE
                                             AMERICAN CIVIL LIBERTIES UNION
14                                                 FOUNDATION

15                                            CINDY A. COHN
                                             KURT OPSAHL
16                                            MATTHEW J. ZIMMERMAN
                                             ELECTRONIC FRONTIER FOUNDATION
17
18                                            By: _____
                                                       STEVEN L. MAYER
19
                                             Attorneys for Movants PROJECT ON GOVERNMENT
20                                            OVERSIGHT, *et al.*

21

22

23

24

25

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1  STEVEN L. MAYER (No. 62030)
   Email:  smayer@howardrice.com
2  HOWARD RICE NEMEROVSKI CANADY
        FALK & RABKIN
3  A Professional Corporation
   Three Embarcadero Center, 7th Floor
4  San Francisco, California  94111-4024
   Telephone:    415/434-1600
5  Facsimile:    415/217-5910

6  ANN BRICK (No.65296)
   Email:  abrick@aclunc.org
7  AMERICAN CIVIL LIBERTIES UNION
        FOUNDATION OF NORTHERN
8        CALIFORNIA, INC.
   39 Drumm Street
9  San Francisco, California  94111
   Telephone:    415/621-2493
10 Facsimile:    415/255-8437

11 ADEN J. FINE (No. 186728)              MATTHEW J. ZIMMERMAN (No. 212423)
   Email:  afine@aclu.org                Email:  mattz@eff.org
12 AMERICAN CIVIL LIBERTIES UNION        ELECTRONIC FRONTIER
        FOUNDATION                            FOUNDATION
13 125 Broad Street—18th Floor           454 Shotwell Street
   New York, New York  10004             San Francisco, California  94110
14 Telephone:    212/549-2693            Telephone:    415/436-9333
   Facsimile:    212/549-2651            Facsimile:    415/436-9993
15
16 Attorneys for Movants and Prospective Intervenors
   PROJECT ON GOVERNMENT OVERSIGHT, *et al.*

17 *Additional Counsel Listed On Signature Page*

18              UNITED STATES DISTRICT COURT

19              NORTHERN DISTRICT OF CALIFORNIA

20                 SAN FRANCISCO DIVISION

21 BANK JULIUS BAER & CO., LTD., a Swiss        No. CV-08-0824 JSW
   entity, *et al.*,
22                                              Action Filed: February 6, 2008
                   Plaintiffs,
23                                              [PROPOSED] ANSWER AND CROSS-
             v.                                 COMPLAINT IN INTERVENTION
24                                              [Fed. R. Civ. P. 24(a), 24(b)]
   WIKILEAKS, an entity of unknown form, *et al.*,
25                 Defendants.

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

PROJECT ON GOVERNMENT OVERSIGHT, a
District of Columbia not-for-profit organization;
AMERICAN CIVIL LIBERTIES UNION, INC.,
a District of Columbia not-for-profit organization;
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION, INC., a New York not-for-profit
organization; ELECTRONIC FRONTIER
FOUNDATION, a Massachusetts not-for-profit
organization, on behalf of its members; and
JORDAN MCCORKLE, an individual,

        Defendants and Cross-
        Complainants In Intervention,

    v.

BANK JULIUS BAER & CO. LTD, a Swiss
entity; and JULIUS BAER BANK & TRUST
CO. LTD., a Cayman Island entity; and
DYNADOT, LLC, a California limited liability
company,

        Cross-Defendants In Intervention.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    Defendants and Cross-Complainants in Intervention Project on Government Oversight,

2    American Civil Liberties Union, Inc., American Civil Liberties Union Foundation, Inc., Electronic

3    Frontier Foundation, on behalf of its members, and Jordan McCorkle (collectively, "Intervenors")

4    for their answer to the Complaint filed by Plaintiffs Bank Julius Baer & Co. Ltd. and Julius Baer

5    Bank and Trust Co. Ltd. against Defendants Wikileaks, wikileaks.org, Dynadot, LLC, and Does 1-

6    10, as follows:

### The Nature of This Action

7

8    1.    State that they are without knowledge or information sufficient to form a belief as to the

9    truth of the allegations of paragraph 1.

### Jurisdiction and Venue

10

11    2.    State that they are without knowledge or information sufficient to form a belief as to the

12    truth of the allegations of paragraph 2.

13    3.    State that they are without knowledge or information sufficient to form a belief as to the

14    truth of the allegations of paragraph 3.

### Intradistrict Assignment

15

16    4.    State that they are without knowledge or information sufficient to form a belief as to the

17    truth of the allegations of paragraph 4.

### The Parties

18

19    5.    State that they are without knowledge or information sufficient to form a belief as to the

20    truth of the allegations of paragraph 5, except admit, on information and belief, that Bank Julius

21    Baer & Co., Ltd., is a Swiss entity with its principal place of business in Zurich, Switzerland.

22    6.    State that they are without knowledge or information sufficient to form a belief as to the

23    truth of the allegations of paragraph 6, except admit, on information and belief, that Julius Baer

24    Bank & Trust Co., Ltd., is a Cayman Islands entity, with its principal place of business in Windward

25    III, Grand Cayman.

26    7.    State that they are without knowledge or information sufficient to form a belief as to the

27    truth of the allegations of paragraph 7.

28    8.    State that they are without knowledge or information sufficient to form a belief as to the

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   truth of the allegations of paragraph 8.

2       9.      State that they are without knowledge or information sufficient to form a belief as to the

3   truth of the allegations of paragraph 9, except admit, on information and belief, that Dynadot LLC is

4   a California limited liability company, with its principal place of business in San Mateo, California.

5       10.     State that they are without knowledge or information sufficient to form a belief as to the

6   truth of the allegations of paragraph 10.

7       11.     State that they are without knowledge or information sufficient to form a belief as to the

8   truth of the allegations of paragraph 11.

9       12.     State that they are without knowledge or information sufficient to form a belief as to the

10  truth of the allegations of paragraph 12.

11  ### Facts Common to All Claims For Relief

12      13.     State that they are without knowledge or information sufficient to form a belief as to the

13  truth of the allegations of paragraph 13.

14      14.     State that they are without knowledge or information sufficient to form a belief as to the

15  truth of the allegations of paragraph 14.

16      15.     State that they are without knowledge or information sufficient to form a belief as to the

17  truth of the allegations of paragraph 15.

18      16.     State that they are without knowledge or information sufficient to form a belief as to the

19  truth of the allegations of paragraph 16.

20      17.     State that they are without knowledge or information sufficient to form a belief as to the

21  truth of the allegations of paragraph 17.

22      18.     State that they are without knowledge or information sufficient to form a belief as to the

23  truth of the allegations of paragraph 18.

24      19.     State that they are without knowledge or information sufficient to form a belief as to the

25  truth of the allegations of paragraph 19.

26      20.     State that they are without knowledge or information sufficient to form a belief as to the

27  truth of the allegations of paragraph 20.

28      21.     State that they are without knowledge or information sufficient to form a belief as to the


HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

truth of the allegations of paragraph 21.

     22.    State that they are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22.

     23.    State that they are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23.

     24.    State that they are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24.

     25.    State that they are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25.

     26.    State that they are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26.

     27.    State that they are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27.

     28.    State that they are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 28.

     29.    State that they are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29.

     30.    State that they are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 30.

     31.    State that they are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 31.

## FIRST CLAIM FOR RELIEF

For Unlawful and Unfair Business Practices in Violation of Cal. Bus. & Prof. Code §17200
(Against Defendants Wikileaks, wikileaks.org and Does 1-10)

     32.    Repeat and reallege their responses to the allegations contained in paragraphs 1-31.

     33.    State that they are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33.

     34.    State that they are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 34.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    35.    State that they are without knowledge or information sufficient to form a belief as to the

2    truth of the allegations of paragraph 35.

3    36.    State that they are without knowledge or information sufficient to form a belief as to the

4    truth of the allegations of paragraph 36.

5    37.    State that they are without knowledge or information sufficient to form a belief as to the

6    truth of the allegations of paragraph 37.

7    38.    State that they are without knowledge or information sufficient to form a belief as to the

8    truth of the allegations of paragraph 38.

9    39.    State that they are without knowledge or information sufficient to form a belief as to the

10   truth of the allegations of paragraph 39.

11   40.    State that they are without knowledge or information sufficient to form a belief as to the

12   truth of the allegations of paragraph 40.

13   41.    State that they are without knowledge or information sufficient to form a belief as to the

14   truth of the allegations of paragraph 41, and state that the temporary, preliminary and permanent

15   injunctive relief requested by Plaintiffs is overbroad and barred by the First and Fifth Amendments

16   to the United States Constitution.

**SECOND CLAIM FOR RELIEF**
For Declaratory Relief
(Against All Defendants)

19   42.    Repeat and reallege their responses to the allegations contained in paragraphs 1-31.

20   43.    State that they are without knowledge or information sufficient to form a belief as to the

21   truth of the allegations of paragraph 43.

22   44.    State that they are without knowledge or information sufficient to form a belief as to the

23   truth of the allegations of paragraph 44.

24   45.    State that they are without knowledge or information sufficient to form a belief as to the

25   truth of the allegations of paragraph 45.

26   46.    State that they are without knowledge or information sufficient to form a belief as to the

27   truth of the allegations of paragraph 46.

28   47.    State that they are without knowledge or information sufficient to form a belief as to the

[PROPOSED] ANSWER AND CROSS-COMPLAINT IN INTERVENTION    CV-08-0824 JSW
-4-

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   truth of the allegations of paragraph 47.

2        48.     State that they are without knowledge or information sufficient to form a belief as to the

3   truth of the allegations of paragraph 48.

### THIRD CLAIM FOR RELIEF
For Interference With Contract
(Against Defendants Wikileaks, wikileaks.org and Does 1-10)

6        49.     Repeat and reallege their responses to the allegations contained in paragraphs 1-31.

7        50.     State that they are without knowledge or information sufficient to form a belief as to the

8   truth of the allegations of paragraph 50.

9        51.     State that they are without knowledge or information sufficient to form a belief as to the

10   truth of the allegations of paragraph 51.

11        52.     State that they are without knowledge or information sufficient to form a belief as to the

12   truth of the allegations of paragraph 52.

13        53.     State that they are without knowledge or information sufficient to form a belief as to the

14   truth of the allegations of paragraph 53.

15        54.     State that they are without knowledge or information sufficient to form a belief as to the

16   truth of the allegations of paragraph 54.

### FOURTH CLAIM FOR RELIEF
For Interference With Prospective Economic Advantage
(Against Defendants Wikileaks, wikileaks.org and Does 1-10)

19        55.     Repeat and reallege their responses to the allegations contained in paragraphs 1-31.

20        56.     State that they are without knowledge or information sufficient to form a belief as to the

21   truth of the allegations of paragraph 56.

22        57.     State that they are without knowledge or information sufficient to form a belief as to the

23   truth of the allegations of paragraph 57.

24        58.     State that they are without knowledge or information sufficient to form a belief as to the

25   truth of the allegations of paragraph 58.

26        59.     State that they are without knowledge or information sufficient to form a belief as to the

27   truth of the allegations of paragraph 59.

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1

## FIFTH CLAIM FOR RELIEF
For Conversion
2        (Against Defendants Wikileaks, wikileaks.org and Does 1-10)

3      60.   Repeat and reallege their responses to the allegations contained in paragraphs 1-31.

4      61.   State that they are without knowledge or information sufficient to form a belief as to the

5 truth of the allegations of paragraph 61.

6      62.   State that they are without knowledge or information sufficient to form a belief as to the

7 truth of the allegations of paragraph 62.

8      63.   State that they are without knowledge or information sufficient to form a belief as to the

9 truth of the allegations of paragraph 63.

10      64.   State that they are without knowledge or information sufficient to form a belief as to the

11 truth of the allegations of paragraph 64.

12      65.   State that they are without knowledge or information sufficient to form a belief as to the

13 truth of the allegations of paragraph 65.

14      66.   State that they are without knowledge or information sufficient to form a belief as to the

15 truth of the allegations of paragraph 66, and state that the temporary, preliminary and permanent

16 injunctive relief requested by Plaintiffs is overbroad and barred by the First and Fifth Amendments

17 to the United States Constitution.

18

## SIXTH CLAIM FOR RELIEF
For Injunctive Relief
19             (Against All Defendants)

20      67.   Repeat and reallege their responses to the allegations contained in paragraphs 1-31.

21      68.   State that they are without knowledge or information sufficient to form a belief as to the

22 truth of the allegations of paragraph 68.

23      69.   State that they are without knowledge or information sufficient to form a belief as to the

24 truth of the allegations of paragraph 69.

25      70.   State that they are without knowledge or information sufficient to form a belief as to the

26 truth of the allegations of paragraph 70.

27      71.   State that they are without knowledge or information sufficient to form a belief as to the

28 truth of the allegations of paragraph 71, and state that the temporary, preliminary and permanent

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1  injunctive relief requested by Plaintiffs is overbroad and barred by the First and Fifth Amendments

2  to the United States Constitution.

3                    **FOR A FIRST AFFIRMATIVE DEFENSE**

4        72.    The temporary, preliminary and permanent injunctive relief sought by Plaintiffs in their

5  Complaint is overbroad and violates Intervenors' rights under the First Amendment to the United

6  States Constitution.   In addition, the permanent injunction already entered by the Court violates

7  Intervenors' rights under the First and Fifth Amendments, because it was entered without participa-

8  tion by anyone representing the interests of Intervenors or members of the public in retaining

9  unhindered access to the Wikileaks website and to the documents and information contained thereon

10  that are not the subject of this litigation.

11                        **CROSS-COMPLAINT**

12        Defendants and Cross-Complainants in Intervention Project on Government Oversight,

13  American Civil Liberties Union, Inc., American Civil Liberties Union Foundation, Inc., Electronic

14  Frontier Foundation, on behalf of its members, and Jordan McCorkle (collectively, "Intervenors")

15  for their Cross-Complaint against Plaintiffs Bank Julius Baer & Co. Ltd. and Julius Baer Bank and

16  Trust Co. Ltd. and Defendants Dynadot, LLC, allege as follows:

17                      **The Nature of This Action**

18        1.    This is an action for declaratory relief under 28 U.S.C. §2201.

19                            **Jurisdiction**

20        2.    Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §1331 (federal

21  question).

22        3.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and (c).

23                             **The Parties**

24        4.    Defendant and Cross-Complainant in Intervention Project on Government Oversight

25  ("POGO") is a District of Columbia not-for-profit Section 501(c)(3) organization, with its principal

26  place of business in Washington, D.C.  Founded in 1981, POGO is an independent nonprofit which

27  investigates and exposes corruption and other misconduct in order to achieve a more accountable

28  federal government.  POGO works with hundreds of inside sources and whistleblowers to conduct

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

[PROPOSED] ANSWER AND CROSS-COMPLAINT IN INTERVENTION    CV-08-0824 JSW

-7-

1  journalistic investigations aimed at improving the functioning of the U.S. government.  In recent

2  years, POGO's investigations and outreach programs have addressed shortcomings in national secu-

3  rity, the lack of oversight of government spending, outmoded nuclear weapons programs, inadequate

4  whistleblower protections, excessive government secrecy and Congress' inability to conduct effec-

5  tive government oversight.    POGO strongly believes that employees who witness wrongdoing

6  should have outlets for exposing this through websites such as Wikileaks.    Websites such as

7  Wikileaks ensure that there are safe havens where whistleblowers can shed light on the inner work-

8  ings of their institutions and ensure that corruption is rooted out.    Ultimately, this free flow of

9  information protects citizens and protects democracy from succumbing to special interests.  POGO

10  staff members have read and followed postings on the Wikileaks website prior to the filing of

11  Plaintiffs' lawsuit in the regular course of their activities and have strong reason to believe that

12  future postings will be of use in the organization's ongoing investigations.  This lawsuit is also of

13  particular interest to POGO because POGO will be unable to encourage whistleblowers who need an

14  outlet for their documents to use the Wikileaks site if it is no longer as easily available as possible.

15      5.      Defendant and Cross-Complainant in Intervention American Civil Liberties Union

16  ("ACLU") is a nationwide, nonprofit, nonpartisan organization with over 500,000 members dedi-

17  cated to the principles of liberty and equality embodied in the United States Constitution.    The

18  ACLU comprises two entities, the American Civil Liberties Union, Inc., a District of Columbia not-

19  for-profit Section 501(c)(4) corporation which handles most of the ACLU's lobbying efforts out of

20  the ACLU's legislative office in Washington, D.C., and its affiliate, the American Civil Liberties

21  Union Foundation, Inc., a New York not-for-profit Section 501(c)(3) corporation, which handles

22  most of the ACLU's litigation and public education efforts.  Freedom of speech has been a central

23  concern of the ACLU since the organization's founding in 1920, and over the last eight decades the

24  ACLU has repeatedly considered the application of free speech principles to new communications

25  media.  Most recently and most relevantly, the ACLU has been involved in numerous state and

26  federal cases involving freedom of expression on the Internet.  The ACLU is also frequently invol-

27  ved in litigation and advocacy efforts concerning the rights of whistleblowers and numerous human

28  rights issues, many of which are the subjects of material on the Wikileaks website.  Prior to the

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

[PROPOSED] ANSWER AND CROSS-COMPLAINT IN INTERVENTION    CV-08-0824 JSW

filing of Plaintiffs' lawsuit, staff members of the ACLU accessed and relied on documents and information posted on the Wikileaks website in the course of their regular advocacy, research, public education and litigation efforts, and they intend to do so in the future because of the material's close connections to the everyday work of the ACLU. As one example, the ACLU previously issued public statements regarding the U.S. Army's operations manual for the Guantanamo Bay detention facility that was first disclosed on the Wikileaks website, and will likely do so again if similar documents are posted on the website.

6.     Defendant and Cross-Complainant in Intervention Electronic Frontier Foundation ("EFF") is a Massachusetts not-for-profit Section 501(c)(3) organization, with its principal place of business in San Francisco, California. EFF is a donor-supported membership organization working to protect fundamental rights related to technology; to educate the press, policymakers and the general public about civil liberties issues related to technology; and to act as a defender of those liberties. EFF currently has over 10,000 paying members nationwide, and over 35,000 subscribers to *EFFector*, its email newsletter. EFF members regularly access information from and/or post information to Wikileaks.

7.     Defendant and Cross-Complainant in Intervention Jordan McCorkle is an individual residing in Austin, Texas, where he is a senior at the University of Texas. He is a regular user of Wikileaks, which he visits at least once each week, sometimes more. McCorkle believes it is important to be a well-informed and participatory member of society. He depends on Wikileaks as a source of information that is not available in the more traditional media so that he can keep abreast of recent developments and, where appropriate, make his views known to others about what he has learned from visiting the site. McCorkle wants to be able to continue to access Wikileaks so that both he and the public can retain the ability independently to assess questionable activities undertaken by corporate and governmental entities.

8.     None of the Defendants and Cross-Complainants In Intervention are associated with, have any connections to, or have any involvement with the maintenance of the Wikileaks website.

9.     On information and belief, Plaintiff and Cross-Defendant Bank Julius Baer & Co. Ltd. is a Swiss entity, with its principal place of business in Zurich, Switzerland. On information and



HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    belief, Plaintiff and Cross-Defendant Julius Baer Bank & Trust Co. Ltd. is a Cayman Islands entity,

2    with its principal place of business in Windward III, Grand Cayman.  These Cross-Defendants are

3    referred to collectively herein as the "BJB Parties."

4        10.    On information and belief, Defendant and Cross-Defendant Dynadot, LLC ("Dynadot"),

5    is a California limited liability company, with its principal place of business in San Mateo,

6    California.

7                                      **FIRST CAUSE OF ACTION**
                                         Declaratory Relief
8

9        11.    Defendants and Cross-Complainants In Intervention incorporate by reference as though

10   set forth herein each of the preceding allegations in Paragraphs 1 through 10.

11       12.    The BJB Parties commenced this action on February 6, 2008.

12       13.    The BJB Parties allege in their Complaint that one of their former employees, Rudolf

13   Elmer, has been improperly providing third parties—including the Wikileaks website—with confi-

14   dential documents belonging to the BJB Parties.  Specifically, the BJB Parties allege that on or

15   about January 13, 2008, Elmer began posting hundreds of such documents to that site.

16       14.    The principal Defendants named in the Complaint are "Wikileaks" and "wikileaks.org,"

17   who are alleged to own and/or operate the "Wikileaks" website.

18       15.    "Wikileaks" describes itself as an Internet website where participants can anonymously

19   disclose and comment on documents and other materials of public interest.  *See* Wikileaks: About,

20   http://wikileaks.be/wiki/Wikileaks:About (last visited Feb. 26, 2008).  According to the site, its

21   "primary interest is in exposing oppressive regimes in Asia, the former Soviet bloc, Sub-Saharan

22   Africa and the Middle East, but we also expect to be of assistance to people of all regions who wish

23   to reveal unethical behavior in their governments and corporations."  *Id.*

24       16.    The Wikileaks website utilizes technology designed to permit third parties to post elec-

25   tronic documents easily for public availability.

26       17.    The Wikileaks website states that it was founded "by Chinese dissidents, journalists,

27   mathematicians and startup company technologists, from the US, Taiwan, Europe, Australia and

28   South Africa."  *Id.*  Among other things, material purportedly posted to the website includes the U.S.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

Army's operations manual for the Guantanamo Bay detention facility, materials concerning the United States' expenditures on its military efforts in Afghanistan and Iraq, and documents exposing alleged corruption by Kenyan political leaders. *Id.*

18.    In addition to Defendants "Wikileaks" and "wikileaks.org," the BJB Parties' Complaint also named Dynadot as a Defendant to the declaratory and injunctive relief causes of action.

19.    Dynadot is one of several Internet domain name registrars that are accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN"), a non-profit corporation originally chartered by the United States Department of Commerce to oversee a number of Internet-related tasks, including the registration of domain names.

20.    The "wikileaks.org" domain name is registered—in essence, permitted to function—by Dynadot.

21.    On February 15, 2008, less than ten days after this action was filed, the Court entered its Order Granting Permanent Injunction in the exact form proposed by the BJB Parties and Dynadot. Among other things, the permanent injunction required Dynadot, until further order of the Court, to

(1)    "immediately lock the wikileaks.org domain name to prevent transfer of the domain name to a different domain registrar, and . . . immediately disable the wikileaks.org domain name and account to prevent access to and any changes from being made to the domain name and account information";

(2)    "immediately disable the wikileaks.org domain name and account such that the optional privacy who-is service for the domain name and account remains turned off"; . . .

(3)    "immediately clear and remove all DNS hosting records for the wikileaks.org domain name and prevent the domain name from resolving to the wikileaks.org website or any other website or server other than a blank page . . . ."

22.    After entry of the permanent injunction, Dynadot disabled the wikileaks.org domain name and prevented the domain name from resolving to the Wikileaks website or any other website. In addition, on information and belief, Dynadot locked the wikileaks.org domain name to prevent transfer of the domain name to a different domain registrar.

23.    Because the permanent injunction hinders Intervenors' access to the Wikileaks website,

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   and to the documents and information contained thereon that are not the subject of this action, it

2   violates Intervenors' rights under the First Amendment to access information without government

3   interference.  In addition, the injunction violates Intervenors' due process rights under the First and

4   Fifth Amendments, because it was entered without participation by anyone representing the interests

5   of Intervenors or members of the public in retaining unhindered access to the Wikileaks website and

6   to the documents and information contained thereon that are not the subject of this litigation.

7        24.     There is an actual controversy between Intervenors, on the one hand, and the BJB

8   Parties and Dynadot, on the other hand, relating to the constitutionality of the Court's permanent

9   injunction.  The BJB Parties and Dynadot contend that the permanent injunction complies with the

10  First and Fifth Amendments of the United States Constitution, while Intervenors contend that it does

11  not.

12       25.     The Intervenors therefore request that the Court determine the parties' rights and duties

13  with respect to the permanent injunction, and declare that the Court's permanent injunction is over-

14  broad and violates the Intervenors' rights under the First and Fifth Amendments.

15                          **PRAYER FOR RELIEF**

16       WHEREFORE, Defendants and Cross-Complainants In Intervention pray that the Court:

17       (a)     Declare that the permanent injunction entered against Dynadot on February 15, 2008, is

18  overbroad and barred by the First and Fifth Amendments of the United States Constitution;

19       (b)     Permanently dissolve the permanent injunction entered against Dynadot on February 15,

20  2008; and

21

22

23

24

25

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1       (c)   Grant Intervenors such additional relief as the Court deems proper.

2  DATED: February __, 2008.

3                                        Respectfully,

4                                        STEVEN L. MAYER
                                        CHRISTOPHER KAO

5                                        SHAUDY DANAYE-ELMI
                                        HOWARD RICE NEMEROVSKI CANADY

6                                            FALK & RABKIN
                                        A Professional Corporation

7

8                                        ANN BRICK
                                        AMERICAN CIVIL LIBERTIES UNION

9                                           FOUNDATION OF NORTHERN
                                           CALIFORNIA, INC.

10                                     ADEN J. FINE
                                        AMERICAN CIVIL LIBERTIES UNION

11                                           FOUNDATION

12                                     CINDY A. COHN
                                        KURT OPSAHL

13                                       MATTHEW J. ZIMMERMAN
                                        ELECTRONIC FRONTIER FOUNDATION

14

15                                     By: _____
                                              STEVEN L. MAYER

16

17                                     Attorneys for Movants and Prospective Intervenors
                                     PROJECT ON GOVERNMENT OVERSIGHT *et al.*

18

19

20

21

22

23

24

25

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*