1  **MARTIN D. SINGER, ESQ. (BAR NO. 78166)**
   **WILLIAM J. BRIGGS, II, ESQ. (BAR NO. 144717)**
2  **EVAN N. SPIEGEL, ESQ. (BAR NO. 198071)**
   **LAVELY & SINGER PROFESSIONAL CORPORATION**
3  2049 Century Park East, Suite 2400
   Los Angeles, California 90067-2906
4  Telephone:  (310) 556-3501
   Facsimile: (310) 556-3615
5  E-mail: wbriggs@lavelysinger.com
   E-mail: espiegel@lavelysinger.com
6
   Attorneys for Plaintiffs
7  **BANK JULIUS BAER & CO. LTD and**
   **JULIUS BAER BANK AND TRUST CO. LTD**
8

9          **UNITED STATES DISTRICT COURT**

10       **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11           **SAN FRANCISCO DIVISION**

12  **BANK JULIUS BAER & CO.**              ) **CASE NO. CV08-0824 JSW**
    **LTD**, a Swiss entity; and **JULIUS**   ) **[Hon. Jeffrey S. White; CRTM 2]**
13  **BAER BANK AND TRUST CO.**             )
    **LTD**, a Cayman Islands entity,        ) **PLAINTIFFS' SUPPLEMENTAL**
14                                          ) **BRIEF IN SUPPORT OF**
                Plaintiffs,                 ) **APPLICATION FOR PRELIMINARY**
15                                          ) **INJUNCTION RE RESPONSE TO**
        v.                                  ) **THE REPORTERS COMMITTEE ET.**
16                                          ) **AL.'S PROPOSED AMICI CURIAE**
    **WIKILEAKS**, an entity of unknown     ) **BRIEF**
17  form, **WIKILEAKS.ORG**, an entity      )
    of unknown form; **DYNADOT**,           )
18  **LLC**, a California limited liability  ) [Filed Concurrently With: Declaration of
    corporation, and **DOES 1 through**     ) Evan Spiegel in Support Thereof]
19  **10**, inclusive,                       )
                                            )
20              Defendants.                  )
                                            ) DATE:   FEBRUARY 29, 2008
21  _____        ) TIME:    9:00 a.m.
                                              CTRM:   2, 17th FL
22

23

24

25

26  / / /

27  / / /

28  / / /

1

# **TABLE OF CONTENTS**

2

3                                                                            **Page**

4

5

6

I.      INTRODUCTION AND SUMMARY  . . . . . . . . . . . . . . . . . . . . .  1

II.     ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

        A.    THE COURT'S INJUNCTION PROTECTS THE
              FIRST AMENDMENT PRIVACY RIGHTS OF
              THE JB BANK CUSTOMERS . . . . . . . . . . . . . . . . . . . . . .  4

        B.    THE COMMUNICATIONS DECENCY ACT DOES NOT
              PROVIDE WIKILEAKS IMMUNITY . . . . . . . . . . . . . . . .  6

        C.    AMICI LACK STANDING TO ASK THE COURT TO
              MODIFY OR SET ASIDE THE STIPULATION AND
              PERMANENT INJUNCTION  . . . . . . . . . . . . . . . . . . . . .  10

III.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**<u>CASES</u>**                                                                 <u>Page</u>

*Aisenson v. American Broadcasting Co., Inc.*,
    220 Cal. App. 3d 146, 269 Cal. Rptr. 379 (Ct. App. 1990)  . . . . . . .  5

*Anthony v. Yahoo Inc.*,
    421 F.Supp.2d 1257 (N.D.Cal. 2006)  . . . . . . . . . . . . . . . . . .  7

*Briggs v. United States*,
    597 A.2d 370 (D.C. Ct. App. 1991)  . . . . . . . . . . . . . . . . . .  11

*Burrows v. Sup. Crt*,
    13 Cal.3d 238, 118 Cal. Rptr. 166 (1974) . . . . . . . . . . . . . . . . .  2, 4

*Carafano v. Metrosplash.com*,
    339 F.3d 1119 (9th Cir. 2003)  . . . . . . . . . . . . . . . . . . .  7, 8

*Carafano v. Metrosplash.com, Inc.*,
    207 F.Supp.2d 1055 (C.D.Cal 2002), aff'd on other grounds,
    339 F.3d 1119 (9th Cir.2003) . . . . . . . . . . . . . . . . . . .  8

*Diaz v. Oakland Tribune, Inc.*,
    139 Cal. App. 3d 118, 188 Cal. Rptr. 762 (1983) . . . . . . . . . . . . .  5

*Doe v. Attorney General*,
    941 F.2d 780 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . .  2, 4

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
    489 F.3d 921, 35 Media L. Rep. 1801 (9th Cir. 2007)  . . . . . . . . .  7, 9

*Ford Motor Company v. Lane*,
    67 F.Supp.2d 745 (E.D. Mich. 1999)  . . . . . . . . . . . . . . . . . .  2

*In re Crawford*,
    194 F.3d 954 (9th Cir. 1999)  . . . . . . . . . . . . . . . . . . .  4

*In re McClatchy Newspapers, Inc.*,
    288 F.3d 369 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . .  3

*In re Petition to Call Election*,
    517 N.E.2d 1188 (Ill. App. 1987) . . . . . . . . . . . . . . . . . .  11

*Lenox v. Brown*,
    181 N.W.2d 178 (Iowa 1970) . . . . . . . . . . . . . . . . . . .  4

*Lyons v. Lederle Labs.*,
    440 N.W.2d 769 (N.D. 1989) . . . . . . . . . . . . . . . . . . .  11

*Mid-Atlantic Power Supply Ass'n v. Pa. Public Utities Comm'n*,
    746 A.2d 1196, 1200 n.8 (Pa. 2000) . . . . . . . . . . . . . . . . . .  11

*Milohnich v. First National Bank of Miami Springs*,
    224 So.2d 759 (Fla.App. 1969) . . . . . . . . . . . . . . . . . .  4

*Newark Branch, N.A.A.C.P. v. Town of Harrison,*
    940 F.2d 792 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Oregon v. McDonald,*
    128 P. 835 (Or. 1912) . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Pennsylvania v. Cotto,*
    708 A.2d 806 (Pa. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Perfect 10, Inc. v. CCBill LLC,*
    488 F.3d 1102 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . .  7

*Procter & Gamble Co. v. Bankers Trust Co.,*
    78 F.3d 219 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . .  2

*Shulman v. Group W Productions, Inc.,*
    18 Cal.4th 200, 74 Cal.Rptr.2d 843 (1998) . . . . . . . . . . . . . . .  3

*United States v. Louisiana,*
    718 F. Supp. 525 (E.D. La. 1989) . . . . . . . . . . . . . . . . . . .  10

*Vermillion Parish Police Jury v. Williams,*
    824 So. 2d 466 (La. App. 2002) . . . . . . . . . . . . . . . . . . .  10

*Virgil v. Time, Inc.,*
    527 F.2d 1122 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . .  3

*Whalen v. Roe,*
    429 U.S. 589, 97 S.Ct. 869 (1977) . . . . . . . . . . . . . . . . . .  2, 4

## STATUTES

47 U.S.C. § 230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 8

iv

**PLAINTIFFS' SUPPL. BRIEF IN SUPPORT OF
PRELIM. INJ RE RESP. TO AN AMICI BRIEF**

1    Plaintiffs BANK JULIUS BAER & CO. LTD ("BJB") and JULIUS BAER

2    BANK AND TRUST CO. LTD ("JBBT") (collectively, "JB" and/or "Plaintiffs")

3    hereby respectfully submit this Supplemental Brief in Support of Plaintiffs'

4    Application for Preliminary Injunction re Response to Issues Raised in the Reporters

5    Committee for Freedom of the Press, et. al.'s, proposed Amici Curiae Brief, filed

6    February 26, 2008.

7                                    **I.**

8                           **INTRODUCTION**

9            Plaintiffs want to set the record straight.  This action has been brought

10    solely to prevent the unlawful dissemination of stolen bank records and personal

11    account information of its customers.  Many of those documents have also been

12    altered and forged.  This matter has nothing to do with censorship or prior restraint

13    of First Amendment rights.  It has everything to do with the protection of the

14    privacy rights of bank customers.

15            The key issue is whether a court may enjoin the public dissemination

16    of bank customers' stolen confidential financial information.  The answer is yes.

17    Contrary to the position of *Amici*, the issue in this case is not whether the court's

18    TRO is a prior restraint in violation of the First Amendment.  The plain and simple

19    truth is that the private bank records at issue in this case enjoy both federal and state

20    constitutional rights of privacy.  That constitutional interest - - the right to privacy

21    in financial records - - is in present danger of being lost due to the widespread public

22    dissemination of it.  And, the imminent threat to each individual whose bank account

23    information is displayed is real, not speculative, as reported by one of the Amici,

24    The Los Angeles Times.  (See accompanying declaration of Evan Spiegel ("Spiegel

25    Decl."), ¶6, Exh. "C" - sample copies of a few of the numerous articles published

26    by the Amici parties with regard to data security and identity theft).

27            The *Amici* further glosses over the fact that Wikileaks, Wikileaks.org

28    and the Does (collectively referred to as, "Wikileaks") posted stolen confidential

1  bank records of individuals. These friends of the court should be the first to

2  recognize that the First Amendment extends the right of privacy to an individual's

3  confidential financial affairs. *Valley Bank of Nevada v. Sup. Crt.*, 15 Cal.3d 652,

4  656, 125 Cal. Rptr. 553 (1975) (California constitutional right to privacy extends to

5  financial information); *Burrows v. Sup. Crt*, 13 Cal.3d 238, 243, 118 Cal. Rptr. 166

6  (1974); *see also Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869 (1977) (the

7  constitutional right to privacy includes the "individual interest in avoiding disclosure

8  of personal matters"); *Doe v. Attorney General*, 941 F.2d 780, 795 (9th Cir. 1991)

9  (recognizing that the right to privacy encompasses medical information).

10        Quite obviously there will be harm from the widespread dissemination

11  of private and confidential banking information, including account numbers,

12  personal identification numbers, account transactions and history, and account

13  balances. Wikileaks has laid bare a road map for the unsavory to engage in identity

14  theft and electronic theft of account balances. The legitimate business interest of JB

15  has been placed in jeopardy because its bank customers are now insecure about the

16  confidentiality of their finances given the widespread disclosure of sensitive bank

17  customer information. *Cf. Charles O. Bradley Trust v. Zenith Capital LLC.*, No.

18  C-04-2239 JSW, 2006 U.S. Dist. LEXIS 21671 (N.D. Cal. March 24, 2006).

19  Because a grave threat to the constitutional right to privacy is posed by Wikileaks

20  dissemination of confidential private banking information, this court was justified in

21  its issuance of a TRO against Wikileaks. *Compare Procter & Gamble Co. v.*

22  *Bankers Trust Co.*, 78 F.3d 219 (6th Cir. 1996) (publication of documents which

23  contain trade secrets or other confidential research, development or commercial

24  information did not pose a grave threat to a constitutional right sufficient to justify

25  the district court's injunctive orders) and *Ford Motor Company v. Lane*, 67

26  F.Supp.2d 745 (E.D. Mich. 1999) (trade secrets are not a constitutionally protected

27  right sufficient to justify an injunction restraining publication of those trade secrets).

28  / / /

1    The *Amici* simply miss the point of this court's temporary restraining

2  order. It is narrowly designed to protect the privacy interest of JB bank customers.

3  That type of order does not violate the First Amendment; rather, it embraces and

4  upholds the First Amendment right to privacy in this type of financial information.

5  Indeed, it is Wikileaks and by extension *Amici* who threaten to violate the First

6  Amendment rights of the JB bank customers. *Amici* appear to argue that First

7  Amendment privacy rights somehow take a backseat to those rights of the press.

8  There is no support for the notion that privacy rights are subordinate to those of the

9  press. However, there is support for the notion that when privacy rights are

10  threatened, the rights of the press may be subordinated to the privacy interest. *See*,

11  *e.g.*, *Shulman v. Group W Productions, Inc.*, 18 Cal.4th 200, 74 Cal.Rptr.2d 843

12  (1998) (disclosure of private and confidential information such as this cannot be of

13  any legitimate public concern and the disclosure of which would be highly offensive

14  to a reasonable person and would thereby violate a person's right of privacy); *Virgil*

15  *v. Time, Inc.*, 527 F.2d 1122, 1128 (9th Cir. 1975) (If the public has no right to

16  know, can it yet be said that the press has a constitutional right to inquire and to

17  inform? In our view it cannot); *In re McClatchy Newspapers, Inc.*, 288 F.3d 369,

18  374 (9th Cir. 2002) (the need to protect individual privacy rights may rise to the

19  level of a substantial governmental interest and defeats right of access claims).

20    In sum, this court's order was specifically drawn to prevent further

21  harm to the constitutional rights of the JB bank customers. This court's order is not

22  an attack on a free press. Instead, it is a shield against an assault of the First

23  Amendment rights of the JB bank customers.[1]

24

25  [1]    This brief does *not* attempt to address all of the points raised by the Amici Curiae The Reporters Committee for Freedom of the Press et. al. because of time

26  constraints. Instead, it focuses on the core issue presented to this Court. Namely, whether Wikileaks' posting of stolen confidential bank and financial

27  information constitutes a grave threat to the constitutional privacy rights of the JB bank customers sufficient to justify issuance of an injunction. (Spiegel Decl., ¶2-

28  3). This brief also briefly addresses the fact that Wikileaks is not protected by any immunity, and that the Amici Curiae lack standing to raise new issues or to seek

**II.**

**ARGUMENT**

**A.    THE COURT'S INJUNCTION PROTECTS THE FIRST AMENDMENT PRIVACY RIGHTS OF THE JB BANK CUSTOMERS.**

*Valley Bank of Nevada v. Superior Court*, 15 Cal.3d 652, 658, 125 Cal. Rptr. 553 (1975), explains that the right of privacy is an "inalienable right" expressly protected by force of constitutional mandate. (Cal. Const., Art. I, § 1). "[T]he right of privacy extends to one's confidential financial affairs as well as to the details of one's personal life." *Valley Bank of Nevada*, 15 Cal.3d at 658.

The California Supreme Court has further explained that there is a "reasonable expectation of privacy" which a bank customer entertains with respect to financial information disclosed to his bank. *Burrows v. Sup. Crt.*, 13 Cal.3d 238, 118 Cal.Rptr. 166 (1974).  The court noted that it is the general rule in other jurisdictions that a bank impliedly agrees not to divulge confidential information without the customer's consent unless compelled by court order. *Valley Bank of Nevada*, 15 Cal.3d at 657 *citing*, *First National Bank in Lenox v. Brown*, 181 N.W.2d 178, 183 (Iowa 1970); *Milohnich v. First National Bank of Miami Springs*, 224 So.2d 759, 761 (Fla.App. 1969).

The Ninth Circuit has explained that the First Amendment encompass a right of privacy, whose contours include within it a right to make personal decisions and a right to keep personal matters private.  *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999).   It is also a generally accepted notion that the constitutional right to privacy includes the "individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599, 97 S. Ct. 869 (1977); *see also Doe v. Attorney General*, 941 F.2d 780, 795 (9th Cir. 1991) (recognizing that

to manage the case through motion practice, as set forth herein.

1  the right to privacy encompasses medical information).[2]

2  It is beyond dispute that the pilfered and altered documents which have

3  been disseminated on the Wikileaks website contain private personal financial

4  information.  That type of financial information is protected by the First Amendment

5  right of privacy.  Publication of this financial information threatens core interest

6  protected by the First Amendment.  JB has therefore presented this court with a

7  critical constitutional right sufficient to justify the issuance of an injunction.

8  *Amici* argue that JB must establish that "(1) the activity restrained poses

9  either a clear and present danger or a serious and imminent threat to a protected

10  competing interest, (2) the order is narrowly drawn, and (3) less restrictive

11  alternatives are not available." (Amici brief, page 13, lines 4 to 8.)  Yet, *Amici*

12  conveniently ignores the very first element of their own test.  Application of this test

13  to these facts reveal that JB exceeds the required threshold.

14  There is a First Amendment right to privacy at stake in this case.  The

15  privacy rights of individual bank customers are clearly in danger because of the

16  unabated widespread disclosure of these personal matters.  That disclosure of

17  confidential banking affairs is a serious threat to the bank customers reasonable

18  expectation of privacy as well as the real danger attributable to identity theft and

19

20  _____

[2]  Indeed, California recognizes a tort cause of action for violation of the
21  right to privacy. *See Diaz v. Oakland Tribune, Inc.*, 139 Cal. App. 3d 118, 188
Cal. Rptr. 762 (1983). One of the distinct torts included under the rubric of right
22  to privacy is public disclosure of private facts. *Diaz*, 139 Cal.App. 3d at 126,
188 Cal. Rptr. at 767. Elements of the tort of public disclosure of private facts
23  are (1) public disclosure (2) of a private fact (3) which would be offensive and
objectionable to the reasonable person and (4) which is not of legitimate public
24  concern. *Diaz*, 139 Cal.App.3d at 126, 188 Cal.Rptr. at 768. *See Aisenson v.
American Broadcasting Co., Inc.*, 220 Cal. App. 3d 146, 269 Cal. Rptr. 379,
25  387 (Ct. App. 1990). Here, JB meets all of the requisite elements of this
cognizable tort. There has been a public disclosure of private and confidential
26  financial bank information, which is offensive and objectionable to a reasonable
person, and which is not of legitimate public concern. As set forth in JB's
27  moving papers, no legitimate member of the media published the personal data
and detailed bank account information. Yet, Wikileaks brazenly published this
28  type of private information regardless of the harm that would befall the account
holders.

1   electronic theft of their assets.

2          Second, the court's TRO was narrowly drawn against Wikileaks.  That

3   order merely prohibits Wikileaks from further dissemination of this private and

4   confidential financial information.    Third, there simply is no less restrictive

5   alternative available.    *Amici* argues that simple redaction of the offending

6   information would suffice.  Yet, Wikileaks hides behind anonymity to escape the

7   orders of this court.  Absent compliance with the current order there is no guarantee

8   that Wikileaks would even comply with an order to redact the offending information.

9   Thus, there is no realistic less restrictive alternative available to JB.  All of these

10  factors therefore support the court's issuance of the injunction.

11         It is therefore appropriate for the court to preliminary enjoin Wikileaks.

12

13  **B.     THE COMMUNICATIONS DECENCY ACT DOES NOT PROVIDE**

14         **WIKILEAKS IMMUNITY.**

15         An "interactive computer service" is <u>not</u> entitled to Section 230

16  immunity when the person or entity in question is also an "information content

17  provider" with respect to any portion of the information or conduct at issue.  Section

18  230 of the Communications Decency Act (the "CDA") provides protection for

19  "online service providers" from action against them for the speech actions solely of

20  <u>others</u>.  It does not, however, provide immunity for one's own actions and conduct

21  if that defendant is involved in the process of creation, development or publication

22  of any of the harmful or illegal content (*i.e.*, an "information content provider"),

23  regardless of whether or not the defendant could also be considered an online service

24  provider.[3] 47 U.S.C. § 230(f)(3).

25  _____

26  [3]  The immunity created by § 230(c)(1) is not absolute and is limited, including
    by § 230(f)(3), which provides that "content providers" are not immune, and by

27  § 230(e)(2), which requires the court to construe Section 230(c)(1) in a manner
    that would neither limit or expand any law pertaining to intellectual property.

28  Thus, the Ninth Circuit has held that the CDA does not clothe service providers
    in immunity if they provide content at issue nor does it provide immunity from

1    In *MCW v. badbusinessbureau.com*, 2004 WL 833595, *2 (N.D.Tex.

2    2004) (*unpublished*) the court rejected a defendant's motion to dismiss on grounds

3    of Section 230 immunity. The court determined that plaintiff's allegations that the

4    defendants wrote disparaging report titles and heading, and that the defendants wrote

5    disparaging editorial messages about plaintiff, rendered the defendants information

6    content providers.

7    *Hy Cite Corp. v. badbusinessbureau.com*, 418 F.Supp.2d 1142, 1149

8    (D. Ariz. 2005) is also instructive. In *Hy Cite Corp.*, the Plaintiff stated, among

9    other claims, a claim for common law unfair competition. It was alleged that

10    Defendants are "responsible… for the creation or development of information

11    provided by individuals … in response to Defendants' solicitation" and could be

12    considered an "information content provider" under Section 230, and thus, not

13    immune for its conduct. Based on those allegations the court determined that

14    Defendants are not entitled to immunity under the CDA at this stage of the case.

15    *Carafano v. Metrosplash.com*, 339 F.3d 1119, 1123 (9th Cir. 2003)

16    holds that "an 'interactive computer service' qualifies for immunity so long as it

17    does not also function as an 'information content provider' for the portion of the

18    statement or publication at issue." *Anthony v. Yahoo Inc.*, 421 F.Supp.2d 1257,

19    1262-63 (N.D.Cal. 2006) found that unfair trade practice claims were not barred by

20    CDA's publisher immunity provision where it was alleged that the defendant created

21    the tortious content. See also, Federal Rules of Appellate Procedure, Rule 32.1(a);

22    *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 489 F.3d

23    921, 35 Media L. Rep. 1801 (9th Cir. 2007) (*depublished* and *rehr'g granted en*

24    *banc October 2007*) (Ninth Circuit reasoned that, to the extent that an operator was

25    responsible, in whole or in part, for creating or developing information, it is an

26    "information content provider" and not entitled to CDA immunity).

27

28    laws pertaining to intellectual property. See, *Perfect 10, Inc. v. CCBill LLC*, 488
F.3d 1102, 1118 (9th Cir. 2007) (citations omitted).

1    A content provider is "any person or entity that is responsible, in whole

2  or in part, for the creation or development of information provided through the

3  Internet." 47 U.S.C. § 230(f)(3).  In other words, if the defendants only passively

4  publish information provided by others, the CDA may protect it from liability that

5  would otherwise attach under state or federal law as a result of such publication.

6  But, if they are responsible, in whole or in part, for soliciting, creating or

7  developing or publishing the specific information, it becomes a content provider and

8  is not entitled to CDA immunity.  As the Ninth Circuit explained in *Carafano*, "an

9  'interactive computer service' qualifies for immunity so long as it does not also

10  function as an 'information content provider' for the portion of the statement or

11  publication at issue." 339 F.3d at 1123.  "The distinction between merely publishing

12  information provided by a third-party as an interactive computer service and actually

13  creating or developing any of the information posted as an information content

14  provider is critical." *MCW, Inc. v. Badbusinessbureau.com LLC*, 2004 WL 833595,

15  *8 (N.D.Tex.2004), citing *Carafano v. Metrosplash.com, Inc.*, 207 F.Supp.2d

16  1055, 1067 (C.D.Cal 2002), *aff'd on other grounds*, 339 F.3d 1119 (9th Cir.2003).

17    *Carafano* differs from this case in at least one significant respect:  The

18  malicious prankster in *Carafano* provided information that was not specifically

19  solicited by the operator of the website.  The website sought information about the

20  individual posting the information, not about unwitting third parties.  Nothing in the

21  questions the dating service in *Carafano* asked, suggested, encouraged or solicited

22  posting the profile of another person, and the website's policies prohibited altogether

23  the posting of last names and contact information. *Id*. at 1121. While *Carafano* is

24  written in broad terms, the Ninth Circuit has itself acknowledged that it should be

25  read in light of its facts. *Carafano* provided CDA immunity for information posted

26  by a third party that was not, in any sense, created or developed by the website

27  operator-indeed, that was provided despite the website's rules and policies. *Id*.

28  *Carafano* and like cases do not control in a situation where defamatory, private or

1 | otherwise tortious or unlawful information was provided by users in direct response

2 | to questions and prompts from the operator of the website.[4]

3 |       The Complaint and Application for TRO and OSC re Preliminary

4 | Injunction very clearly allege and provide ample supporting exhibit evidence that the

5 | Defendants did not merely provide an online forum upon which, without their

6 | involvement, a third-party posted harmful speech or engaged in harmful conduct.

7 | In this matter, a third-party did not solely himself post harmful speech, nor even the

8 | stolen content, the Wikileaks Defendants did so. (Spiegel Decl., ¶5, Exh. "A" -

9 | Wikileaks website statement admission that it is actively engaged in the publication,

10 | stating that "Wikileaks will keep on publishing" the stolen property and other

11 | documents; Exh. "B" - an example, from many, of content and extensive edits

12 | provided by Wikileaks; See also, Application for TRO, Documents Filed Under

13 | Seal, Exhs. "A" through "O" - further examples of content provided by Wikileaks).

14 | A third-party, upon solicitation and direct request from the Wikileaks Defendants for

---

[4]   For example of an applicable hypothetical (but not cited as precedent), in the *depublished* opinion of the Ninth Circuit in *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 489 F.3d 921, 928 (9th Cir. 2007), the Court provided the following analogous hypothetical and evaluation, under which it reasoned that CDA immunity might not apply:

"Imagine, for example, www. harrassthem. com with the slogan 'Don't Get Mad, Get Even.' A visitor to this website would be encouraged to provide private, sensitive and/or defamatory information about others-all to be posted online for a fee. To post the information, the individual would be invited to answer questions about the target's name, addresses, phone numbers, social security number, credit cards, bank accounts, mother's maiden name, sexual orientation, drinking habits and the like. In addition, the website would encourage the poster to provide dirt on the victim, with instructions that the information need not be confirmed, but could be based on rumor, conjecture or fabrication. ... It is not clear to us that the operator of this hypothetical website would be protected by the logic of *Carafano*. The date match website in *Carafano* had no involvement in the creation and development of the defamatory and private information; the hypothetical operator of harrassthem.com would. By providing a forum designed to publish sensitive and defamatory information, and suggesting the type of information that might be disclosed to best harass and endanger the targets, this website operator might well be held responsible for creating and developing the tortious information. *Carafano* did not consider whether the CDA protected such websites, and we do not read that opinion as granting CDA immunity to those who actively encourage, solicit and profit from the tortious and unlawful communications of others."

1   "leaked" confidential documents, provided "leaked" stolen confidential documents.

2   The Wikileaks Defendants received the stolen confidential bank records and data.

3   Wikileaks than posted these legally protected stolen materials on their own website,

4   and themselves wrote and published countless articles, summaries and other

5   information which included and repeated and summarized the various stolen

6   protected consumer records.  This is a far cry from the case of a third-party writing

7   original harmful speech on an open message or forum board made available by an

8   online service provider for third-party use.   The Wikileaks Defendants are

9   "information content providers," or at least co-providers, under Section 230, and

10  thus, not immune for its own tortious and unlawful conduct.

11      Plaintiffs have alleged more than sufficient facts and provided ample evidence

12  in this matter that they have a strong likelihood of success on the merits of their

13  various claims for relief, including with regard to any potential defenses by the

14  Defendants of which they have not themselves advanced or asserted.

15

16  **C.    AMICI LACK STANDING TO ASK THE COURT TO MODIFY OR**

17  **SET ASIDE THE STIPULATION AND PERMANENT INJUNCTION.**

18      "Lacking party status, an amicus has no right to review by appeal of any

19  decision affecting its identified substantive interests," including review of

20  constitutional issues.  *Newark Branch, N.A.A.C.P. v. Town of Harrison*, 940 F.2d

21  792, 808 (3d Cir. 1991) (brackets omitted) (quoting *Newport News Shipbuilding and*

22  *Drydock Co. v. Peninsula Shipbuilders Ass'n*, 646 F.2d 117, 122 (4th Cir. 1981)).

23  An amicus curiae "lacks standing to prosecute independently any rehearing or

24  appeal." *United States v. Louisiana*, 718 F. Supp. 525, 528 (E.D. La. 1989).  State

25  courts are in agreement that "relief beyond that which is sought by the parties cannot

26  be requested by amicus curiae." *Vermillion Parish Police Jury v. Williams*, 824 So.

27  2d 466, 470 (La. App. 2002).  An amicus has "no control over the litigation and no

28  right to institute any proceedings therein; *he must accept the case before the court*

1 *with the issues made by the parties."  Pennsylvania v. Cotto*, 708 A.2d 806, 808

2 (Pa. 1998) (emphasis original).  Decisions have held that "[m]otion practice by *amici*

3 is not permitted," and that a "trial court was not authorized . . . to permit amici

4 curiae to file a motion to dismiss as would a litigant before the court." *In re Petition*

5 *to Call Election*, 517 N.E.2d 1188, 1190 (Ill. App. 1987); *see Mid-Atlantic Power*

6 *Supply Ass'n v. Pa. Public Utities Comm'n*, 746 A.2d 1196, 1200 n.8 (Pa. 2000)

7 (holding that amici have no right to institute proceedings in the court.).  An amicus

8 has no standing in court, and allowing an amicus to "seek to widen the issues raised

9 by the parties" is inappropriate. *Lyons v. Lederle Labs.*, 440 N.W.2d 769, 770 &

10 n.2 (N.D. 1989).  The amicus must "take the case as he finds it." *Briggs v. United*

11 *States*, 597 A.2d 370, 373 (D.C. Ct. App. 1991).  In fact, courts have long held:

12 > An amicus curiae can neither take upon himself the management of the

13 > cause as counsel; nor file a demurrer; nor take exceptions to the ruling

14 > of the court; . . . nor file a petition for a rehearing.

15 *Oregon v. McDonald*, 128 P. 835, 837 (Or. 1912).

16     In this matter the *Amici*, as well as other third-parties who have sought leave

17 to intervene and/or file amici curiae briefs,[5] improperly seek to initiate legal

18 proceedings, request additional relief, set-aside stipulated injunctive orders between

19 the parties, assert affirmative defenses and raise issues not raised by the parties, and

20 engage in motion practice.  The amicus curiae lack standing other than to, at most,

21 and only if granted leave of the Court (but which Plaintiffs' oppose), to provide

22 briefing on the legal issues raised by the parties.  The amicus curiae cannot attack,

23 nor appeal, nor ask the court to modify or set aside the stipulation and permanent

24 injunction.  The Court should therefore deny amicus curiae's requests and disregard

25 any pleadings and issues other than the legal issues specifically raised by the parties.

26

27

28 [5] Which, due to time constraints, the proposed other third-party briefs and motions are not specifically addressed in this Supplemental Brief.

# III.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court issue a Preliminary Injunction in the form set forth in the Amended [Proposed] Preliminary Injunction, and for such other alternative and further relief as the Court may deem to be just and appropriate.

Respectfully submitted,

DATED: February 27, 2008

LAVELY & SINGER
PROFESSIONAL CORPORATION
MARTIN D. SINGER
WILLIAM J. BRIGGS, II
EVAN N. SPIEGEL

/s/ William J. Briggs, II

By:_____
WILLIAM J. BRIGGS, II
Attorneys for Plaintiffs BANK JULIUS
BAER & CO. LTD and JULIUS BAER
BANK AND TRUST CO. LTD