1  **MARTIN D. SINGER, ESQ. (BAR NO. 78166)**
**WILLIAM J. BRIGGS, II, ESQ. (BAR NO. 144717)**
2  **EVAN N. SPIEGEL, ESQ. (BAR NO. 198071)**
**LAVELY & SINGER PROFESSIONAL CORPORATION**
3  2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
4  Telephone:  (310) 556-3501
Facsimile: (310) 556-3615
5  E-mail: wbriggs@lavelysinger.com
E-mail: espiegel@lavelysinger.com
6
Attorneys for Plaintiffs
7  **BANK JULIUS BAER & CO. LTD and**
**JULIUS BAER BANK AND TRUST CO. LTD**
8

9              **UNITED STATES DISTRICT COURT**

10         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11               **SAN FRANCISCO DIVISION**

12  **BANK JULIUS BAER & CO.**                )   **CASE NO. CV08-0824 JSW**
**LTD**, a Swiss entity; and **JULIUS**       )   **[Hon. Jeffrey S. White; CRTM 2]**
13  **BAER BANK AND TRUST CO.**               )
**LTD**, a Cayman Islands entity,            )
14                                            )   **PLAINTIFFS' BRIEF IN OPPOSITION**
              Plaintiffs,                     )   **TO MULTIPLE APPLICATIONS AND**
15                                            )   **MOTIONS BY PROPOSED AMICI**
       v.                                     )   **AND/OR REQUESTS TO INTERVENE**
16                                            )
**WIKILEAKS**, an entity of unknown )
17  form, **WIKILEAKS.ORG**, an entity )
of unknown form; **DYNADOT,**                )
18  **LLC**, a California limited liability    )   DATE:   Submission
corporation, and **DOES 1 through**          )   TIME:   Submission
19  **10**, inclusive,                         )   CTRM:   2, 17th FL
                                              )
20            Defendants.                      )
                                              )
21  _____           )

22

23

24

25

26  / / /

27  / / /

28  / / /

1  Plaintiffs Bank Julius Baer & Co. Ltd's ("BJB") and Julius Baer Bank and

2  Trust Co. Ltd's ("JBBT") (collectively, "Plaintiffs") hereby respectfully submit the

3  following Opposition Brief to the multiple applications by proposed *Amici Curiae*

4  and requests to intervene filed with the Court on February 26, 2008.

5  **<u>MEMORANDUM OF POINTS & AUTHORITIES</u>**

6  **I.**

7  **<u>INTRODUCTION</u>**

8  The applications by proposed *Amici Curiae* and requests to intervene are, in

9  whole or in part, not timely before the court, violate the Court's Standing Order, fail

10  to comply with the Court's briefing schedule set forth in its TRO and OSC re

11  Preliminary Injunction, fail to comply with Federal and Local Rules with regard to

12  notice requirements, fail to show good cause for their failures, and, as otherwise set

13  forth below, are improper and should not be considered by the Court.

14  As of the time of this Notice, the Amici-Intervenor Parties have submitted the

15  following applications and motions to the Court, filed on February 26, 2007:

16  (i)  Application to Appear as Prospective Intervenors Or, in the

17  Alternative, *Amici Curiae* of Prospective Intervenors Project on

18  Government Oversight, the American Civil Liberties Union, the

19  American Civil Liberties Union Foundation, the Electronic Frontier

20  Foundation and Jordan McCorkle (the parties are referred to herein as

21  "Project on Government Oversight"); Motion to Intervene; and related

22  filings (collectively, the "Project on Government Oversight

23  Application");

24  (ii)  Motion for Leave to File Brief of *Amici Curiae* of The Reporters

25  Committee for Freedom of the Press, The American Society of

26  Newspaper Editors, The Associated Press, Citizen Media Law Project,

27  The E.W. Scripps Co, Gannett Co., Inc., The Hearst Corporation, The

28  Los Angeles Times, National Newspaper Association, Newspaper

1  Association of America, Radio-Television News Directors Association,
2  and The Society of Professional Journalists (the parties are referred to
3  herein as "The Reporters Committee"); Brief of Amici; and related
4  filings (collectively, the "The Reporters Committee Motion"); and

5  (iii)  Motion to Intervene as Defendants or, in the Alternative, to Appear as
6  *Amici Curiae* of California First Amendment Coalition and Public
7  Citizen (the parties are referred to herein as "Public Citizen"); Motion
8  to Dismiss; Brief in Opposition to Injunctive Relief and In support of
9  Dismissal; Motion for Administrative Relief; and related filings (the
10  "Public Citizen Motion").

11  Project on Government Oversight, The Reporters Committee and Public Citizen are
12  collectively referred to as, the "Amici-Intervenor Parties". The Project on
13  Government Oversight Application, The Reporters Committee Motion and the Public
14  Citizen Motion are sometimes collectively referred to as, the "Amici-Intervenor
15  Parties' Applications".

16  **II.**

17  **ARGUMENT**

18  (1)  The Amici-Intervenor Parties' Applications violate the Court's order
19  with regard to the briefing schedule set forth in its TRO and OSC re Preliminary
20  Injunction (the "TRO and OSC"). The TRO and OSC ordered that "Any Opposition
21  papers shall be served and filed by 12:00 p.m. on February 20, 2008" (emphasis
22  added). As of February 25, 2008, no opposition papers by the defendants or any
23  third-parties had been filed and/or served. The Court has not granted relief from its
24  order as set forth in TRO and OSC, and none of the Amici-Intervenor Parties set
25  forth good cause for disregard of the Court's TRO and OSC setting forth the briefing
26  schedule. As evident by the vast press coverage and press reports related to this
27  matter, all of the Amici-Intervenor Parties were aware of this case well prior to the
28  opposition papers deadline and could have timely filed an opposition had they chosen

1    to do so. So from that stand point, the Court should simply disregard all the Amici-

2    Intervenor Parties' Applications because they are violative of the Court's TRO and

3    OSC and good cause has not been show to disregard the briefing order.

4

5        (2)    The Amici-Intervenor Parties' Applications violate the Court's Civil

6    Standing Orders ("Standing Orders"). Pursuant to the Standing Orders, counsel are

7    expected to consult and comply with all provisions of the Local Rules and the

8    Federal Rules relating to motions, briefs, … and all other matters, unless specifically

9    superceded by these Standing Orders." The Standing Orders further provide that

10   "Any failure to comply with any of these rules and orders may be deemed sufficient

11   grounds for monetary sanctions, dismissal … or other appropriate sanctions." The

12   Amici-Intervenor Parties' Applications fail to comply with the Court's Standing

13   Order with regard to "Scheduling Days" and noticing of a motion. The Court has

14   not granted relief from its Standing Order and none of the Amici set forth good

15   cause for disregard of the Court's Standing Order relating to motions, briefs, and

16   with regard to scheduling. So from that stand point, the Court should simply

17   disregard all the amici briefs because they are violative of the Court's Standing

18   Order and good cause has not been show to disregard the Standing Order.

19

20       (3)    To the extent that any of the Amici-Intervenor Parties argue that

21   the TRO and OSC and/or the [Proposed] Preliminary Injunction is a "Prior

22   Restraint," Plaintiffs refer the Court to the Supplemental Brief filed by Plaintiffs,

23   dated February 27, 2008, that fully addresses that issue.

24

25       (4)    To the extent that any of the Amici-Intervenor Parties seek an

26   action not sought by the parties (for example, the Motion to Dismiss filed by Public

27   Citizen, or requests to modify or set aside the Permanent Injunction entered pursuant

28   to a Stipulation between represented parties, or the advancement of purported

affirmative defenses not advanced by the parties themselves), their motions, applications and proposed Amici briefs are improper.  An amicus curiae "lacks standing to prosecute independently any rehearing or appeal." *United States v. Louisiana*, 718 F. Supp. 525, 528 (E.D. La. 1989).  State courts are in agreement that "relief beyond that which is sought by the parties cannot be requested by amicus curiae." *Vermillion Parish Police Jury v. Williams*, 824 So. 2d 466, 470 (La. App. 2002).  An amicus has "no control over the litigation and no right to institute any proceedings therein; *he must accept the case before the court with the issues made by the parties.*" *Pennsylvania v. Cotto*, 708 A.2d 806, 808 (Pa. 1998) (emphasis original).  Decisions have held that "[m]otion practice by *amici* is not permitted," and that a "trial court was not authorized . . . to permit amici curiae to file a motion to dismiss as would a litigant before the court." *In re Petition to Call Election*, 517 N.E.2d 1188, 1190 (Ill. App. 1987); *see Mid-Atlantic Power Supply Ass'n v. Pa. Public Utities Comm'n*, 746 A.2d 1196, 1200 n.8 (Pa. 2000) (holding that amici have no right to institute proceedings in the court.).  An amicus has no standing in court, and allowing an amicus to "seek to widen the issues raised by the parties" is inappropriate. *Lyons v. Lederle Labs.*, 440 N.W.2d 769, 770 & n.2 (N.D. 1989).  The amicus must "take the case as he finds it." *Briggs v. United States*, 597 A.2d 370, 373 (D.C. Ct. App. 1991).  In fact, courts have long held:

> An amicus curiae can neither take upon himself the management of the cause as counsel; nor file a demurrer; nor take exceptions to the ruling of the court; . . . nor file a petition for a rehearing.

*Oregon v. McDonald*, 128 P. 835, 837 (Or. 1912).

(5)    None of the proposed Amici-Intervenor Parties have sought by way of ex parte application an Order Shortening Time for Briefing with respect to their proposed Amici briefs or with respect to their requests to be heard at the hearing on the TRO and OSC in order to  afford Plaintiffs adequate opportunity and

1    time to fully brief the Court with respect to all of the issues raised in the multiple

2    Amici-Intervenor Parties' Applications and, therefore, it is unduly prejudicial to the

3    Plaintiffs to consider these amici briefs, applications and motions.[1]

4

5    (6)    To the extent that a motion has been filed by any of the Amici-

6    Intervenor Parties, there has been no compliance with Federal Rules of Civil

7    Procedure ("FRCP"), nor the Local Rules, regarding proper notice.  Any motions,

8    "except as otherwise ordered or permitted by the assigned Judge or these Local

9    Rules, … , all motions must be filed, served and noticed in writing on the motion

10    calendar of the assigned Judge for hearing not less than 35 days after service of the

11    motion." ND L.R. 7-2(a).  The Amici-Intervenor Parties' Applications were filed

12    without an Order Shortening Time, nor even an ex parte motion for an order

13    shortening time.  The Amici-Intervenor Parties' Applications fail to conform with

14    provisions of the Local Rules 7-2 and 7-3 relating to motions and briefs and noticing

15    of a motion.  The Amici-Intervenor Parties failed to provide proper notice.

16

17    (7)    Plaintiffs have alleged and have established clear and credible

18    evidence of subject matter jurisdiction on the basis of diversity jurisdiction pursuant

19    to 28 U.S.C. § 1332(a)(2).  Diversity jurisdiction exists where a suit is between

20    citizens of a foreign nation and citizens of the United States.  *See* 28 U.S.C.

21    § 1332(a)(2).  The citizenship of the parties *at the time the complaint is filed*

22    determines the existence of diversity jurisdiction.  *Morongo Band of Mission Indians*

23    *v. Cal. State Bd. of Equalization,* 858 F.2d 1376, 1380 (9th Cir. 1988); *LeBlanc v.*

24

---

25    [1]  Plaintiffs have, prior to the filing of this Opposition, entered into a Stipulated
26    Request for an Order Shortening Time with respect to a hearing and briefing
      schedule for Project on Government Oversight's Application (the "Stipulation").
      The Stipulation specifies that it shall not affect the timing of the TRO and OSC
27    hearing.  Notwithstanding the Stipulation, Plaintiffs oppose, as untimely and
      improper, Project on Government's Application to Appear as Prospective
28    Intervenors at the TRO and OSC hearing and oppose its Motion to Intervene.

1   *Cleveland*, 248 F.3d 95, 100 (2d Cir. 2001).  Plaintiffs, a Swiss entity and Cayman

2   Islands entity, are subjects of a foreign state. (See, Complaint, ¶¶3, 5, 6, Exh. "B").

3   In the Complaint, Plaintiffs allege and attach as Exhibit "B" evidence (including

4   party admissions) that, at the time of filing the action, <u>all</u> of the defendants were

5   citizens of and located in California.   Dynadot is a California limited liability

6   company, with none of its members citizens of a foreign state. (See, Complaint,

7   ¶¶3, 9).   In addition, the self-listed registrant/owner of wikileaks.org and the

8   Wikileaks' website was a John Shipton with an address of San Mateo, California.

9   (See, Complaint, ¶¶3, 7, 8, Exh. "B").  Whois records list that, prior to the listing

10  of Shipton's name, the domain name was registered to a citizen of New York, a John

11  Young.   There is no credible evidence that anyone else, other than a citizen of

12  California or New York, is an owner, partner or member of wikileaks.org and the

13  Wikileaks' Website.  The fact that complicit agents of and/or advisors to Wikileaks,

14  who are not defendants, may be foreign citizens does not negate diversity

15  jurisdiction.  Further, a change of John Shipton's self-listed address after the time

16  of filing of the action, in an apparent effort to avoid jurisdiction of the Court, does

17  not negate diversity jurisdiction.   Plaintiffs have met their burden to establish

18  diversity jurisdiction at the time of filing.

19

20          (8)     To the extent that any of the Amici-Intervenor Parties seek leave

21  to file an Amicus brief, they fail to show good cause and/or to satisfy the necessary

22  requirements.  Under Rule 29 of the Federal Rules of Appellate Procedure, a party

23  seeking leave to file an amicus brief must state: (i) the movant's interest, and (ii) the

24  reason why an amicus brief is desirable and why the matters asserted are relevant

25  to the disposition of the case.   Fed. R. App. Pro. 29(b)(1)–(2); *see Ryan v.*

26  *Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997).  Under

27  modern case law, an amicus brief is generally only desirable where (i) a party is not

28  represented competently or is not represented at all, (ii) the amicus has an interest

1    in some other case that maybe affected by the present case (though not enough to

2    entitle the amicus to intervene and become a party), or (iii) when the amicus has

3    unique information or a perspective that can help the court beyond the help that the

4    parties are able to provide.  *See In re Heath*, 331 B.R. 424, 430 (9th Cir. 2005);

5    *Nat'l Org. for Women v. Scheidler*, 223 F.3d 615, 617 (7th Cir. 2000); *Ryan*, 125

6    F.3d at 1063 (citing *Miller-Wohl Co. v. Comm'r of Labor and Indus.*, 694 F.2d 203

7    (9th Cir. 1982); *JPMorgan Chase Bank, N.A. v. Fletcher*, 2008 WL 73233 *1 (N.D.

8    Okla. 2008).  Upon satisfying the above, leave to file an amicus brief is still within

9    the discretion of the court.  *United States v. Michigan*, 940 F.2d 143, 165 (6th Cir.

10   1991).  This case does not present one of the three situations in which leave to file

11   an amicus brief should be granted.

12        To begin with, this is not a case in which a party is "*not represented*

13   *competently*" or "*not represented at all*."  *Ryan*, 125 F.3d at 1063 (emphasis added).

14   To the contrary, Wikileaks most certainly has competent representation in this

15   matter.  In correspondence with counsel for JB after the Court made its ruling,

16   Julian Assange (a contact for Wikileaks, as represented to the Court by Julie

17   Turner), stated "I don't know why you have sent this to me" and that JB should

18   "please send Wikileaks.org related legal correspondence to Roger Myers who I

19   understand is acting on behalf of the domain." (Spiegel Decl., Exh. "B" - an e-mail

20   dated Feb 24, 2008 from Assange to Spiegel).  Two days later, Mr. Assange again

21   stated, "Please send [correspondence] to 'Roger Myers'

22   < Roger.Myers@hro.com>  who I understand is representing the rights of the

23   domain holder in this matter." (Spiegel Decl., Exh. "C" - an e-mail dated Feb 26,

24   2008 from Assange to Spiegel).  The biography of Roger Myers, a respected media

25   and 1st Amendment attorney, on his law firm's website states that his clients include

26   "publishers (of newspapers, magazines, and books), broadcast media (both television

27   and radio networks and their affiliates), and online media." (Spiegel Decl., Exh.

28   "D" - printout of the Holme Roberts & Owen LLP's Biography page for Mr.

7  **PLAINTIFFS' BRIEF IN OPPOSITION TO APPLS
OF PROP. AMICI AND REQ'S TO INTERVENE**

1    Myers).  Mr. Myer's biography also states he is a "Northern California Super

2    Lawyer" who "is a frequent speaker at conferences addressing media, internet and

3    intellectual property issues," and that he "serves as newsroom general outside

4    counsel to more than 20 newspapers … and as general outside counsel for Business

5    Wire, Inc." (*Id.*).  Not coincidentally, Mr. Myers's biography states that he is the

6    "General Counsel" of "<u>California First Amendment Coalition</u>," which, of course,

7    is seeking to file an amicus brief in this matter.  Whether or not Wikileaks makes

8    a strategic determination not to appear in the action and/or defend its conduct

9    (possibly to help facilitate a potential amici filing), Wikileaks is nonetheless

10    represented and represented by very competent counsel.  Even if Mr. Myers decides

11    not to appear on behalf of Wikileaks in this matter, there has been no showing that

12    Wikileaks is indigent or that it could not otherwise be represented by competent

13    counsel.  To the contrary, Wikileaks boasted in a press release concerning the

14    Court's prior order that it "<u>has six pro-bono attorney's [sic] in S[an] F[rancisco] *on*</u>

15    *<u>roster to deal with legal assault.</u>*" (Spiegel Decl., Exh. "A" - printout of a "Press

16    Release" by Wikileaks dated February 18, 2008) (emphasis added)).  Yet Wikileaks

17    maintains its absence.  The Court should not allow Wikileaks to make an end-run

18    around an appearance by employing or facilitating potential amici to advance

19    arguments Wikileaks has strategically chosen, for whatever reason, not to advance.

20       Second, none of the would-be amici have "an interest in *some other case* that

21    may be affected by the present case." *Ryan*, 125 F.3d at 1063 (emphasis added).

22    None of the would-be amici are currently facing the <u>same type of claims</u> as

23    Wikileaks.  *See Nat'l Org. for Women*, 223 F.3d at 617.  The Third Circuit has held

24    that would-be amici who do not represent an individual or organization with a

25    "legally cognizable interest" in the subject matter at issue should be denied leave to

26    file an amicus brief. *See Am. Coll. of Obstetricians and Gynecologists v.*

27    *Thornburgh*, 699 F.2d 644, 645 (3d Cir. 1983).  Here, none of the persons or

28    organizations seeking leave to file an amicus brief has cited any pending case, let

1   alone a case in which it has a legally cognizable interest that may be affected by this

2   Court's preliminary injunction, which will not create binding precedent.

3          Finally, none of the would-be amici has demonstrated that it has "unique

4   information or perspective that can help the court *beyond the help that the parties*

5   *are able* to provide." *Ryan*, 125 F.3d at 1063 (emphasis added).  Rather, the would-

6   be amici merely cite case law and make the standard arguments one would expect

7   from Wikileaks had it chosen to make them — case law of which JB certainly *is*

8   *willing and able* to brief for the Court upon its request.  In fact, JB has now briefed

9   the Court on the purported First Amendment issues, as contained in Plaintiffs'

10  Supplemental Brief.   That the would-be amici are engaged in the business of

11  publishing, journalism, or even First Amendment advocacy and seek to make

12  arguments Wikileaks or Dynadot have *chosen not to make for themselves* does not

13  demonstrate any "unique information or perspective" that the parties are unable to

14  provide.

15

16                                   **III.**

17                              **CONCLUSION**

18         For the reasons stated herein, the Amici-Intervenor Parties' Applications for

19  leave to file an amicus brief and/or intervene should be denied.

20

21  DATED: February 27, 2008           LAVELY & SINGER
                                       PROFESSIONAL CORPORATION
22                                     MARTIN D. SINGER
                                       WILLIAM J. BRIGGS, II
23                                     EVAN N. SPIEGEL

24                                     /s/ William J. Briggs, II
                                   By:_____
25                                     WILLIAM J. BRIGGS, II
                                   Attorneys  for  Plaintiffs  BANK  JULIUS
26                                 BAER  &  CO.  LTD  and  JULIUS  BAER
                                   BANK AND TRUST CO. LTD
27

28

1  **MARTIN D. SINGER, ESQ. (BAR NO. 78166)**
   **WILLIAM J. BRIGGS, II, ESQ. (BAR NO. 144717)**
2  **EVAN N. SPIEGEL, ESQ. (BAR NO. 198071)**
   **LAVELY & SINGER PROFESSIONAL CORPORATION**
3  2049 Century Park East, Suite 2400
   Los Angeles, California 90067-2906
4  Telephone:  (310) 556-3501
   Facsimile: (310) 556-3615
5  E-mail: wbriggs@lavelysinger.com
   E-mail: espiegel@lavelysinger.com
6
   Attorneys for Plaintiffs
7  **BANK JULIUS BAER & CO. LTD and**
   **JULIUS BAER BANK AND TRUST CO. LTD**
8

9          **UNITED STATES DISTRICT COURT**

10      **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11           **SAN FRANCISCO DIVISION**

12 **BANK JULIUS BAER & CO.**          ) **CASE NO. CV08-0824 JSW**
   **LTD**, a Swiss entity; and **JULIUS**  ) **[Hon. Jeffrey S. White; CTRM 2]**
13 **BAER BANK AND TRUST CO.**         )
   **LTD**, a Cayman Islands entity,     )
14                                      ) **DECLARATION OF EVAN SPIEGEL**
              Plaintiffs,               ) **IN SUPPORT OF PLAINTIFFS'**
15                                      ) **BRIEF IN OPPOSITION TO**
          v.                            ) **MULTIPLE APPLICATIONS AND**
16                                      ) **MOTIONS BY PROPOSED AMICI**
   **WIKILEAKS**, an entity of unknown  ) **AND/OR REQUESTS TO INTERVENE**
17 form, **WIKILEAKS.ORG**, an entity   )
   of unknown form; **DYNADOT,**        )
18 **LLC**, a California Limited Liability )
   Corporation, and **DOES 1 through**  )
19 **10**, inclusive,                    )
                                        )
20            Defendants.               )
                                        )
21 _____     )

22

23

24

25 / / /                                                    / / /

26 / / /                                                    / / /

27 / / /                                                    / / /

28 / / /                                                    / / /

## DECLARATION OF EVAN SPIEGEL

I, EVAN SPIEGEL, declare as follows:

1.     I an attorney at law duly qualified to practice before the Courts of the State of California, and am an attorney with the firm of Lavely & Singer Professional Corporation, attorneys for Plaintiffs Bank Julius Baer & Co. Ltd and Julius Baer Bank and Trust Co. Ltd. The facts stated herein are stated of my own personal knowledge and, if called and sworn as a witness, I could and would testify competently thereto. As to those matters stated on the basis of information and belief, I am so informed and believe those matters to be true.

2.     This Declaration is made in support of Plaintiffs Bank Julius Baer & Co. Ltd's ("BJB") and Julius Baer Bank and Trust Co. Ltd's ("JBBT") (collectively, "JB" and/or "Plaintiffs") Brief in Opposition to Multiple Applications and Motions by Proposed Amici and/or Requests to Intervene.

3.     The facts of this matter are more fully set forth in the Complaint, in Plaintiffs' Application for TRO and Preliminary Injunction, on file in this matter, which are incorporated herein by reference. This brief does not attempt to address all of the points raised by the Multiple Applications and Motions by Proposed Amici and/or Requests to Intervene because of obvious time constraints. Instead, it focuses on the core issue presented to this Court.

4.     Wikileaks has represented, in a several press releases concerning the Court's prior order, that it "has six pro-bono attorney's [sic] in S[an] F[rancisco] on roster to deal with legal assault." Attached hereto as <u>Exhibit "A"</u> is a true and correct copy of a printout of a "Press Release" by Wikileaks from its website, dated February 18, 2008.

5.     Wikileaks has represented that they have competent representation in this matter. In correspondence received from Julian Assange (a contact for Wikileaks, as represented to the Court by Julie Turner) on February 24, 2008, Mr. Julian Assange stated "I don't know why you have sent this to me" and that JB

2

1  should "please send Wikileaks.org related legal correspondence to Roger Myers who

2  I understand is acting on behalf of the domain."  Attached hereto as <u>Exhibit "B"</u> is

3  a true and correct copy of a printout of the e-mail dated Feb 24, 2008 from Mr.

4  Assange.   Two days later, Mr. Assange again e-mails and stated, "Please send

5  [correspondence] to 'Roger Myers' < Roger.Myers@hro.com> who I understand

6  is representing the rights of the domain holder in this matter."  Attached hereto as

7  <u>Exhibit "C"</u> is a true and correct copy of a printout of the e-mail dated Feb 26, 2008

8  from Mr. Assange).   The biography of Roger Myers, a media and First Amendment

9  attorney, on his law firm's website states that his clients include "publishers (of

10 newspapers, magazines, and books), broadcast media (both television and radio

11 networks and their affiliates), and online media."  Mr. Myer's biography also states

12 he is a "Northern California Super Lawyer" who "is a frequent speaker at

13 conferences addressing media, internet and intellectual property issues," and that he

14 "serves as newsroom general outside counsel to more than 20 newspapers … and as

15 general outside counsel for Business Wire, Inc."  Mr. Myers's biography further

16 lists that he is the "General Counsel" of "<u>California First Amendment Coalition</u>,"

17 which is seeking to file an amicus brief in this matter.  Attached hereto as <u>Exhibit</u>

18 <u>"D"</u> is a true and correct copy of a printout of Mr. Myer's Holme Roberts & Owen

19 LLP's firm website Biography page.

20      I declare under penalty of perjury under the laws of the United States of

21 America that the foregoing is true and correct.

22      Executed this 27nd day of February 2008, at Los Angeles, California.

23

24                     /s/
                   EVAN N. SPIEGEL

25

26      I hereby attest that I have on file all holographic signatures for any signatures
   indicated by a conformed signature (/s/) within this efiled document.

27

28                     /s/
                 WILLIAM J. BRIGGS, II



# Wikileaks.org under injunction

From Wikileaks

Wikileaks Press Release

WIKILEAKS.ORG DOWN AFTER EX-PARTE LEGAL ATTACK BY CAYMAN ISLANDS BANK

http://wikileaks.be/wiki/Wikileaks.org_under_injunction

Contacts: http://wikileaks.be/wiki/Contact

Mon Feb 18 00:00:00 GMT 2008

The following release has not been proofed due to time constraints.

*Transparency group Wikileaks forcibly censored at ex-parte Californian hearing -- ordered to print blank pages -- 'wikileaks.org' name forcibly deleted from Californian domain registrar -- the best justice Cayman Islands money launderers can buy?*

When the transparency group Wikileaks was censored in China last year, no-one was too surprised. After all, the Chinese government also censors the Paris based Reporters Sans Frontiers and New York Based Human Rights Watch. And when Wikileaks published the secret censorship lists of Thailand's military Junta, no-one was too surprised when people in that country had to go to extra lengths to read the site. But on Friday the 15th, February 2008, in the home of the free and the land of the brave, and a constitution which states "Congress shall make no law... abridging the freedom of speech, or of the press", the Wikileaks.org press was shutdown:

```
BANK JULIUS BAER & CO. LTD, a
Swiss entity; and JULIUS BAER BANK
AND TRUST CO. LTD, a Cayman Island          ORDER GRANTING
entity,                                     PERMANENT INJUNCTION

WIKILEAKS, an entity of unknown form;
WIKILEAKS.ORG, an entity of unknown
form; DYNADOT, LLC, a California
limited liability company; and DOES 1
through 10, inclusive,
```

[..]

```
IT IS HEREBY ORDERED:
```

[..]

```
Dynadot shall immediately clear and remove all DNS hosting
records for the wikileaks.org domain name and prevent the
domain name from resolving to the wikileaks.org website or
any other website or server other than a blank park page,
until further order of this Court.
```

The Cayman Islands is located between Cuba and Honduras. In July 2000, the United States Department of the Treasure Financial Crimes Enforcement Network issued an advisory states stating that there were "serious deficiencies in the counter-money laundering systems of the Cayman Islands", "Cayman Islands law makes it impossible for the supervisory and regulatory authority to obtain information held by financial institutions regarding their client's identity", "Failure of financial institutions in the Cayman Islands to report suspicious transactions is not subject to penalty" and that "These deficiencies, among others, have caused the Cayman Islands to be identified by the Financial Action Task Force on Money Laundering (The 'FATF') as non-cooperative in the fight against money laundering". As of 2006 the U.S. State Department listed the Cayman Islands in its money laundering "Countries of Primary Concern".

The Cayman's case is not the first time Wikileaks has tackled bad banks. In the second half of last year Wikileaks exposed over $4,500,000,000's worth of money laundering including by the former president of Kenya, Daniel Arap Moi (see http://wikileaks.be/wiki/The_looting_of_Kenya_under_President_Moi which became the Guardian's front page story in September 2007 and swung the Kenyan vote by 10% leading into the December 2007 election and http://wikileaks.be/wiki/A_Charter_House_of_horrors reported in the Nairobi paper The Standard and now the subject of a High Court Case in Kenya).

To find an injunction similar to the Cayman's case, we need to go back to Monday June 15, 1971 when the New York Times published excepts of of Daniel Ellsberg's leaked "Pentagon Papers" and found itself enjoined the following day. The Wikileaks injunction is the equivalent of forcing the Times' printers to print blank pages and its power company to turn off press power. The supreme court found the Times censorship injunction unconstitutional in a 6-3 decision.

The Wikileaks.org injunction is ex-parte, engages in prior restraint and is clearly unconstitutional. It was granted on Thursday afternoon by California district court judge White, Bush appointee and former prosecutor.

The order was written by Cayman Island's Bank Julius Baer lawyers and was accepted by judge White without amendment, or representations by Wikileaks or amicus. The case is over several Wikileaks articles, public commentary and documents dating prior to 2003. The documents allegedly reveal secret Julius Baer trust structures used for asset hiding, money laundering and tax evasion. The bank alleges the documents were disclosed to Wikileaks by offshore banking whistleblower and former Vice President the Cayman Island's operation, Rudolf Elmer. Unable to lawfully attack Wikileaks servers which are based in several countries, the order was served on the intermediary Wikileaks purchased the 'Wikileaks.org' name through -- California registrar Dynadot, who then used its access to the internet website name registration system to delete the records for 'Wikileaks.org'. The order also enjoins every person who has heard about the order from from even linking to the documents.

In order to deal with Chinese censorship, Wikileaks has many backup sites such as wikileaks.be (Belgium) and wikileaks.de (Germany) which remain active. Wikileaks never expected to be using the alternative servers to deal with censorship attacks, from, of all places, the United States.

The order is clearly unconstitutional and exceeds its jurisdiction.

Wikileaks will keep on publishing, in-fact, given the level of suppression involved in this case, Wikileaks will step up publication of documents pertaining to illegal or unethical banking practices.

Wikileaks has six pro-bono attorney's in S.F on roster to deal with a legal assault, however Wikileaks was given only hours notice "by email" prior to the hearing. Wikileaks was NOT represented. Wikileaks pre-litigation California council Julie Turner attended the start of hearing in a personal capacity but was then

asked to leave the court room.

White signed the order, drafted by the Cayman Islands bank's lawyers without a single amendment.

The injunction claims to be permanent, although the case is only preliminary.

Wikileaks remains available publishing from non-US, non-Chinese jurisdictions including http://wikileaks.cx/ and http://wikileaks.be/. See http://wikileaks.cx/wiki/Wikileaks:Cover_Names for more.

http://wikileaks.cx/wiki/Bank_Julius_Baer_vs._Wikileaks

http://wikileaks.cx/wiki/images/Dynadot-injunction.pdf

http://wikileaks.cx/wiki/Die_Akten_des_Hurricane_Man

http://wikileaks.cx/wiki/Clouds_on_the_Cayman_tax_heaven

Retrieved from "https://wikileaks.be/wiki/Wikileaks.org_under_injunction"

Categories: Analyses | United States | Grand Cayman

| Get press releases: | | Apply to volunteer: | |
|---|---|---|---|
| email address | Join | email address | Join |

EXHIBIT A PAGE 6



**Evan Spiegel**

| | |
|---|---|
| **From:** | Julian Assange. [me@iq.org] |
| **Sent:** | Sunday, February 24, 2008 9:40 AM |
| **To:** | Evan Spiegel |
| **Cc:** | gmurai@wendel.com; legal@sunshinepress.org; wikileaks@sunshinepress.org; me@iq.org; mathews@math.Stanford.EDU |
| **Subject:** | Re: Bank Julius Baer v. Wikeleaks, Case # CV08-0824 JSW re: Preliminary Injunction re: Non-Opp by Defendants |

I don't know why you have sent this to me. I have not read it nor anything else you have sent me. Please send Wikileaks.org related legal correspondence to Roger Myers who I understand is acting on behalf of the domain.

On Sun, Feb 24, 2008 at 04:01:29PM +0000, Evan Spiegel wrote:
> <<DECL-SPIEGEL 021308 re NTC-NON-OPP re INJUNCTION.pdf>>
> <<NTC-NON-OPP-PRELIM-INJ 022108.pdf>> <<POS 022208 re NTC-NON-OPP RE
> PRELIM INJ.pdf>> Please see attached.
>
> ----------------------------------------------------------------
> --
> -----------------
> LAVELY & SINGER PROFESSIONAL CORPORATION ATTORNEYS AT LAW
> 2049 CENTURY PARK EAST, SUITE 2400
> LOS ANGELES, CALIFORNIA 90067-2906
> TELEPHONE: (310) 556-3501
> FACSIMILE: (310) 556-3615
> www.LavelySinger.com
> ----------------------------------------------------------------
> --
> -----------------
>
> THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY
> TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS
> PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE
> LAW AND MAY NOT BE PUBLISHED OR DISSEMINATED IN WHOLE OR IN PART.  IF
> THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE
> EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE
> INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE,
> COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE
> CONTENTS OF THIS COMMUNICATION IS STRICTLY PROHIBITED.
>
> IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY THE
> LAW OFFICES OF LAVELY & SINGER PROFESSIONAL CORPORATION IMMEDIATELY BY
> TELEPHONE (310-556-3501) OR E-MAIL (REPLY TO SENDER'S ADDRESS), AND
> THEN DESTROY ALL COPIES OF THIS COMMUNICATION AND ANY ATTACHED FILES.
> THANK YOU.
>
>
>

EXHIBIT B PAGE 7



**Evan Spiegel**

| | |
|---|---|
| **From:** | me@iq.org |
| **Sent:** | Tuesday, February 26, 2008 8:41 AM |
| **To:** | Evan Spiegel |
| **Cc:** | gmurai@wendel.com; legal@sunshinepress.org; wikileaks@sunshinepress.org; me@iq.org; mathews@math.Stanford.EDU |
| **Subject:** | Re: Bank Julius Baer v. Wikileaks, Case # CV08-0824 JSW re: Request for Dismissal Of Dynadot LLC |

Dear Mr. Speigel, I must insist you stop sending me this material.

Please send this to "Roger Myers" <Roger.Myers@hro.com> who I understand is representing the rights of the domain holder in this matter.

On Tue, Feb 26, 2008 at 07:43:07AM +0000, Evan Spiegel wrote:
> <<Request for Dismissal of Dynadot.pdf>>
> <<PROP-ORD-DISMISS-DYNADOT.pdf>> Please see attached.
>
> ----------------------------------------------------------------------
> --
> -----------------
> LAVELY & SINGER PROFESSIONAL CORPORATION ATTORNEYS AT LAW
> 2049 CENTURY PARK EAST, SUITE 2400
> LOS ANGELES, CALIFORNIA 90067-2906
> TELEPHONE: (310) 556-3501
> FACSIMILE: (310) 556-3615
> www.LavelySinger.com
> ----------------------------------------------------------------------
> --
> -----------------
>
> THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY
> TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS
> PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE
> LAW AND MAY NOT BE PUBLISHED OR DISSEMINATED IN WHOLE OR IN PART.  IF
> THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE
> EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE
> INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE,
> COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE
> CONTENTS OF THIS COMMUNICATION IS STRICTLY PROHIBITED.
>
> IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY THE
> LAW OFFICES OF LAVELY & SINGER PROFESSIONAL CORPORATION IMMEDIATELY BY
> TELEPHONE (310-556-3501) OR E-MAIL (REPLY TO SENDER'S ADDRESS), AND
> THEN DESTROY ALL COPIES OF THIS COMMUNICATION AND ANY ATTACHED FILES.
> THANK YOU.
>
>
>

1

EXHIBIT _C_ PAGE _8_





## Biography

### Roger R. Myers

- listening since 1988

**Partner**
**San Francisco**

roger.myers@hro.com
Tel: 415-268-1955
Fax: 415-268-1999

V-Card 



## Experience

Mr. Myers is a partner in HRO's San Francisco office. His practice focuses on media, internet, intellectual property, and unfair competition law, representing a melding of the old media and the new. His clients include publishers (of newspapers, magazines, and books), broadcast media (both television and radio networks and their affiliates), and online media. Mr. Myers has litigated numerous intellectual property and unfair competition matters for media and non-media clients and has successfully represented Internet access, service, and content providers in both online defamation and copyright litigation. A former newspaper reporter and editor, Mr. Myers serves as newsroom counsel to more than 20 newspapers in the western United States and as general outside counsel for Business Wire, Inc.

Mr. Myers is a frequent speaker at conferences addressing media, internet and intellectual property issues.

## Professional & Community Affiliations

International Human Rights Award, American Bar Association 2005

James Madison Freedom of Information Award, Society of Prof. Journalists (Northern Cal.) 1998

America's Leading Lawyers for Business, Chambers & Partners

EXHIBIT ___D___ PAGE __9__

Northern California Super Lawyer, Law & Politics and San Francisco magazines

General Counsel, California First Amendment Coalition

Law Clerk, Hon. James R. Browning, U.S. Court of Appeals, Ninth Circuit, 1988-89

practice
Specialties

- **Complex Commercial Litigation**
- **Media, Information, and Intellectual Property**

## Education

J.D., Boalt Hall School of Law, University of California at Berkeley, Order of the Coif, 1988

B.A. Journalism, San Jose State University, *with great distinction*, 1980

## Bar Admissions

Admitted in California

Privacy Policy | Disclaimer | Contact Us    **© 2008 HRO LLP**

EXHIBIT _D_ PAGE _10_