United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BANK JULIUS BAER & CO. LTD and
JULIUS BAER BANK AND TRUST CO.
LTD,

No. C 08-00824 JSW

         Plaintiffs,

    v.

WIKILEAKS, an entity of unknown form;
WIKILEAKS.ORG, an entity of unknown
form; DYNADOT, LLC, a California limited
liability corporation, and DOES 1 through 10,
inclusive,

         Defendants.

**ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTION;
DISSOLVING PERMANENT
INJUNCTION; AND SETTING
BRIEFING AND HEARING
SCHEDULE**

This matter comes before the Court upon consideration of Plaintiffs' motion for a

preliminary injunction.  Having considered Plaintiffs' pleadings, the relevant legal authority,

and the record in this case, the Court DENIES Plaintiffs' motion for a preliminary injunction,

DISSOLVES the stipulated permanent injunction between Plaintiffs and Defendant Dynadot,

and sets the hearing and briefing schedule on the pending motions.

**BACKGROUND**

On February 6, 2008, Plaintiffs Bank Julius Baer & Co., Ltd. and Julius Baer Bank and

Trust Co, Ltd. ("Plaintiffs") filed this action alleging causes of action for unlawful and unfair

business practices in violation of California Business and Professions Code section 17200,

declaratory relief, interference with contract, interference with prospective economic advantage,

conversion, and injunctive relief.  Plaintiffs allege that Defendants WikiLeaks, Wikileaks.org

**United States District Court**
For the Northern District of California

1     and Dynadot, LLC have unlawfully and wrongfully published on the website wikileaks.org

2     confidential, as well as forged, bank documents belonging to Plaintiffs.  Plaintiffs allege that

3     such publication violates consumer banking and privacy protection law, under both foreign and

4     American law.

5          On February 8, 2008, Plaintiffs filed an *ex parte* application for a temporary restraining

6     order ("TRO") and order to show cause re preliminary injunction.  The Court set out a briefing

7     schedule requiring any opposition be filed no later than February 12, 2008.  Although duly

8     served, the Court received no response from any defendant.  On February 14, 2008, this Court

9     held a hearing at which Plaintiffs and Defendant Dynadot appeared and represented that they

10    had reached an agreement.  Per that agreement, Dynadot would (1) lock the wikileaks.org

11    domain name and account in order to prevent access to and any changes from being made to the

12    domain name and account information, and (2) disable the website such that the optional private

13    who-is service for the domain name and account remained turned off.  On February 15, 2008,

14    the Court approved the parties' settlement agreement and issued the agreed-upon permanent

15    injunction, pending further order of the Court.  In addition, on February 15, 2008, the Court

16    entered the unopposed amended TRO against WikiLeaks which restrained WikiLeaks, or its

17    agents, from the display, use or dissemination of the property identified by the Plaintiffs as

18    private, personal banking information of its clients.

19         In order granting the TRO, the Court further issued an Order to Show Cause ("OSC") to

20    WikiLeaks to demonstrate why a preliminary injunction should not issue continuing the TRO.

21    Any opposition papers were due to be filed by no later than noon on February 20, 2008 and any

22    reply was to be filed by no later than noon on February 26, 2008.  The Court set a hearing on

23    the motion for a preliminary injunction for February 29, 2008 at 9:00 a.m.  Again, the Court did

24    not receive an opposition or filing from any party, or related or interested party, by the deadline

25    set in its OSC.  However, between February 26, 2008 and February 28, 2008, the Court received

26    numerous filings from various interested parties seeking to be heard as *amicus curiae*, moving

27    to intervene and moving to dismiss.  The Court did not receive any submission from Defendant

28

1    Dynadot and received only a notice to appear and joinder in the various *amicus* briefs by an

2    individual, John Shipton, who claims to be the owner of the wikileaks.org domain name.

3          On February 29, 2008, this Court held a hearing on the motion for preliminary

4    injunction and heard at length from all concerned parties, including Plaintiffs, Dynadot, Mr.

5    Shipton, the website's domain name owner, Daniel Mathews, a user and potential officer of

6    wikileaks.org, and the numerous *amicus curiae*.

7          The issues pending before this Court are whether the stipulated permanent injunction

8    between Plaintiffs and Dynadot should be dissolved, whether Plaintiffs' motion for preliminary

9    injunction against WikiLeaks should be granted, and how to proceed procedurally with the

10    various interested parties before this Court.  As addressed at the hearing on this matter, the

11    Court sets out its reasons and final adjudication pertaining to those issues.

12                                  **ANALYSIS**

13    **A.**       **Standards Applicable to Motions for Preliminary Injunction.**

14          The standards for obtaining a preliminary injunction are well established.  It is

15    appropriate to issue a preliminary injunction if the moving party establishes either (1) a

16    combination of probable success on the merits and the possibility of irreparable injury, or (2)

17    that serious questions are raised and the balance of hardships tips sharply in favor of the moving

18    party. *Stuhlbarg Intern. Sales Co. v. John D. Brush and Co.*, 240 F.3d 832, 839-840 (9th Cir.

19    2001).  "'These formulations are not different tests, but represent two points on a sliding scale

20    in which the degree of irreparable harm increases as likelihood of success on the merits

21    decreases.'" *Associated Gen. Contractors of Calif. v. Coalition for Economic Equity*, 950 F.2d

22    1401, 1410 (9th Cir. 1991) (quoting *Big Country Foods, Inc. v. Board of Education*, 868 F.2d

23    1085, 1088 (9th Cir. 1989)).

24          In addition, within the Ninth Circuit, the Court also must consider the public interest

25    when it assesses the propriety of issuing an injunction. *Sammartano v. First Judicial District*

26    *Court*, 303 F.3d 959, 973 (9th Cir. 2002).

27

28

*United States District Court*
For the Northern District of California

3

**United States District Court**
For the Northern District of California

1    **B.    Concerns Before the Court.**

2         **1.    Subject Matter Jurisdiction.**

3         The record has been substantially developed since the last hearing on this matter on the

4    initial TRO. Although the *amicus curiae* have not as yet been granted the right to appear as

5    intervenors due at least in part to the expediency of the proceedings, the interested parties have

6    raised many issues which were not raised previously. In addition, federal courts have a duty to

7    raise and decide issues of subject matter jurisdiction *sue sponte*, if at any time it appears that

8    subject matter jurisdiction may be lacking. Fed. R. Civ. P. 12; *Augustine v. United States*, 704

9    F.2d 1074, 1077 (9th Cir. 1983).

10        From the face of the Complaint, Plaintiffs have indicated that they are themselves

11   foreign citizens and entities formed and operated under the laws of Switzerland and the Cayman

12   Islands. (Compl., ¶¶ 5, 6.) In addition, Plaintiffs have alleged that although Dynadot is a

13   citizen of California, other "Defendants are each citizens or subjects of a State or different

14   States or foreign states, with some of them located in and residing within the State of

15   California." (*Id.*, ¶ 3.) Plaintiffs further allege that Defendant WikiLeaks is "a fictitious

16   business name, alias and/or entity of unknown type and origin, with its principal place of

17   business in the State of California." (*Id.*, ¶ 7.) Although there is no firm evidence of the

18   citizenship of the named defendants, except Dynadot, during the oral argument on the pending

19   motion, counsel for Mr. Shipton appeared and represented that the owner of the domain name

20   wikileaks.org is a citizen of Australia and a resident of Kenya.

21        From the founding of the federal courts, it has been unanimously held that "the courts of

22   the United States have no jurisdiction of cases between aliens." *Montalet v. Murray*, 8 U.S. (4

23   Cranch) 46 (1807). The Ninth Circuit has adhered to this rule. "Diversity jurisdiction does not

24   encompass foreign plaintiffs suing foreign defendants." *Cheng v. Boeing Co.*, 708 F.2d 1406,

25   1412 (9th Cir. 1983). The presence of citizen defendants does not preserve jurisdiction as to the

26   alien. *Faysound Limited v. United Coconut Chemical, Inc.*, 878 F.2d 290, 294 (9th Cir. 1989)

27   (citing *Boeing*, 708 F.2d at 1412). In order for the Court to exercise subject matter jurisdiction

28

**United States District Court**
For the Northern District of California

1   over this matter, complete diversity must be established under the original Complaint. *See*

2   *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).

3          The Court is concerned that it may well lack subject matter jurisdiction over this matter

4   in its entirety.[1]

5                    **2.      Public Interest.**

6          Within the Ninth Circuit, the Court must consider the public interest when it assesses the

7   propriety of issuing an injunction. *Sammartano*, 303 F.3d at 973.  As made abundantly clear by

8   the various submissions of the *amicus curiae*, the current request for an injunction, as well as

9   the Court's original entry of a stipulated injunction, raises issues regarding possible

10  infringement of protections afforded to the public by the First Amendment to the United States

11  Constitution.  The First Amendment encompasses the "right to receive information and ideas."

12  *Kleindienst v. Mandel*, 408 U.S. 753, 762 (19720 (citation omitted); *see also Board of*

13  *Education v. Pico*, 457 U.S. 853, 867 (1982) ("the right to receive ideas is a necessary predicate

14  to the *recipient's* meaningful exercise of his own rights of speech, press, and political freedom")

15  (emphasis in original).

16         Although the matter of the First Amendment implications of the permanent injunction

17  against Dynadot or the more limited preliminary injunction Plaintiffs seek against WikiLeaks

18  has not been fully briefed, it is clear that in all but the most exceptional circumstances, an

19  injunction restricting speech pending final resolution of the constitutional concerns is

20  impermissible. *See Proctor & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226-27 (6th Cir.

21  1996).

22                    **3.      Efficacy of an Injunction.**

23         The record currently before the Court indicates that even the broad injunction issued as

24  to Dynadot had exactly the opposite effect as was intended.  The private, stolen material was

25  transmitted over the internet via mirror websites which are maintained in different countries all

26

27         [1] Although Plaintiffs pleaded jurisdiction under 28 U.S.C. § 1350 for a "civil action
    by an alien for a tort committed in violation of a treaty of the United States," the Complaint
    does not state a cause of action under any specific treaty, and counsel for Plaintiffs conceded
28  that the Court does not maintain jurisdiction under this alternative ground. (*See* Compl., ¶
    2.)

United States District Court

For the Northern District of California

1   over the world.  Further, the press generated by this Court's action increased public attention to

2   the fact that such information was readily accessible online.  The Court is not convinced that

3   Plaintiffs have made an adequate showing that any restraining injunction in this case would

4   serve its intended purpose.  *See Nebraska Press Association v. Stuart*, 427 U.S. 539, 569

5   (1976).  In addition, there is evidence in the record that "the cat is out of the bag" and the

6   issuance of an injunction would therefore be ineffective to protect the professed privacy rights

7   of the bank's clients.  *See In re Charlotte Observer*, 921 F.2d 47, 50 (4th Cir. 1990); *see also*

8   *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S.

9   557, 564 (1980) (law that restricts speech must directly advance the state interest involved and

10  may not be sustained if it provides only ineffective or remote support for that purpose.)

11              **4.      Narrowly Tailored Remedy.**

12          At the TRO hearing, the Court was concerned that because WikiLeaks failed to appear

13  and no interested party appeared on their behalf, the only effective remedy to stop the leaking of

14  personal banking information was the broad remedy it made available by signing the stipulated

15  permanent injunction between Plaintiffs and Dynadot.  However, now that the Court has the full

16  panoply of parties and the interested entities before it, the Court is concerned that an injunctive

17  remedy, if any, that may be available to Plaintiffs should be narrowly tailored and the least

18  restrictive means to achieve the purpose of protecting banking clients from disclosure of their

19  personal information.  For example, given sufficient evidence that the Court has jurisdiction to

20  hear the matter and that the restriction would be constitutionally valid, the Court might fashion

21  an injunction requiring the limited redaction of identifying information on the leaked

22  documents.  Because the Court is not convinced that the existing permanent injunction is the

23  least restrictive means to achieve Plaintiffs' goals, this additional reason counsels against

24  maintaining the permanent injunction or issuing a preliminary injunction at this time.

25                            **CONCLUSION**

26          For the above reasons, the Court DISSOLVES the stipulated permanent injunction

27  between Plaintiffs and Dynadot.  In addition, the Court DENIES Plaintiffs' motion for a

28  preliminary injunction and DECLINES to extend the TRO.  Lastly, the Court addresses the

1    remaining interested and *amicus curiae* parties.  All pending motions to dismiss or to intervene

2    and any further motions to dismiss shall be heard on Friday, May 16, 2008 at 9:00 a.m.  Any

3    motion not already filed shall be filed no later than March 14, 2008.  Any opposition to any

4    pending motion shall be filed no later than March 28, 2008.  Any reply brief shall be filed no

5    later than April 4, 2008.  This schedule supercedes all previous orders or stipulations approved

6    by the Court.  If the Court determines that any matter is suitable for resolution without oral

7    argument, it will so advise the parties in advance of the hearing date.  If the parties wish to

8    modify this schedule, they may submit for the Court's consideration a stipulation and proposed

9    order demonstrating good cause for any modification requested.

10         **IT IS SO ORDERED.**

11

12   Dated:  February 29, 2008

     _____
     JEFFREY S. WHITE
13   UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

7